Filing # 24710529 E-Filed 03/10/2015 04:05:26 PM

IN THE CIRCUIT COURT OF THE NINTH
JUDICIAL CIRCUIT IN AND FOR
ORANGE COUNTY, FLORIDA

GENERAL JURISDICTION DIVISION

CASE NO. 2015-ca-2259-o

BUILDING MATERIALS CORP. OF
AMERICA d/b/a GAF MATERIALS
CORPORATION and ROOFING SUPPLY
GROUP ORLANDO LLC,

       Plaintiffs,

v.

HENKEL CORPORATION,

       Defendant.

_____/

## COMPLAINT

Plaintiffs BUILDING MATERIALS CORP. OF AMERICA d/b/a GAF MATERIALS
CORPORATION ("GAF") and ROOFING SUPPLY GROUP ORLANDO LLC ("RSG"), by
and through undersigned counsel, hereby sue Defendant HENKEL CORPORATION
("HENKEL"), and states as follows:

### Parties, Jurisdiction, and Venue

1.    This is an action for damages in excess of $75,000, exclusive of interest, costs,
and attorney's fees.

2.    At all times material hereto, GAF is and was a foreign corporation authorized to
do business in the state of Florida. GAF sells residential and commercial roofing products,
including water-based roofing adhesive manufactured by HENKEL.

CASE NO. _____

3.      At all times material hereto, RSG is and was a foreign corporation authorized to do business in the state of Florida. RSG is a distributor of residential and commercial roofing products, including water-based roofing adhesive manufactured by HENKEL and sold by GAF.

4.      At all times material hereto, HENKEL was a foreign corporation authorized to do business in the state of Florida. HENKEL is and was a manufacturer of water-based roofing adhesive used to construct residential and commercial roofs.

5.      Thermoset Corporation, f/k/a Thermoset Roofing Corp. ("Thermoset") is a roofing contractor that repairs, replaces, and installs roofing systems, including systems sold by GAF and distributed by RSG.

6.      The incident giving rise to this action occurred in Orlando, Florida.

7.      All conditions precedent to the maintenance of this action have been met, performed, waived, or otherwise excused.

### Complaint Against GAF & RSG Alleging Defect in Henkel Product

8.      On December 31, 2013, Thermoset filed a complaint against GAF and RSG in the Circuit Court of the Seventeenth Judicial Circuit in and for Broward County, Florida. Complaint, Ex. A. On February 2, 2014, GAF and RSG removed the case to the United States District Court for the Southern District of Florida, Fort Lauderdale Division.

9.      On August 18, 2014, after the Court granted in part and denied in part motions to dismiss, Thermoset filed an amended complaint for damages. Amended Complaint, Ex. B.

10.     Plaintiff's amended complaint alleges four counts against GAF (Count II: Breach of Implied Warranty of Merchantability; Count IV: Breach of Implied Warranty of Fitness for a Particular Purpose; Count V: Breach of Express Warranty; Count VIII: Florida's Unfair and Deceptive Trade Practices Act) and two counts against RSG (Count I: Breach of Implied

2

CASE NO. _____

Warranty of Merchantability; Count III: Breach of Implied Warranty of Fitness for a Particular Purpose). *Id.*

11.    All of Plaintiff's causes of action against Defendants are premised on the theory that GAF sold and RSG distributed to Thermoset defective water-based roofing adhesive that was manufactured by HENKEL. *Id.* at ¶ 36, fn.2 (stating that HENKEL manufactured the alleged defective water-based roofing adhesive); ¶ 50 (which is incorporated into each and every Count and states, "[a]s a result of the **defective materials**, ... Thermoset incurred expenses exceeding $1 million for materials and various [other] costs") (emphasis added).

12.    Additionally, each cause of action incorporates and specifically alleges that the roofing materials were defective and that the defect caused the roofing system to fail and resulted in damages to Thermoset. *Id.* at ¶ 54, Count I ("RSG warranted that the roofing materials ... were not **defective**") (emphasis added); ¶ 62, Count II ("GAF warranted that the roofing materials ... were not **defective**") (emphasis added); ¶ 70, Count III (RSG was notified of the "**defective** materials") (emphasis added); ¶ 78, Count IV (GAF was notified of the "**defective** materials") (emphasis added); ¶ 85, Count V ("Thermoset relied upon theses representations in the purchase and use, respectively, of the **defective** roofing materials, to their detriment") (emphasis added); and ¶ 85, Count VIII ("the **defective** nature of the materials rendered them valueless") (emphasis added).

13.    GAF purchased the allegedly defective water-based roofing adhesive from HENKEL in March of 2010. And RSG received shipment of the allegedly defective water-based roofing adhesive directly from HENKEL on March 26, 2010.

14.    The allegedly defective water-based roofing adhesive was shipped by HENKEL to RSG's warehouse located in Orlando, Florida. <u>Sales Record</u>, **Ex. C**. RSG then sold the

3

CASE NO. _____

allegedly defective water-based roofing adhesive to Thermoset through a subsidiary named Caribbean Island Services Corp. *Id.*

15.     GAF's standard terms and conditions (hereafter "Terms and Conditions") applied to the sale of the allegedly defective water-based roofing adhesive and formed a binding contract between HENKEL and GAF. Terms and Conditions, **Ex. D** at Intro. ("By selling products or services to [GAF], [HENKEL] confirms that the following terms and conditions apply to [GAF's] purchases.").

16.     With respect to HENKEL's duty to defend and indemnify GAF and RSG, the contract states:

> **INDEMNIFICATION. Seller[, HENKEL,] will fully defend, indemnify, hold harmless and reimburse the Buyer[, GAF,] ... and their shareholders, customers[, RSG,] and assigns from and against all claims, suits, actions, proceedings, damages, losses and expenses, including but not limited to litigation costs and expenses and attorneys' fees, arising out of, related to, or resulting from:** (a) any breach of any representation, warranty, certification, covenant or agreement made by Seller in the Purchase Agreement; (b) any negligence or willful misconduct of Seller, its affiliates, subsidiaries and/or their respective officers, directors, employees and/or agents (the "Seller Party(ies)") in connection with performance under the Purchase Agreement; **(c) any litigation, proceeding or claim by any third party,** including but not limited to any of the Seller Parties, **relating to the obligations of Seller under the Purchase Agreement;** and (d) any of the Seller Parties' use, control, ownership, or operation of their respective businesses and facilities.

*Id.* (emphasis added).

## COUNT I
### GAF: Breach of Contract – Contractual Indemnification

17.     GAF reasserts and realleges paragraphs 1 through 16 as if fully set forth herein.

18.     The Terms and Conditions state that HENKEL "represents, warrants, certifies and covenants that all products ... will be ... **free from any and all defects, latent or patent.**" *Id.* at ¶ 5 (emphasis added).

4

CASE NO. _____

19.    Thermoset's complaint alleges that the water-based roofing adhesive manufactured by HENKEL was defective. Amended Complaint, Ex. B at ¶ 36, fn.2 (stating that HENKEL manufactured the alleged defective water-based roofing adhesive); ¶ 50 (which is incorporated into each and every Count and states, "[a]s a result of the **defective materials**, ... Thermoset incurred expenses exceeding $1 million for materials and various [other] costs") (emphasis added); ¶ 54, Count I ("RSG warranted that the roofing materials ... were not **defective**") (emphasis added); ¶ 62, Count II ("GAF warranted that the roofing materials ... were not **defective**") (emphasis added); ¶ 70, Count III (RSG was notified of the "**defective** materials") (emphasis added); ¶ 78, Count IV (GAF was notified of the "**defective materials**") (emphasis added); ¶ 85, Count V ("Thermoset relied upon theses representations in the purchase and use, respectively, of the **defective** roofing materials, to their detriment") (emphasis added); and ¶ 85, Count VIII ("the **defective** nature of the materials rendered them valueless") (emphasis added).

20.    With respect to HENKEL's duty to defend and indemnify GAF, the contract states:

> **INDEMNIFICATION. Seller[, HENKEL,] will fully defend, indemnify, hold harmless and reimburse the Buyer[, GAF,]** ... **from and against all claims, suits, actions, proceedings, damages, losses and expenses, including but not limited to litigation costs and expenses and attorneys' fees, arising out of, related to, or resulting from: (a)** any breach of any representation, warranty, certification, covenant or agreement made by Seller in the Purchase Agreement; **(b)** any negligence or willful misconduct of Seller, its affiliates, subsidiaries and/or their respective officers, directors, employees and/or agents (the "Seller Party(ies)") in connection with performance under the Purchase Agreement; **(c) any litigation, proceeding or claim by any third party,** including but not limited to any of the Seller Parties, **relating to the obligations of Seller under the Purchase Agreement;** and **(d)** any of the Seller Parties' use, control, ownership, or operation of their respective businesses and facilities.

Terms and Conditions, Ex. D (emphasis added).

5

CASE NO. _____

21. HENKEL's duty to defend and indemnify GAF has been triggered by Thermoset's allegations of defect.

22. HENKEL has been on notice of Thermoset's claims against GAF since November 9, 2010.

23. On February 12, 2015, GAF formally tendered the defense to and requested indemnity from HENKEL.

24. To date, HENKEL has not accepted the tender or otherwise agreed to defend and indemnify GAF.

25. As a result of Thermoset's allegations of defect, GAF has and will in the future incur damages, costs, attorneys' fees, and other expenses.

WHEREFORE, GAF respectfully requests that this Court enter a judgment against HENKEL and for GAF for contractual indemnification against damages incurred, as well as for all costs, attorneys' fees, interest, and other expenses incurred by GAF in defending itself against Thermoset's allegations of defect and for such further relief as this Court deems just and proper.

## COUNT II
### GAF: Common Law Indemnity

26. GAF reasserts and realleges paragraphs 1 through 15 as if fully set forth herein.

27. This is a claim for common law indemnity.

28. The claimed damages alleged by Thermoset against GAF arise solely out of the wrongdoing of HENKEL, not caused by or contributed to in any way by GAF.

29. GAF is without any legal fault whatsoever with regard to the alleged defect and resulting damages asserted in Thermoset's amended complaint.

30. Any liability of GAF would be solely vicarious, constructive, derivative or technical based on the actual wrongdoing of HENKEL.

6

CASE NO. _____

31.     GAF is entitled to common law indemnity from HENKEL for the total amount of damages, including all defense fees and costs, found owing by GAF.

32.     GAF is free from legal fault and is entitled to common law indemnity as a matter of law.

33.     GAF has retained counsel to represent it in this action and is obligated to pay their reasonable attorneys' fees.

WHEREFORE, GAF respectfully requests that this Court enter a judgment against HENKEL and for GAF for common law indemnification against damages incurred, as well as for all costs, attorneys' fees, interest, and other expenses incurred by GAF in defending itself against Thermoset's allegations of defect and for such further relief as this Court deems just and proper.

## COUNT III
### RSG: Breach of Contract – Contractual Indemnification

34.     RSG reasserts and realleges paragraphs 1 through 15 as if fully set forth herein.

35.     The Terms and Conditions state that HENKEL "represents, warrants, certifies and covenants that all products ... will be ... **free from any and all defects, latent or patent**." *Id.* at ¶ 5.

36.     Thermoset's complaint alleges that the water-based roofing adhesive manufactured by HENKEL was defective. Amended Complaint, Ex. B at ¶ 36, fn.2 (stating that HENKEL manufactured the alleged defective water-based roofing adhesive); ¶ 50 (which is incorporated into each and every Count and states, "[a]s a result of the **defective materials**, ... Thermoset incurred expenses exceeding $1 million for materials and various [other] costs") (emphasis added); ¶ 54, Count I ("RSG warranted that the roofing materials ... were not **defective**") (emphasis added); ¶ 62, Count II ("GAF warranted that the roofing materials ... were

7

CASE NO. _____

not defective") (emphasis added); ¶ 70, Count III (RSG was notified of the "defective materials") (emphasis added); ¶ 78, Count IV (GAF was notified of the "defective materials") (emphasis added); ¶ 85, Count V ("Thermoset relied upon theses representations in the purchase and use, respectively, of the defective roofing materials, to their detriment") (emphasis added); and ¶ 85, Count VIII ("the defective nature of the materials rendered them valueless") (emphasis added).

    37.    With respect to HENKEL's duty to defend and indemnify RSG, the contract states:

> **INDEMNIFICATION. Seller[, HENKEL,] will fully defend, indemnify, hold harmless and reimburse the Buyer[, GAF,] ... and their** shareholders, customers[, RSG,] **and assigns from and against all claims, suits, actions, proceedings, damages, losses and expenses, including but not limited to litigation costs and expenses and attorneys' fees, arising out of, related to, or resulting from:** (a) any breach of any representation, warranty, certification, covenant or agreement made by Seller in the Purchase Agreement; (b) any negligence or willful misconduct of Seller, its affiliates, subsidiaries and/or their respective officers, directors, employees and/or agents (the "Seller Party(ies)") in connection with performance under the Purchase Agreement; (c) **any litigation, proceeding or claim by any third party,** including but not limited to any of the Seller Parties, **relating to the obligations of Seller under the Purchase Agreement;** and (d) any of the Seller Parties' use, control, ownership, or operation of their respective businesses and facilities.

Terms and Conditions, **Ex. D** (emphasis added).

    38.    HENKEL's duty to defend and indemnify RSG has been triggered by Thermoset's allegations of defect.

    39.    HENKEL has been on notice of Thermoset's claims against RSG since November 9, 2010.

    40.    On February 12, 2015, RSG tendered the defense to and requested indemnity from HENKEL.

8

CASE NO. _____

41. To date, HENKEL has not accepted the tender or otherwise agreed to defend and indemnify RSG.

42. As a result of Thermoset's allegations of defect, RSG has and will in the future incur damages, costs, attorneys' fees, and other expenses.

WHEREFORE, RSG respectfully requests that this Court enter a judgment against HENKEL and for RSG for contractual indemnification against damages incurred, as well as for all costs, attorneys' fees, interest, and other expenses incurred by RSG in defending itself against Thermoset's allegations of defect and for such further relief as this Court deems just and proper.

## COUNT IV
### RSG: Common Law Indemnity

43. RSG reasserts and realleges paragraphs 1 through 15 as if fully set forth herein.

44. This is a claim for common law indemnity.

45. The claimed damages alleged by Thermoset against RSG arise solely out of the wrongdoing of HENKEL, not caused by or contributed to in any way by RSG.

46. RSG is without any legal fault whatsoever with regard to the alleged defect and resulting damages asserted in Thermoset's amended complaint.

47. Any liability of RSG would be solely vicarious, constructive, derivative or technical based on the actual wrongdoing of HENKEL.

48. RSG is entitled to common law indemnity from HENKEL for the total amount of damages, including all defense fees and costs, found owing by RSG.

49. RSG is free from legal fault and is entitled to common law indemnity as a matter of law.

50. RSG has retained counsel to represent it in this action and is obligated to pay their reasonable attorneys' fees.

9

CASE NO. _____

WHEREFORE, RSG respectfully requests that this Court enter a judgment against HENKEL and for RSG for common law indemnification against damages incurred, as well as for all costs, attorneys' fees, interest, and other expenses incurred by RSG in defending itself against Thermoset's allegations of defect and for such further relief as this Court deems just and proper.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully requests that this Court enter judgment as follows:

A.   Finding in favor of Plaintiffs on all counts asserted herein;

B.   Declaring that HENKEL has a duty to defend GAF and RSG;

C.   Declaring the HENKEL must indemnify GAF and RSG;

D.   Awarding damages in amounts to be determined by the Court and/or jury;

E.   Awarding pre- and post-judgment interest;

F.   Awarding attorneys' fees, expenses, and costs; and

G.   Providing such further relief as this Court deems necessary, just or proper.

## DEMAND FOR TRIAL BY JURY

Plaintiffs demand a trial by jury of all issues so triable as a matter of right.

Dated: March 10, 2015.                    Respectfully submitted,

THORNTON, DAVIS & FEIN, P.A.

s/Frederick J. Fein
**FREDERICK J. FEIN, ESQ.**
Florida Bar No. 813699
E-Mail: fein@tdflaw.com
**DANIEL R. LEVER, ESQ.**
Florida Bar No. 044485
Email: lever@tdflaw.com
THORNTON, DAVIS & FEIN, P.A.
80 SW Eighth Street, 29th Floor
Miami, Florida 33130
Telephone: (305) 446-2646
Facsimile: (305) 441-2374

*Attorneys for Plaintiffs*
10

*EXHIBIT "A"*

Filing # 8710282 Electronically Filed 12/31/2013 01:25:44 PM

IN THE CIRCUIT COURT OF THE 17TH
JUDICIAL CIRCUIT IN AND FOR
BROWARD COUNTY, FLORIDA

THERMOSET CORPORATION,
f/k/a THERMOSET ROOFING CORP.,
a Florida corporation,

CASE NO. 13-28156

        Plaintiff,

v.

BUILDING MATERIALS CORP. OF
AMERICA d/b/a GAF MATERIALS
CORPORATION, a Delaware corporation,
and ROOFING SUPPLY GROUP
ORLANDO LLC, a Delaware limited
liability company,

        Defendants.
_____/

## COMPLAINT FOR DAMAGES

Plaintiff, THERMOSET CORPORATION f/k/a THERMOSET ROOING CORP., a

Florida corporation, in its own right, and as assignee of the rights, claims, and interest of

Caribbean Island Services Corporation, a Florida corporation, sues BUILDING MATERIALS

CORP. OF AMERICA d/b/a GAF MATERIALS CORPORATION, a Delaware corporation, and

ROOFING SUPPLY GROUP ORLANDO LLC, a Delaware limited liability company, and

herein alleges:

### Parties, Jurisdiction, and Venue

1.    This is an action for damages in excess of $15,000, exclusive of interest and costs.

2.    Thermoset Corporation f/k/a Thermoset Roofing Corp. ("Thermoset") is a

corporation organized and existing under Florida law, with its principal place of business at 1441

S.W. 30th Avenue, Suite 28, Pompano Beach, Florida 33069, in Broward County.

*Thermoset Corp. v. GAF Materials & RSG*
Complaint

3.      Building Materials Corporation of America d/b/a GAF Materials Corp. ("GAF") is a corporation organized and incorporated under Delaware law with its principal place of business in Wayne, New Jersey, and which is also registered and conducts substantial business in the State of Florida.

4.      Roofing Supply Group Orlando LLC ("RSG") is a limited liability company organized under Delaware law, with its principal place of business in Orlando, Florida.

5.      . Venue and jurisdiction are proper herein as both RSG and GAF are registered and conduct business in Florida; GAF and RSG's conduct giving rise to the causes of action alleged herein occurred in Broward County, Florida; and delivery of the defective roofing materials (the subject of this action) occurred in Broward County, Florida.

### General Allegations.

6.      Thermoset is a roofing contractor that specializes in repairing, waterproofing, replacing, and installing assorted roofing systems sold by various manufacturers, including systems manufactured by GAF.

7.      GAF is a manufacturer for residential and commercial projects that manufactures and sells all major low-slope roofing technologies, including repair and maintenance products, roof restoration systems and new roofing systems, and assists contractors match the correct roofing systems to their clients' specific needs.

8.      RSG is a distributor of residential and commercial roofing products which works with, and purchases roofing systems from, various roofing manufacturers, including GAF, for installation by various roofing contractors, including Thermoset.

2

*Thermoset Corp. v. GAF Materials & RSG*
Complaint

9.    On or about November 21, 2005, Thermoset entered into a Master Select Roofing Contractor Agreement with GAF, attached hereto as Exhibit "A" ("Agreement").

10.   As set forth in more detail in the Agreement, once Thermoset completed qualification requirements and signed the Agreement, it was entitled to apply to GAF for roofing systems guarantees, and the Agreement listed Thermoset as a GAF Materials Corporation "Master Select Roofing Contractor."

11.   In turn, Thermoset agreed to perform its work in a skilled and workmanlike manner on any roof that it would thereafter seek a GAF guarantee, along with timely notifying GAF and providing documentation as set forth in the guarantee procedure guidelines. It further agreed to assist GAF in making inspections of the roofing systems it installed.

12.   Thermoset was hired by non-party Ledcor/Wosley, a joint venture, to install a new "TPO" roof system at the Lynden Pindling International Airport, Nassau, Bahamas ("Project").

13.   Because Thermoset had a direct, on-going relationship with GAF, Thermoset approached GAF to provide roof-system specifications for a GAF system that would meet the Project requirements, including for the roof-wind survey, negative pressure requirements, wind warranty requirements, and Miami-Dade County Product Approval. Thermoset provided GAF with the required roof specifications reflecting the use of a roof system manufactured by non-party Carlisle Syntec ("Carlisle"). GAF thereafter provided Thermoset with its own set of specifications for a "TPO" roof system.

3

*Thermoset Corp. v. GAF Materials & RSG*
Complaint

14.    In or around early 2009, Thermoset provided RSG with GAF's specifications for the purpose of obtaining materials meeting the specifications and the Project requirements.  RSG and GAF thereafter discussed appropriate materials to satisfy these requirements.   Despite Thermoset's initial request to utilize a solvent-based adhesive for the membrane components of the roof system, GAF and RSG specifically recommended utilizing a water-based adhesive for application of roofing membrane to the insulation board over the existing substrate (the GAF $H_2O$ bonding adhesive).

15.    Relying upon the recommendations of RSG and GAF, Thermoset purchased specific roofing materials and components from GAF, through RSG and thereafter began installation of the roof system at the Project, working specifically on the upper pier, lower pier, and barrel roofs, as well as the roof at the terminal building at the airport.

16.    The roofing materials for the Project, including the GAF $H_2O$ bonding adhesive were purchased from RSG by Thermoset's principal through a related company known as Caribbean Island Services Corp. ("Caribbean")[1], and the materials were delivered to Caribbean in Pompano Beach, Florida, for use by Thermoset at the Project.

17.    At the beginning of the Project, the Project Owner's Consultant, Morrison Hirschfield ("Owner's Consultant") raised questions concerning installation of the curved section of the barrel roof of the Project.

---

[1]    Caribbean is a holding company used by Thermoset for the purchase of materials on projects in the Caribbean Islands.

4

*Thermoset Corp. v. GAF Materials & RSG*
Complaint

18.    In response, representatives of GAF, the Owner, Owner's Consultant, the Project Architect, and Thermoset discussed the installation, and GAF confirmed that Thermoset's installation followed the Miami-Dade County Notice of Acceptance and GAF's installation guidelines.

19.    GAF indicated that it would send a field inspector to the Project to conduct an inspection of the installation and take appropriate samples and/or test cuts of the roof.

20.    On April 8, 2010, and July 9, 2010, GAF conducted interim inspections of the work and concluded that the insulation and membrane were suitably adhered (see attached **Exhibit "B"**).

21.    Subsequently, Thermoset discovered that at the edges of the barrel roof, portions of the membrane had become detached from the insulation board (approximately 5-10 feet from the roof edge) in several locations.

22.    Thermoset notified GAF, which advised Thermoset to pull the membrane back, re-adhere it using the GAF $H_2O$ bonding adhesive, and reinstall the temporary mechanical attachment at the edge.

23.    Thermoset re-attached these sections in accordance with GAF's instructions.

24.    Shortly thereafter, during Thermoset's installation of a permanent perimeter attachment, Thermoset discovered other areas of the roof where previously adhered membrane became easily detached from the insulation.

25.    Thermoset immediately advised GAF of the situation and requested that GAF visit the site to determine the cause of the failure.

5

*Thermoset Corp. v. GAF Materials & RSG*
Complaint

26. GAF declined and instead instructed Thermoset to re-adhere the membrane using the same process and products as it had previously instructed.

27. Thermoset again re-attached the affected areas in accordance with GAF's instructions.

28. In late August 2010, a series of rain storms with minor winds (less than 20 mph) passed over Nassau, Bahamas, causing the corners and perimeter at the ends of the lower pier roof, a large section of the perimeter of the "four percent" main terminal roof, and upper perimeter edge areas of the barrel roof, to become un-adhered.

29. At that time, Thermoset observed the membrane peeling right off of the insulation and having no visible signs of adhesive on the back of the membrane—even though Thermoset had previously applied the GAF $H_2O$ adhesive in these areas in accordance with GAF instructions and guidelines.

30. Thermoset immediately notified GAF of these continuing issues with lack of adhesion and again requested an on-site inspection by GAF to address the situation.

31. GAF again declined, and instructed Thermoset to continue with repairs as previously instructed.

32. On or about September 29, 2010, Tropical Storm Nicole stuck Nassau, Bahamas causing the lower pier roof and "four percent" roof at the terminal building to again become un-adhered, as well as areas on the barrel roof and the upper pier roof of the Project.

33. Immediately following Tropical Storm Nicole, Thermoset made the following visual observations of the roofs: approximately 80% of the roof membrane was loose on the

6

*Thermoset Corp. v. GAF Materials & RSG*
Complaint

upper pier roof; 25% of the membrane was loose on the lower pier roof; 15% of the membrane was loose on the terminal roof; and 15-20% of the membrane was loose on the barrel roof.

34.     Thermoset notified GAF of these conditions and demanded that appropriate representatives from GAF visit the site to inspect the failures.

35.     Thereafter, GAF conducted a site inspection with Thermoset where conditions were documented and core samples taken from affected areas of the roofs.

36.     Recognizing that the adhesive material was defective, GAF contacted Henkel Corporation[2] on or about October 21, 2010, in order to test the defective adhesive (see **Exhibit "C"**).

37.     In early October 2010, ACRC, the engineer of record, conducted uplift tests on portions of the Project, all of which failed.

38.     On October 26, 2010, Thermoset again notified GAF of the adhesive failures in the face of Tropical Storm Nicole (see attached **Exhibit "D"**).

39.     Following the uplift tests, GAF conceded that the glue was defective, as reflected in its correspondence of November 23, 2010: "Since the water based adhesive has not performed as indicated in ACRC's report, the following is the appropriate alternative securement method…" (see attached **Exhibit "E"**).

40.     GAF apologized to Thermoset for the failures and set forth a remedy that "would be acceptable to all parties involved." (see attached **Exhibit "F"**).

---

[2]     The adhesive manufacturer for GAF.

7

WEISS SEROTA HELFMAN PASTORIZA COLE & BONISKE, P.L.
200 EAST BROWARD BOULEVARD, SUITE 1900, FORT LAUDERDALE, FLORIDA 33301 · TEL. 954·763·4242 · FAX 954·764·7770

*Thermoset Corp. v. GAF Materials & RSG*
Complaint

41.   Further evidencing GAF's acknowledgement of fault, GAF agreed to pay, and did partially pay, RSG to release certain materials to Thermoset for it to use in the repairs.  GAF also agreed to take back a substantial amount of the defective adhesive material from RSG at no charge.

42.   During Thermoset's repairs following the procedures and protocols provided by GAF, the Project Owner claimed that the testing panels did not meet GAF's design requirements or code specifications for uplift, with the solution being to remove the roofing and insulation and re-apply the entire roof system in order to meet code requirements.

43.   In order to properly remediate the Project, Thermoset undertook substantial repairs of the entire roof system.  This included replacing the entire membrane of the upper pier roof; replacing the majority of the insulation; adding a cover board to the entire roof; enhancing the remainder of the roof by cutting and folding back the membrane, regluing and stripping in the membrane; and mechanically attaching all laps.

44.   On October 27, 2010, GAF approved the use of *solvent*-based glue for these repairs, despite refusing to allow its use at the beginning of the Project (see attached Exhibit "G").

45.   After remediation, ACRC conducted subsequent uplift testing on March 15, 2011.

46.   These uplift tests reflected that the water-based glue failed at a much lower level, and the solvent-based glue did not fail even when subjected to higher pressures.

47.   Nonetheless, the test samples as a whole failed because the facer pulled off of the insulation prior to achieving the correct uplift pressures.

8

*Thermoset Corp. v. GAF Materials & RSG*
Complaint

48.    As a result, the Project Owner required Thermoset to follow the same enhancement procedure for the entire patio roof and adjacent smaller roof areas.

49.    Following a final inspection of the work by GAF, Thermoset received GAF's Diamond Pledge NDL Roof Guarantee on June 12, 2011 (see attached Exhibit "H").

50.    As a result of the defective materials, Caribbean and Thermoset have incurred expenses exceeding $1 million for materials and various costs including labor for sandbags to hold down the roof membrane, shipping costs to return unused defective materials to GAF, ACRC inspections, additional materials and supplies, and labor and other related costs to repair and/or modify the roofs to meet GAF and engineering guidelines as well as Thermoset's obligations to the Contractor and Owner.

51.    Despite demand, Thermoset has not been reimbursed for its damages. Following service of correspondence relating to a portion of its damages at the time (see Exhibit "I" attached hereto), Thermoset received no response, and has not received payment for the amount demanded nor for any other of its damages.

## COUNT I: BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
(RSG)

52.    Thermoset realleges and incorporates the preceding paragraphs 1 through 51 as if more fully stated herein.

53.    This is a cause of action by Thermoset as assignee for breach of the implied warranty of merchantability under section 672.314, Florida Statutes.

9

*Thermoset Corp. v. GAF Materials & RSG*
Complaint

54.     Pursuant to the Florida Uniform Commercial Code (section 672.314, Fla. Stat.), RSG warranted that the roofing materials supplied to Thermoset were not defective and were merchantable, meaning that the materials and their component parts would pass without objection in the trade under the contract description, were of fair average quality within the description, were fit for their ordinary purposes, were of even kind, quality, and quantity, and conformed to the promises and affirmations made by RSG.

55.     RSG breached its implied warranty by virtue of the facts alleged herein and as evidenced by the failure of the roofing materials to perform as warranted.

56.     Caribbean and/or Thermoset timely notified RSG of the defective roofing materials, but RSG has failed to pay Caribbean for its damages.

57.     As a result of this breach, Caribbean has suffered damages including incidental and consequential damages, and prejudgment interest on damages sustained.

58.     Caribbean has assigned to Thermoset all of its rights, claims, and interest with regard to the roofing materials ordered and received for the Project.

WHEREFORE, Thermoset, as assignee of Caribbean, demands judgment for damages, prejudgment interest, the costs of this action, and such other relief as this Court deems just and proper.

## COUNT II: BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
### (GAF MATERIALS)

59.     Thermoset realleges and incorporates the preceding paragraphs 1 through 51 as if more fully stated herein.

10

*Thermoset Corp. v. GAF Materials & RSG*
Complaint

60.   This is a cause of action by Thermoset in its own right for breach of the implied warranty of merchantability under section 672.314, Florida Statutes.

61.   Based upon the direct communications and representations made by GAF to Thermoset, as alleged herein, the implied warranty of section 672.314, Florida Statutes, extends to Thermoset.

62.   Pursuant to section 672.314, Florida Statutes, GAF warranted that the roofing materials supplied to Thermoset were not defective and were merchantable, meaning that the materials and their component parts would pass without objection in the trade under the contract description, were of fair average quality within the description, were fit for their ordinary purposes, were of even kind, quality, and quantity, and conformed to the promises and affirmations made by GAF.

63.   GAF breached its implied warranty by virtue of the facts alleged herein and as evidenced by the failure of the roofing materials to perform as warranted.

64.   Caribbean and/or Thermoset timely notified GAF of the defective roofing materials, but GAF has failed to pay Thermoset for its damages.

65.   As a result of this breach, Thermoset has suffered damages including incidental and consequential damages, and prejudgment interest on damages sustained.

**WHEREFORE**, Thermoset demands judgment for damages, prejudgment interest, the costs of this action, and such other relief as this Court deems just and proper.

11

*Thermoset Corp. v. GAF Materials & RSG*
Complaint

## COUNT III: BREACH OF IMPLIED WARRANTY
## OF FITNESS FOR A PARTICULAR PURPOSE
(RSG)

66.     Thermoset realleges and incorporates the preceding paragraphs 1 through 51 as if more fully stated herein.

67.     This is a cause of action by Thermoset as assignee for breach of the implied warranty of fitness for a particular purpose under section 672.315, Florida Statutes.

68.     At all times material hereto and prior to the time of purchase, RSG was aware of Caribbean and Thermoset's specific needs with respect to the roofing system and materials needed for the Project, and that Caribbean and Thermoset were relying upon RSG's skill or judgment in furnishing materials meeting those requirements. Thus, impliedly warranted that the roofing materials ordered by Thermoset through Caribbean were fit for their particular purposes for use at the Project.

69.     RSG breached its implied warranty by virtue of the facts alleged herein and as evidenced by the failure of the roofing materials to perform as warranted.

70.     Caribbean and/or Thermoset timely notified RSG of the defective roofing materials, but RSG has failed to pay Caribbean for its damages.

71.     As a result of this breach, Caribbean has suffered damages including incidental and consequential damages, and prejudgment interest on damages sustained.

72.     Caribbean has assigned to Thermoset all of its rights, claims, and interest with regard to the roofing materials ordered and received for the Project.

12

*Thermoset Corp. v. GAF Materials & RSG*
Complaint

WHEREFORE, Thermoset, as assignee of Caribbean, demands judgment for damages, prejudgment interest, the costs of this action, and such other relief as this Court deems just and proper.

## COUNT IV: BREACH OF IMPLIED WARRANTY
## OF FITNESS FOR A PARTICULAR PURPOSE
### (GAF MATERIALS)

73.     Thermoset realleges and incorporates the preceding paragraphs 1 through 51 as if more fully stated herein.

74.     This is a cause of action by Thermoset in its own right for breach of the implied warranty of fitness for a particular purpose under section 672.315, Florida Statutes.

75.     Based upon the direct communications and representations made by GAF to Thermoset, as alleged herein, the implied warranty of section 672.315, Florida Statutes, extends to Thermoset.

76.     At all times material hereto and prior to the time of purchase, GAF was aware of Thermoset's specific needs with respect to the roofing system and materials needed for the Project, and that Thermoset was relying upon GAF's skill or judgment in furnishing materials meeting those requirements. Thus, GAF impliedly warranted that the roofing materials were fit for Thermoset's particular purposes for use at the Project.

77.     GAF breached its implied warranty by virtue of the facts alleged herein and as evidenced by the failure of the roofing materials to perform as warranted.

78.     Caribbean and/or Thermoset timely notified GAF of the defective roofing materials, but GAF has failed to pay Thermoset for its damages.

13

*Thermoset Corp. v. GAF Materials & RSG*
Complaint

79. As a result of this breach, Thermoset has suffered damages including incidental and consequential damages, and prejudgment interest on damages sustained.

**WHEREFORE**, Thermoset demands judgment for damages, prejudgment interest, the costs of this action, and such other relief as this Court deems just and proper.

## COUNT V: BREACH OF EXPRESS WARRANTY
### (GAF MATERIALS)

80. Thermoset realleges and incorporates the preceding paragraphs 1 through 51 as if more fully stated herein.

81. This is a cause of action by Thermoset in its own right and as assignee for breach of express warranty by affirmation pursuant to section 672.313, Florida Statutes.

82. At all times material hereto and prior to the time of purchase, GAF advertised in product literature, publications, brochures, and/or promotional materials, and through verbal representations advised of, the suitability and fitness of its materials for the Project, specifically the $H_2O$ bonding adhesive used.

83. These affirmations or promises by GAF became part of the basis of the bargain between Caribbean, Thermoset and GAF and created an express warranty to both Caribbean and Thermoset that the materials conformed to these express affirmations or promises.

84. GAF breached its express warranty to Caribbean and Thermoset by virtue of the facts alleged herein and as evidenced by the failure of the roofing materials to conform to the assurances and promises made by GAF in connection with their sale.

14

*Thermoset Corp. v. GAF Materials & RSG*
Complaint

---

85.     Caribbean and Thermoset relied upon these representations in the purchase and use, respectively, of the defective roofing materials, to their detriment.

86.     Caribbean and/or Thermoset timely notified GAF of the defective roofing materials, but GAF has failed to pay Caribbean or Thermoset for their damages.

87.     As a result of this breach, Caribbean and Thermoset have suffered damages including incidental and consequential damages, and prejudgment interest on damages sustained.

**WHEREFORE**, Thermoset, in its own right and as assignee of Caribbean, demands judgment for damages, prejudgment interest, the costs of this action, and such other relief as this Court deems just and proper.

## COUNT VI: NEGLIGENT MISREPRESENTATION
### (RSG)

88.     Thermoset realleges and incorporates the preceding paragraphs 1 through 51 as if more fully stated herein.

89.     This is an action by Thermoset in its own right and as assignee for negligent misrepresentation.

90.     Given RSG's special relationship with Caribbean and Thermoset and means of knowledge of roofing materials, it was RSG's duty to know the truth or falsity of the statements or representations, the omissions, or non-disclosures by it to Caribbean and Thermoset,.

91.     RSG made misrepresentations, omissions, or non-disclosures of material facts to Caribbean and Thermoset regarding GAF's adhesive for its roofing materials.

15

*Thermoset Corp. v. GAF Materials & RSG*
Complaint

92.    These misrepresentations, omissions, or non-disclosures of material facts include statements RSG made to Caribbean and Thermoset in its discussions regarding the Project affirming the suitability of the GAF $H_2O$ bonding adhesive specified and used on the Project in comparison with a solvent-based adhesive.

93.    RSG made misrepresentations, omissions, or non-disclosures under circumstances in which it should have known of their materiality and that Caribbean and Thermoset would rely upon them.

94.    Caribbean and Thermoset justifiably relied upon RSG's misrepresentations, omissions, or non-disclosures.

95.    Had Caribbean and Thermoset known of the unsuitability of the roofing materials and the defective nature of the $H_2O$ bonding adhesive, they would have selected different materials to purchase and install on the Project.

96.    As a result of RSG's misrepresentations, omissions, or non-disclosures and Caribbean and Thermoset's reliance thereon, Caribbean and Thermoset have been injured.

97.    Caribbean and/or Thermoset timely notified RSG of the defective roofing materials, but RSG has failed to pay Caribbean or Thermoset for their damages.

98.    Caribbean has assigned to Thermoset all of its rights, claims, and interest with regard to the roofing materials ordered and received for the Project.

WHEREFORE, Thermoset, in its own right and as assignee of Caribbean, demands judgment for damages, prejudgment interest, the costs of this action, and such other relief as this Court deems just and proper.

16

*Thermoset Corp. v. GAF Materials & RSG*
Complaint

## COUNT VII: NEGLIGENT MISREPRESENTATION
### (GAF MATERIALS)

99.    Thermoset realleges and incorporates the preceding paragraphs 1 through 51 as if more fully stated herein.

100.    This is an action by Thermoset in its own right and as assignee for negligent misrepresentation.

101.    Given GAF's special relationship with Caribbean and Thermoset and means of knowledge of roofing materials, it was GAF's duty to know the truth or falsity of the statements or representations, the omissions, or non-disclosures by it to Caribbean and Thermoset.

102.    GAF made misrepresentations, omissions, or non-disclosures of material facts to Caribbean and Thermoset regarding GAF's adhesive for its roofing materials.

103.    These misrepresentations, omissions, or non-disclosures of material facts include statements GAF made to Caribbean and Thermoset in its discussions regarding the Project affirming the suitability of the GAF $H_2O$ bonding adhesive specified and used on the Project in comparison with a solvent-based adhesive.

104.    GAF made misrepresentations, omissions, or non-disclosures under circumstances in which it should have known of their materiality and that Caribbean and Thermoset would rely upon them.

105.    Caribbean and Thermoset justifiably relied upon GAF's misrepresentations, omissions, or non-disclosures.

17

*Thermoset Corp. v. GAF Materials & RSG*
Complaint

106.   Had Caribbean and Thermoset knew of the unsuitability of the roofing materials and the defective nature of the $H_2O$ bonding adhesive, they would have selected different materials to purchase and install on the Project.

107.   As a result of GAF's misrepresentations omissions, or non-disclosures and Caribbean and Thermoset's reliance thereon, Caribbean and Thermoset have been injured.

108.   Caribbean and/or Thermoset timely notified GAF of the defective roofing materials, but GAF has failed to pay Caribbean or Thermoset for their damages.

109.   Caribbean has assigned to Thermoset all of its rights, claims, and interest with regard to the roofing materials ordered and received for the Project.

**WHEREFORE,** Thermoset, in its own right and assignee of Caribbean, demands judgment for damages, prejudgment interest, the costs of this action, and such other relief as this Court deems just and proper.

## COUNT VIII: FLORIDA'S UNFAIR AND DECEPTIVE TRADE PRACTICES ACT
### (GAF MATERIALS)

110.   Thermoset realleges and incorporates the preceding paragraphs 1 through 51 as if more fully stated herein.

111.   This is an action by Thermoset in its own right and as assignee, pursuant to section 501.201, *et seq.*, Florida Statutes.

112.   By the acts described above, GAF has engaged in unfair or deceptive acts or practices in violation of the Florida Deceptive and Unfair Trade Practices Act, section 501.201, *et seq.*, Florida Statutes.

18

*Thermoset Corp. v. GAF Materials & RSG*
Complaint

113.   Specifically GAF represented to Caribbean and Thermoset, through statements included in the Project specifications, product literature, publications, brochures, promotional materials and/or advertising that it produced and disseminated, that the adhesive it sold was suitable and reliable for use in roofing systems.

114.   Moreover, GAF further verbally assured Caribbean and Thermoset in its discussions regarding the Project of the suitability of the GAF $H_2O$ bonding adhesive specified and used in the Project in comparison with a solvent-based adhesive.

115.   GAF's representations were misleading, unfair or deceptive in that they did not disclose the true nature, condition, or quality of the roofing materials, or their unsuitability for use in roofing systems, including the roofing system for the Project.

116.   GAF's deceptive and unfair acts further caused Thermoset to purchase GAF's roofing materials through Caribbean, and if Caribbean and Thermoset had known the true nature, condition, or quality of the roofing materials, or their unsuitability for use in roofing systems, including the roofing system for the Project, they would have selected different materials.

117.   Caribbean and Thermoset have been injured by GAF's deceptive and unfair trade practices, as provided by section 501.204, Florida Statutes.

118.   Thermoset has retained the undersigned attorneys to represent it in this matter and is obligated to pay them a reasonable fee. Thermoset is entitled to recover its attorneys' fees and costs pursuant to section 501.2105, Florida Statutes.

19

*Thermoset Corp. v. GAF Materials & RSG*
Complaint

---

**WHEREFORE,** Thermoset in its own right and as assignee of Caribbean, demands

judgment for damages, prejudgment interest, the costs of this action, attorney's fees, and such

other relief as this Court deems just and proper.

Dated: December 31, 2013.

Respectfully submitted,

WEISS SEROTA HELFMAN
PASTORIZA COLE & BONISKE, P.L.
*Attorneys for Thermoset Corporation*
200 East Broward Blvd., Suite 1900
Fort Lauderdale, Florida 33301
Telephone: (954) 763-4242
Facsimile: (954) 764-7770

By:    /s/ Gary L. Brown
        GARY L. BROWN
        Florida Bar No. 0054585
        Primary: gbrown@wsh-law.com
        Secondary: imunoz@wsh-law.com
        JOANNA D. THOMSON
        Florida Bar No. 0055723
        Primary: jthomson@wsh-law.com
        Secondary: ozuniga@wsh-law.com

20

_**EXHIBIT "B"**_

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

CASE NO. 14-60268-CIV-COHN/SELTZER

THERMOSET CORPORATION, f/k/a
THERMOSET ROOFING CORP., a
Florida corporation,

      Plaintiff,

v.

BUILDING MATERIALS CORP. OF
AMERICA d/b/a GAF MATERIALS
CORPORATION, a Delaware corporation,
and ROOFING SUPPLY GROUP
ORLANDO LLC, a Delaware limited
liability company,

      Defendants.

_____/

## AMENDED COMPLAINT FOR DAMAGES

Plaintiff THERMOSET CORPORATION f/k/a THERMOSET ROOING CORP., a

Florida corporation, in its own right, and as assignee of the rights, claims, and interest of

Caribbean Island Services Corporation, a Florida corporation files its Amended Complaint

against the Defendants, BUILDING MATERIALS CORP. OF AMERICA d/b/a GAF

MATERIALS CORPORATION, a Delaware corporation, and ROOFING SUPPLY GROUP

ORLANDO LLC, a Delaware limited liability company, and alleges as follows:

### Parties, Jurisdiction, and Venue

1.    This is an action by Thermoset Corporation against Building Materials Corp. of

America d/b/a GAF Materials Corporation and Roofing Supply Group Orlando LLC which was

removed on February 3, 2014 from the Circuit Court of the Seventeenth Judicial Circuit in and

for Broward County, Florida to the United States District Court for the Southern District of

*Thermoset Corp. v. GAF Materials & RSG*
Amended Complaint

Florida, Fort Lauderdale Division pursuant to 28 U.S.C. §§ 1332, 1441 and 1446.

2.    This action is within the jurisdiction of the United States District Court, pursuant to  28 U.S.C. §§ 1332, as the matter in controversy exceeds the sum or value of $75,000.00, exclusive of interests and costs, and is between citizens of different states. *See* 28 U.S.C. § 1332(a)(1).

3.    The United States District Court for the Southern District of Florida, Fort Lauderdale Division, includes the judicial circuit in which Plaintiff filed its original Complaint and therefore removal to this Court was proper pursuant to 28 U.S.C. 1446(a).

4.    Thermoset Corporation f/k/a Thermoset Roofing Corporation. ("Thermoset") is a corporation organized and existing under Florida Law, with its principal place of business at 1441 S.W. 30th Avenue, Suite 28, Pompano Beach, Florida 33069, in Broward County.

5.    Roofing Supply Group Orlando LLC ("RSG") is a limited liability company organized under Delaware law, with its principal place of business in Texas.  GAF is a foreign corporation that is incorporated in the state of Delaware and has its principal place of business in New Jersey.

### General Allegations

6.    Thermoset is a roofing contractor that specializes in repairing, waterproofing, replacing, and installing assorted roofing systems sold by various manufacturers, including systems manufactured by GAF.

7.    GAF is a manufacturer for residential and commercial projects that manufactures and sells all major low-slope roofing technologies, including repair and maintenance products,

2

*Thermoset Corp. v. GAF Materials & RSG*
Amended Complaint

---

roof restoration systems and new roofing systems, and assists contractors match the correct

roofing systems to their clients' specific needs.

8.      RSG is a distributor of residential and commercial roofing products which works

with, and purchases roofing systems from, various roofing manufacturers, including GAF, for

installation by various roofing contractors, including Thermoset.

9.      On or about November 21, 2005, Thermoset entered into a Master Select Roofing

Contractor Agreement with GAF, attached hereto as **Exhibit "A"** ("Agreement").

10.     As set forth in more detail in the Agreement, once Thermoset completed

qualification requirements and signed the Agreement, it was entitled to apply to GAF for roofing

systems guarantees, and the Agreement listed Thermoset as a GAF Materials Corporation

"Master Select Roofing Contractor."

11.     In turn, Thermoset agreed to perform its work in a skilled and workmanlike

manner on any roof that it would thereafter seek a GAF guarantee, along with timely notifying

GAF and providing documentation as set forth in the guarantee procedure guidelines. It further

agreed to assist GAF in making inspections of the roofing systems it installed.

12.     Thermoset was hired by non-party Ledcor/Wosley, a joint venture, to install a

new "TPO" roof system at the Lynden Pindling International Airport, Nassau, Bahamas

("Project").

13.     Because Thermoset had a direct, on-going relationship with GAF, Thermoset

approached GAF to provide roof-system specifications for a GAF system that would meet the

Project requirements, including for the roof-wind survey, negative pressure requirements, wind

3

*Thermoset Corp. v. GAF Materials & RSG*
Amended Complaint

---

warranty requirements, and Miami-Dade County Product Approval. Thermoset provided GAF

with the required roof specifications reflecting the use of a roof system manufactured by non-

party Carlisle Syntec ("Carlisle"). GAF thereafter provided Thermoset with its own set of

specifications for a "TPO" roof system.

14.     In or around early 2009, Thermoset provided RSG with GAF's specifications for

the purpose of obtaining materials meeting the specifications and the Project requirements. RSG

and GAF thereafter discussed appropriate materials to satisfy these requirements. Despite

Thermoset's initial request to utilize a solvent-based adhesive for the membrane components of

the roof system, GAF and RSG specifically recommended utilizing a water-based adhesive for

application of roofing membrane to the insulation board over the existing substrate (the GAF $H_2O$

bonding adhesive).

15.     Relying upon the recommendations of RSG and GAF, Thermoset purchased

specific roofing materials and components from GAF, through RSG and thereafter began

installation of the roof system at the Project, working specifically on the upper pier, lower pier,

and barrel roofs, as well as the roof at the terminal building at the airport.

16.     The roofing materials for the Project, including the GAF $H_2O$ bonding adhesive

were purchased from RSG by Thermoset's principal through a related company known as

Caribbean Island Services Corp. ("Caribbean")[1], and the materials were delivered to Caribbean

in Pompano Beach, Florida, for use by Thermoset at the Project.

---

[1]     Caribbean is a holding company used by Thermoset for the purchase of materials on
projects in the Caribbean Islands.

*Thermoset Corp. v. GAF Materials & RSG*
Amended Complaint

17.    At the beginning of the Project, the Project Owner's Consultant, Morrison Hirschfield ("Owner's Consultant") raised questions concerning installation of the curved section of the barrel roof of the Project.

18.    In response, representatives of GAF, the Owner, Owner's Consultant, the Project Architect, and Thermoset discussed the installation, and GAF confirmed that Thermoset's installation followed the Miami-Dade County Notice of Acceptance and GAF's installation guidelines.

19.    GAF indicated that it would send a field inspector to the Project to conduct an inspection of the installation and take appropriate samples and/or test cuts of the roof.

20.    On April 8, 2010, and July 9, 2010, GAF conducted interim inspections of the work and concluded that the insulation and membrane were suitably adhered (see attached Exhibit "B").

21.    Subsequently, Thermoset discovered that at the edges of the barrel roof, portions of the membrane had become detached from the insulation board (approximately 5-10 feet from the roof edge) in several locations.

22.    Thermoset notified GAF, which advised Thermoset to pull the membrane back, re-adhere it using the GAF $H_2O$ bonding adhesive, and reinstall the temporary mechanical attachment at the edge.

23.    Thermoset re-attached these sections in accordance with GAF's instructions.

*Thermoset Corp. v. GAF Materials & RSG*
Amended Complaint

---

24.     Shortly thereafter, during Thermoset's installation of a permanent perimeter attachment, Thermoset discovered other areas of the roof where previously adhered membrane became easily detached from the insulation.

25.     Thermoset immediately advised GAF of the situation and requested that GAF visit the site to determine the cause of the failure.

26.     GAF declined and instead instructed Thermoset to re-adhere the membrane using the same process and products as it had previously instructed.

27.     Thermoset again re-attached the affected areas in accordance with GAF's instructions.

28.     In late August 2010, a series of rain storms with minor winds (less than 20 mph) passed over Nassau, Bahamas, causing the corners and perimeter at the ends of the lower pier roof, a large section of the perimeter of the "four percent" main terminal roof, and upper perimeter edge areas of the barrel roof, to become un-adhered.

29.     At that time, Thermoset observed the membrane peeling right off of the insulation and having no visible signs of adhesive on the back of the membrane—even though Thermoset had previously applied the GAF H$_2$0 adhesive in these areas in accordance with GAF instructions and guidelines.

30.     Thermoset immediately notified GAF of these continuing issues with lack of adhesion and again requested an on-site inspection by GAF to address the situation.

31.     GAF again declined, and instructed Thermoset to continue with repairs as previously instructed.

6

32.     On or about September 29, 2010, Tropical Storm Nicole stuck Nassau, Bahamas causing the lower pier roof and "four percent" roof at the terminal building to again become un-adhered, as well as areas on the barrel roof and the upper pier roof of the Project.

33.     Immediately following Tropical Storm Nicole, Thermoset made the following visual observations of the roofs: approximately 80% of the roof membrane was loose on the upper pier roof; 25% of the membrane was loose on the lower pier roof; 15% of the membrane was loose on the terminal roof; and 15-20% of the membrane was loose on the barrel roof.

34.     Thermoset notified GAF of these conditions and demanded that appropriate representatives from GAF visit the site to inspect the failures.

35.     Thereafter, GAF conducted a site inspection with Thermoset where conditions were documented and core samples taken from affected areas of the roofs.

36.     Recognizing that the adhesive material was defective, GAF contacted Henkel Corporation[2] on or about October 21, 2010, in order to test the defective adhesive (see **Exhibit "C"**).

37.     In early October 2010, ACRC, the engineer of record, conducted uplift tests on portions of the Project, all of which failed.

38.     On October 26, 2010, Thermoset again notified GAF of the adhesive failures in the face of Tropical Storm Nicole (see attached **Exhibit "D"**).

39.     Following the uplift tests, GAF conceded that the glue was defective, as reflected in its correspondence of November 23, 2010: "Since the water based adhesive has not performed

---

[2]     The adhesive manufacturer for GAF.

7

*Thermoset Corp. v. GAF Materials & RSG*
Amended Complaint

as indicated in ACRC's report, the following is the appropriate alternative securement method..." (see attached **Exhibit "E"**).

40.    GAF apologized to Thermoset for the failures and set forth a remedy that "would be acceptable to all parties involved." (see attached **Exhibit "F"**).

41.    Further evidencing GAF's acknowledgement of fault, GAF agreed to pay, and did partially pay, RSG to release certain materials to Thermoset for it to use in the repairs. GAF also agreed to take back a substantial amount of the defective adhesive material from RSG at no charge.

42.    During Thermoset's repairs following the procedures and protocols provided by GAF, the Project Owner claimed that the testing panels did not meet GAF's design requirements or code specifications for uplift, with the solution being to remove the roofing and insulation and re-apply the entire roof system in order to meet code requirements.

43.    In order to properly remediate the Project, Thermoset undertook substantial repairs of the entire roof system. This included replacing the entire membrane of the upper pier roof; replacing the majority of the insulation; adding a cover board to the entire roof; enhancing the remainder of the roof by cutting and folding back the membrane, regluing and stripping in the membrane; and mechanically attaching all laps.

44.    On October 27, 2010, GAF approved the use of *solvent*-based glue for these repairs, despite refusing to allow its use at the beginning of the Project (see attached **Exhibit "G"**).

45.    After remediation, ACRC conducted subsequent uplift testing on March 15, 2011.

8

*Thermoset Corp. v. GAF Materials & RSG*
Amended Complaint

---

46.     These uplift tests reflected that the water-based glue failed at a much lower level, and the solvent-based glue did not fail even when subjected to higher pressures.

47.     Nonetheless, the test samples as a whole failed because the facer pulled off of the insulation prior to achieving the correct uplift pressures.

48.     As a result, the Project Owner required Thermoset to follow the same enhancement procedure for the entire patio roof and adjacent smaller roof areas.

49.     Following a final inspection of the work by GAF, Thermoset received GAF's Diamond Pledge NDL Roof Guarantee on June 12, 2011 (see attached **Exhibit "H"**).

50.     As a result of the defective materials, Caribbean and Thermoset have incurred expenses exceeding $1 million for materials and various costs including labor for sandbags to hold down the roof membrane, shipping costs to return unused defective materials to GAF, ACRC inspections, additional materials and supplies, and labor and other related costs to repair and/or modify the roofs to meet GAF and engineering guidelines as well as Thermoset's obligations to the Contractor and Owner.

51.     Despite demand, Thermoset has not been reimbursed for its damages. Following service of correspondence relating to a portion of its damages at the time (see **Exhibit "I"** attached hereto), Thermoset received no response, and has not received payment for the amount demanded nor for any other of its damages.

## COUNT I: BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
### (RSG)

52.     Thermoset realleges and incorporates the preceding paragraphs 1 through 51 as if

*Thermoset Corp. v. GAF Materials & RSG*
Amended Complaint

more fully stated herein.

53.     This is a cause of action by Thermoset as assignee for breach of the implied warranty of merchantability under section 672.314, Florida Statutes.

54.     Pursuant to the Florida Uniform Commercial Code (section 672.314, Fla. Stat.), RSG warranted that the roofing materials supplied to Thermoset were not defective and were merchantable, meaning that the materials and their component parts would pass without objection in the trade under the contract description, were of fair average quality within the description, were fit for their ordinary purposes, were of even kind, quality, and quantity, and conformed to the promises and affirmations made by RSG.

55.     RSG breached its implied warranty by virtue of the facts alleged herein and as evidenced by the failure of the roofing materials to perform as warranted.

56.     Caribbean and/or Thermoset timely notified RSG of the defective roofing materials, but RSG has failed to pay Caribbean for its damages.

57.     As a result of this breach, Caribbean has suffered damages including incidental and consequential damages, and prejudgment interest on damages sustained.

58.     Caribbean has assigned to Thermoset all of its rights, claims, and interest with regard to the roofing materials ordered and received for the Project.

**WHEREFORE,** Thermoset, as assignee of Caribbean, demands judgment for damages, prejudgment interest, the costs of this action, and such other relief as this Court deems just and proper.

*Thermoset Corp. v. GAF Materials & RSG*
Amended Complaint

## COUNT II: BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
### (GAF MATERIALS)

59.     Thermoset realleges and incorporates the preceding paragraphs 1 through 51 as if more fully stated herein.

60.     This is a cause of action by Thermoset in its own right for breach of the implied warranty of merchantability under section 672.314, Florida Statutes.

61.     Based upon the direct communications and representations made by GAF to Thermoset, as alleged herein, the implied warranty of section 672.314, Florida Statutes, extends to Thermoset.

62.     Pursuant to section 672.314, Florida Statutes, GAF warranted that the roofing materials supplied to Thermoset were not defective and were merchantable, meaning that the materials and their component parts would pass without objection in the trade under the contract description, were of fair average quality within the description, were fit for their ordinary purposes, were of even kind, quality, and quantity, and conformed to the promises and affirmations made by GAF.

63.     GAF breached its implied warranty by virtue of the facts alleged herein and as evidenced by the failure of the roofing materials to perform as warranted.

64.     Caribbean and/or Thermoset timely notified GAF of the defective roofing materials, but GAF has failed to pay Thermoset for its damages.

65.     As a result of this breach, Thermoset has suffered damages including incidental and consequential damages, and prejudgment interest on damages sustained.

11

*Thermoset Corp. v. GAF Materials & RSG*
Amended Complaint

WHEREFORE, Thermoset demands judgment for damages, prejudgment interest, the costs of this action, and such other relief as this Court deems just and proper.

## COUNT III: BREACH OF IMPLIED WARRANTY OF FITNESS FOR A PARTICULAR PURPOSE (RSG)

66.     Thermoset realleges and incorporates the preceding paragraphs 1 through 51 as if more fully stated herein.

67.     This is a cause of action by Thermoset as assignee for breach of the implied warranty of fitness for a particular purpose under section 672.315, Florida Statutes.

68.     At all times material hereto and prior to the time of purchase, RSG was aware of Caribbean and Thermoset's specific needs with respect to the roofing system and materials needed for the Project, and that Caribbean and Thermoset were relying upon RSG's skill or judgment in furnishing materials meeting those requirements. Thus, impliedly warranted that the roofing materials ordered by Thermoset through Caribbean were fit for their particular purposes for use at the Project.

69.     RSG breached its implied warranty by virtue of the facts alleged herein and as evidenced by the failure of the roofing materials to perform as warranted.

70.     Caribbean and/or Thermoset timely notified RSG of the defective roofing materials, but RSG has failed to pay Caribbean for its damages.

*Thermoset Corp. v. GAF Materials & RSG*
Amended Complaint

71.     As a result of this breach, Caribbean has suffered damages including incidental and consequential damages, and prejudgment interest on damages sustained.

72.     Caribbean has assigned to Thermoset all of its rights, claims, and interest with regard to the roofing materials ordered and received for the Project.

**WHEREFORE,** Thermoset, as assignee of Caribbean, demands judgment for damages, prejudgment interest, the costs of this action, and such other relief as this Court deems just and proper.

## COUNT IV: BREACH OF IMPLIED WARRANTY OF FITNESS FOR A PARTICULAR PURPOSE (GAF MATERIALS)

73.     Thermoset realleges and incorporates the preceding paragraphs 1 through 51 as if more fully stated herein.

74.     This is a cause of action by Thermoset in its own right for breach of the implied warranty of fitness for a particular purpose under section 672.315, Florida Statutes.

75.     Based upon the direct communications and representations made by GAF to Thermoset, as alleged herein, the implied warranty of section 672.315, Florida Statutes, extends to Thermoset.

76.     At all times material hereto and prior to the time of purchase, GAF was aware of Thermoset's specific needs with respect to the roofing system and materials needed for the Project, and that Thermoset was relying upon GAF's skill or judgment in furnishing materials meeting those requirements. Thus, GAF impliedly warranted that the roofing materials were fit for Thermoset's particular purposes for use at the Project.

*Thermoset Corp. v. GAF Materials & RSG*
Amended Complaint

77.   GAF breached its implied warranty by virtue of the facts alleged herein and as evidenced by the failure of the roofing materials to perform as warranted.

78.   Caribbean and/or Thermoset timely notified GAF of the defective roofing materials, but GAF has failed to pay Thermoset for its damages.

79.   As a result of this breach, Thermoset has suffered damages including incidental and consequential damages, and prejudgment interest on damages sustained.

**WHEREFORE,** Thermoset demands judgment for damages, prejudgment interest, the costs of this action, and such other relief as this Court deems just and proper.

## COUNT V: BREACH OF EXPRESS WARRANTY
### (GAF MATERIALS)

80.   Thermoset realleges and incorporates the preceding paragraphs 1 through 51 as if more fully stated herein.

81.   This is a cause of action by Thermoset in its own right and as assignee for breach of express warranty by affirmation pursuant to section 672.313, Florida Statutes.

82.   At all times material hereto and prior to the time of purchase, GAF advertised in product literature, publications, brochures, and/or promotional materials, and through verbal representations advised of, the suitability and fitness of its materials for the Project, specifically the $H_2O$ bonding adhesive used.

83.   These affirmations or promises by GAF became part of the basis of the bargain between Caribbean, Thermoset and GAF and created an express warranty to both Caribbean and Thermoset that the materials conformed to these express affirmations or promises.

14

*Thermoset Corp. v. GAF Materials & RSG*
Amended Complaint

---

84.    GAF breached its express warranty to Caribbean and Thermoset by virtue of the facts alleged herein and as evidenced by the failure of the roofing materials to conform to the assurances and promises made by GAF in connection with their sale.

85.    Caribbean and Thermoset relied upon these representations in the purchase and use, respectively, of the defective roofing materials, to their detriment.

86.    Caribbean and/or Thermoset timely notified GAF of the defective roofing materials, but GAF has failed to pay Caribbean or Thermoset for their damages.

87.  .  As a result of this breach, Caribbean and Thermoset have suffered damages including incidental and consequential damages, and prejudgment interest on damages sustained.

**WHEREFORE,** Thermoset, in its own right and as assignee of Caribbean, demands judgment for damages, prejudgment interest, the costs of this action, and such other relief as this Court deems just and proper.

### COUNT VI: NEGLIGENT MISREPRESENTATION
### (RSG)

**[Para.'s 88-98: Dismissed with prejudice per Order on Motion to Dismiss (EFC #38)]**

### COUNT VII: NEGLIGENT MISREPRESENTATION
### (GAF MATERIALS)

**[Para.'s 99-109: Dismissed with prejudice per Order on Motion to Dismiss (EFC #38)]**

### COUNT VIII: FLORIDA'S UNFAIR AND DECEPTIVE TRADE PRACTICES ACT
### (GAF MATERIALS)

*Thermoset Corp. v. GAF Materials & RSG*
Amended Complaint

---

110.    Thermoset realleges and incorporates the preceding paragraphs 1 through 51 as more fully stated herein.

111.    This is an action by Thermoset, as assignee, pursuant to section 501.201, *et seq.*, Florida Statutes.

112.    By the acts described above, GAF has engaged in unfair or deceptive acts or practices in violation of the Florida Deceptive and Unfair Trade Practices Act, section 501.201, *et seq.*, Florida Statutes (the "Act").

113.    Specifically GAF represented to Caribbean (and Thermoset), through statements included in the Project specifications, product literature, publications, brochures, promotional materials and/or advertising that it produced and disseminated, that the adhesive it sold was suitable and reliable for use in roofing systems.

114.    Moreover, GAF further verbally assured Caribbean (and Thermoset) in its discussions regarding the Project of the suitability of the GAF $H_2O$ bonding adhesive specified and used in the Project in comparison with a solvent-based adhesive.

115.    GAF's representations were misleading, unfair or deceptive in that they did not disclose the true nature, condition, or quality of the roofing materials, or their unsuitability for use in roofing systems, including the roofing system for the Project.

116.    GAF's deceptive and unfair acts further caused Thermoset to purchase GAF's roofing materials through Caribbean, and if Caribbean and Thermoset had known the true nature, condition, or quality of the roofing materials, or their unsuitability for use in roofing systems, including the roofing system for the Project, they would have selected different materials.

*Thermoset Corp. v. GAF Materials & RSG*
Amended Complaint

117. Caribbean, and thereby Thermoset, as assignee, has suffered actual damages within the meaning of the Act due to GAF's deceptive and unfair trade practices, to wit: the difference in market value of the materials as delivered in their defective condition and the market value of the materials as it should have been delivered according to the discussions between the parties and the Project requirements. *See Rodriguez v. Recovery Performance & Marine, LLC*, 38 So. 3d 178, 180–81 (Fla. 3d DCA 2010). Alternatively, the defective nature of the materials rendered them valueless, and thus, Caribbean, and thereby Thermoset, as assignee, is entitled to recover the purchase price for the materials. *See Siever v. BWGaskets, Inc.*, 669 F. Supp. 2d 1286, 1294 (M.D. Fla. 2009) (citing *Rollins, Inc. v. Heller*, 454 So. 2d 580, 585 (Fla. 3d DCA 1984)).

118. Thermoset, as assignee, has retained the undersigned attorneys to represent it in this matter and is obligated to pay them a reasonable fee. Thermoset is entitled to recover its attorneys' fees and costs pursuant to section 501.2105, Florida Statutes.

**WHEREFORE**, Thermoset, as assignee of Caribbean, demands judgment for actual damages under the Act, prejudgment interest, the costs of this action, attorney's fees, and such other relief as this Court deems just and proper.

Dated: June 18, 2014.

Respectfully submitted,

By:_____/s/ Gary L. Brown_____
        GARY L. BROWN

17

*Thermoset Corp. v. GAF Materials & RSG*
Amended Complaint

## CERTIFICATE OF SERVICE

I hereby certify that on June 18, 2014, I electronically filed the foregoing document with

the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served

this day on all counsel of record identified on the attached service list either via transmissions of

Notices of Electronic Filing generated by CM/ECF.

ARNSTEIN & LEHR LLP

Counsel for the Plaintiff
200 East Las Olas Boulevard, Suite 1000
Fort Lauderdale, Florida 33301
Ph: (954) 713.7600
glbrown@arnstein.com

By: /s/ Gary L. Brown
        Gary L. Brown
        Florida Bar No: 0054585
        glbrown@arnstein.com

## SERVICE LIST

STEVEN W. CORNMAN
KUBICKI DRAPER, P.A.
25 West Flagler Street, PH
Miami, Florida 33130
Telephone: (305) 982-6632
Fax: (305) 374-7846
SC@kubickidraper.com
*Attorneys for RSG and GAF*

18

# Exhibit "A"

Nov 29 05 05:20p                                                              p.5

## Step 3                    Review and Sign Agreement

### GAF MATERIALS CORPORATION
### MASTER SELECT ROOFING CONTRACTOR
### AGREEMENT (continued)

We agree and you hereby acknowledge that at all times you are and will be functioning as an independent contractor, and that you are neither an agent nor legal representative of GAFMC for any purpose whatsoever. We further agree and you acknowledge that you have no express or implied right or authority to assume or create any obligation or responsibility for or on behalf of GAFMC or to bind GAFMC in any manner. You acknowledge that you will be approved only for the systems checked off below, and you agree not to hold yourself out as having any additional approvals.

You affirm that you comply with the requirements of the GAFMC Master Select Contractor Program described in the "Requirements Section." You agree to continue to provide and implement training and professional business processes designed to achieve goals of this certification and comply with all other requirements of the Program.

The term of this agreement shall start on _____ and continue for 12 months. This agreement shall be automatically renewed thereafter for successive 12-month periods unless terminated by either party in writing at least 30 days prior to the expiration date. Any cancellation does not, however, relieve either you or GAFMC of its obligations under any guarantee issued, or notice of award accepted, prior to cancellation.

Please have this agreement signed by a principal of your company where indicated to reflect your agreement to these terms and conditions. This application should be returned to GAFMC, Certified Contractor Programs, 1361 Alps Road, Wayne, NJ 07470. This agreement will not be effective until the "Accepted and Agreed" line below has been executed by an officer of GAF Materials Corporation in Wayne, NJ.

ACCEPTED AND AGREED:                          ACCEPTED AND AGREED:

Thermoset Roofing Corp                        GAF MATERIALS CORPORATION
(Roofing Contracting Firm Name)               By: _____ (signed by Territory Manager)

By: _____                           Name: PABLO ACANDA

Name: Adam Hamo                               Title: GAF Territory Manager

Title: PRES.                                  Date: 11-21-05

Date: 11-21-05                                By: _____

                                              Name: _____

                                              Title: Senior Vice President of Corporate Marketing

                                              Date: _____

                                              APPROVED FOR:
                                              ☐ Asphaltic Systems        ☐Yes  ☐No
                                              ☐ Single Ply Systems       ☐Yes  ☐No
                                              ☐ Restoration Systems      ☐Yes  ☐No

## Step 3          Review and Sign Agreement

**GAF MATERIALS CORPORATION**
**MASTER SELECT ROOFING CONTRACTOR**
**AGREEMENT**

We agree that, after signing this agreement and successfully completing all qualification requirements, you will be listed as a GAF Materials Corporation ("GAFMC") MASTER SELECT ROOFING CONTRACTOR. MASTER SELECT ROOFING CONTRACTOR approval for GAFMC roofing systems is based upon satisfactory qualification in the application of each type of system. As a MASTER SELECT ROOFING CONTRACTOR, you will be entitled to apply to GAFMC for the issuance of GAFMC roofing system guarantees. GAFMC reserves the right to refuse to issue any such guarantee when its written technical specification requirements are not followed or if you do not comply with your obligations under this agreement.

In recognition of the value to you of being a GAFMC MASTER SELECT ROOFING CONTRACTOR, you agree to fulfill certain obligations and responsibilities as follows:

1.      You agree to advise us of your need for a GAFMC guarantee in a timely fashion and to provide us with the documentation and pay the appropriate charges in the manner and as detailed in our guarantee procedure guidelines which have been separately proved to you.

2.      You agree that, on any roof for which you will seek a GAFMC guarantee, you will perform your work in a skilled and workmanlike manner and will apply the roofing system as set forth in the applicable technical specifications manual current at the time of application.

3.      Should GAFMC so desire, you will permit GAFMC representatives to inspect the roof application and take samples during or shortly after application. You agree to promptly correct at your expense any deviations from standard good roofing practices and/or GAFMC's specifications that the GAFMC representative may bring to your attention.

4.      You agree to be responsible for any repairs that may be necessary as a result of deviations from standard good roofing practices and/or GAFMC's specifications as to which complaints are made or inspections reveal to be necessary within a two year period after the completion of the roof except as set forth in paragraph 5. These repairs include, but are not limited to, places where the membrane or roof surfacing has not remained in place and any slippage or buckling of the flashings, whether or not the roof is leaking.

5.      You also agree that you will assist GAFMC in making any inspections(s) so long as the inspection(s) and subsequent repair(s) are made within the three months after the second anniversary of the roof completion. If you do not receive notice from GAFMC of the need for any inspections(s) or repair(s) within that time period, you shall have no further obligation to make repairs at your expense pursuant to paragraphs 4 and 5 of this Agreement, provided you promptly commence and diligently proceed with any repairs which were previously called to your attention during that period.

You understand, and we agree, that neither the inspection(s) by GAFMC of a roof application, nor the issuance by GAFMC of a guarantee for the roof, in any way relieves you of your obligation and responsibility to perform your work in a skilled and workmanlike manner and to apply GAFMC's products as set forth in the applicable technical specifications manual.

You agree to indemnify and hold GAFMC harmless from any liability or expense, which GAFMC may incur on account of your negligence or failure to perform your obligations under this agreement. GAFMC agrees to indemnify and hold you harmless from any liability or expense you may incur as a result of the GAFMC's refusal to issue a guarantee unless the refusal is based upon your failure to comply with your responsibilities under this agreement.

# Exhibit "B"
# (Composite)



**GAF MATERIALS CORPORATION**

1361 Alps Road Wayne NJ 07470-3689 * Tel: 800-766-3411

| Number: | 1-2009-00006431-01-T |
|---|---|
| Type: | Interim |
| Date: | 04/08/10 |

January 26, 2011

# Roof Investigation Report
## Immediate Punch List Action Required

| | | |
|---|---|---|
| **Contractor: Information:** | **Contractor Information:**<br><br><br><br>**GAF Territory Mgr:** | Thermoset Roofing Corporation   **Phone #: 954-984-9099**<br>1441 S. W. 30th Avenue, #28   **Fax #: 954-984-9081**<br>Pompano Beach, FL 33069   **Email:**<br>Dario Miranda, Joe Kelly |
| **Project Information** | **GAF File #:**<br>**Guarantee Issued:**<br>**Project Information:**<br><br><br>**Owner Information:**<br><br>**Requestor's Name:**<br>**Roof System:**<br>**Project Quality Rating:** | 2009-00006431<br>/ /<br>NASSAU AIRPORT DEVELOPMENT COMPANY<br><br>NASSAU, BH 00000<br>NASSAU AIRPORT DEVELOPMENT COMPANY LTD.<br><br>NASSAU AIRPORT DEVELOPMENT LTD (NAD)<br>TFANI60                           Squares:     2400<br>0.00 |
| **Contractor Action Required** | 1. Review the punch list items... gain commitment from crew<br>2. Repairs Made... assure crew acts in a timely manner<br>3. Assure Completion.....GAF performs Interim inspections so that you the contractor may be able to make any necessary repairs before GAF performs the final inspection.  You do not need to send confirmation of repairs to GAF as the roof will be reviewed once more at time of final inspection.<br><br>● Please note that at time of final inspection, GAF will assign a rating of 1-10 for the roof and if repairs are needed at that time you will be responsible for verifying in writing that those repairs have been completed. Supporting photos of repairs may also be required.<br><br>4. Remember to notify GAF when the project is fully complete so that final inspection may be ordered | |
| **Questions?** | Please call Guarantee Services at 800-766-3411, option 2. | |
| **Attached** | Photos, Punch List items. | |

**Quality Assurance Representative's Comments:**

TPO cleaning procedure

Step 1- Broom away all excessive dirt and moisture.

Step 2- Use Everguard cleaner to wipe down the area to remove any remaining dirt or soapy film.

Limited visual observation:

Work in progress at time of inspection.

GAF product on roof.

First roof area, insulation installed with 4x4 boards.

Second roof area

Half of roof , 4x4 insulation cut and installed with 2x4 boards.

Half of roof, 4x4 insulation cut and installed on 1x4 boards.

1/4 inch of separation of insulation boards due to radius substrate. (Barrel vault type roof)

Insulation joints lifting approximately 1/4" due to radius substrate construction.

First roof area membrane not fully adhered.

Contractor indicate that Cover Tape is to be use at edge metal. Cove Tape only for 15 year guarantee.

Test cut areas application appears acceptable

More GlyBond been apply.

Insulation weighted down utilizing buckets at time of installation.

Insulation needs to be properly stored refer to GAF specification.

Attendees: Stuart,Luis,Dave ,Vern and Rebecca

Representative:   LUIS RODRIGUEZ                          Signature:

## Investigation Results

**Investigated By :   LUIS RODRIGUEZ**                    **Inspection #1-2009-00006431-01-T**

| PUNCHLIST ITEMS | | | |
|---|---|---|---|
| Item | Location | Repair Instructions | Owner Responsibility |
| Other | Seams | Over burn seam, need to installed patch. | N/A |
| Voids in seam at T-joint intersections | Seams | Missing T patch.- Repair Inst: Clean/repair to spec, Use unsupported membrane | N/A |
| Unadhered field sheet on fully adhered system | Insulation/Fastening | - Repair Inst: Remove membrane and insulation. Install new insulation and membrane to spec. | N/A |
| Pipe boots and field fabricated missing waterstop, clamps or caulking | Pipe Flashings/ pitch pans | - Repair Inst: Install to spec | N/A |

I have completed the above repairs/corrective actions to bring this roof into compliance with manufacturer's requirements.

Signature:_____

# Roof Investigation Pictures

Inspection #: I-2009-00006431-01-T

**Image File:  1**
   I-2009-00006431-01-T-1.jpg
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
**Result Code:**
**Key Words:**
   Roof over view
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
**Description:**



**Image File:  2**
   I-2009-00006431-01-T-2.jpg
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
**Result Code:**
**Key Words:**
   Metal deck over view
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
**Description:**



**Image File:  3**
   I-2009-00006431-01-T-3.jpg
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
**Result Code:**
**Key Words:**
   Metal deck over view
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
**Description:**



**Image File:  4**
   I-2009-00006431-01-T-4.jpg
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
**Result Code:**
**Key Words:**
   Radius substrate over view
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
**Description:**

## Roof Investigation Pictures

Inspection #: I-2009-00006431-01-T

**Image File:  5**
  I-2009-00006431-01-T-5.jpg

**Result Code:**

**Key Words:**
  Radius substrate over view

**Description:**



**Image File:  6**
  I-2009-00006431-01-T-6.jpg

**Result Code:**

**Key Words:**
  GAF product

**Description:**



**Image File:  7**
  I-2009-00006431-01-T-7.jpg

**Result Code:**

**Key Words:**
  Roof over view

**Description:**
  Insulation needs to be properly stored refer to GAF
  specification.



**Image File:  8**
  I-2009-00006431-01-T-8.jpg

**Result Code:**

**Key Words:**
  Roof over view

**Description:**
  Insulation been install



# Roof Investigation Pictures

Inspection #: I-2009-00006431-01-T

**Image File:  9**

I-2009-00006431-01-T-9.jpg

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

**Result Code:**

**Key Words:**

Insulation

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

**Description:**

Insulation been install



**Image File:  10**

I-2009-00006431-01-T-10.jpg

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

**Result Code:**

**Key Words:**

Insulation

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

**Description:**

Half of roof, 4x4 insulation cut and installed on 1x4 boards.



**Image File:  11**

I-2009-00006431-01-T-11.jpg

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

**Result Code: .**

**Key Words:**

Substrate

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

**Description:**

Radius substrate.



**Image File:  12**

I-2009-00006431-01-T-12.jpg

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

**Result Code:**

**Key Words:**

Insulation

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

**Description:**

1/4 inch of separation of insulation boards due to radius substrate. (Barrel vault type roof)



# Roof Investigation Pictures

Inspection #: I-2009-00006431-01-T

**Image File:   13**
   I-2009-00006431-01-T-13.jpg

**Result Code:**

**Key Words:**
   Seam

**Description:**
   Missing T patch



**Image File:   14**
   I-2009-00006431-01-T-14.jpg

**Result Code:**

**Key Words:**
   Penetration

**Description:**
   Contractor indicate that this will be remove and repair.



**Image File:   15**
   I-2009-00006431-01-T-15.jpg

**Result Code:**

**Key Words:**
   Test cut

**Description:**
   This was perform by contractor.



**Image File:   16**
   I-2009-00006431-01-T-16.jpg

**Result Code:**

**Key Words:**
   Field

**Description:**
   Insulation lifting 1/4" due to radius substrate.

## Roof Investigation Pictures

Inspection #: I-2009-00006431-01-T

**Image File:   17**
   I-2009-00006431-01-T-17.jpg

**Result Code:**

**Key Words:**
  Field

**Description:**
  Membrane not fully adhered.



**Image File:   18**
   I-2009-00006431-01-T-18.jpg

**Result Code:**

**Key Words:**
  Field

**Description:**
  Membrane not fully adhered.



**Image File:   19**
   I-2009-00006431-01-T-19.jpg

**Result Code:**

**Key Words:**
  Test from seams

**Description:**



**Image File:   20**
   I-2009-00006431-01-T-20.jpg

**Result Code:**

**Key Words:**
  Seam

**Description:**
  Over heat seam.

# Roof Investigation Pictures

Inspection #: I-2009-00006431-01-T

**Image File:  21**

I-2009-00006431-01-T-21.jpg

**Result Code:**

**Key Words:**
Penetration

**Description:**
Boot missing Water Block, clamp and FlexSealed



**Image File:  22**

I-2009-00006431-01-T-22.jpg

**Result Code:**

**Key Words:**
Termination bar over view

**Description:**



**Image File:  23**

I-2009-00006431-01-T-23.jpg

**Result Code:**

**Key Words:**
Termination bar over view

**Description:**



**Image File:  24**

I-2009-00006431-01-T-24.jpg

**Result Code:**

**Key Words:**
Drip edge area over view

**Description:**



## Roof Investigation Pictures

Inspection #: I-2009-00006431-01-T

**Image File:   25**

I-2009-00006431-01-T-25.jpg

**Result Code:**

**Key Words:**

Drip edge area

**Description:**

Contractor indicate that Cover Tape is to be use at edge metal, Cove Tape only for 15 year guarantee.



**Image File:   26**

I-2009-00006431-01-T-26.jpg

**Result Code:**

**Key Words:**

Test cut

**Description:**



**Image File:   27**

I-2009-00006431-01-T-27.jpg

**Result Code:**

**Key Words:**

Test cut

**Description:**



**Image File:   28**

I-2009-00006431-01-T-28.jpg

**Result Code:**

**Key Words:**

Test cut

**Description:**

Test cut areas application appears acceptable



# Roof Investigation Pictures

Inspection #: I-2009-00006431-01-T

**Image File: 29**

I-2009-00006431-01-T-29.jpg

**Result Code:**

**Key Words:**

Test cut

**Description:**

Test cut areas application appears acceptable



**Image File: 30**

I-2009-00006431-01-T-30.jpg

**Result Code:**

**Key Words:**

Insulation

**Description:**

Insulation joints lifting approximately 1/4" due to radius substrate construction.



**Image File: 31**

I-2009-00006431-01-T-31.jpg

**Result Code:**

**Key Words:**

Seam

**Description:**

Damage seam, need patch.



**Image File: 32**

I-2009-00006431-01-T-32.jpg

**Result Code:**

**Key Words:**

Insulation

**Description:**

OlyBond been apply.



## Roof Investigation Pictures

Inspection #: I-2009-00006431-01-T

**Image File:   33**

  I-2009-00006431-01-T-33.jpg

**Result Code:**

**Key Words:**

  Insulation

**Description:**

  OlyBond been apply.



**Image File:   34**

  I-2009-00006431-01-T-34.jpg

**Result Code:**

**Key Words:**

  Insulation

**Description:**

  OlyBond been apply.



**Image File:   35**

  I-2009-00006431-01-T-35.jpg

**Result Code:**

**Key Words:**

  Insulation

**Description:**

  Insulation weighted down utilizing buckets at time of installation.



 **GAF MATERIALS CORPORATION**

1361 Alps Road Wayne NJ 07470-3689 * Tel: 800-766-3411

| Number: | I-2009-00006431-02-T |
|---|---|
| Type: | Interim |
| Date: | 07/09/10 |

January 26, 2011

# Roof Investigation Report
## Immediate Punch List Action Required

| Contractor: Information: | Contractor Information: | Thermoset Roofing Corporation | Phone #: 954-984-9099 |
|---|---|---|---|
| | | 1441 S. W. 30th Avenue, #28 | Fax #: 954-984-9081 |
| | | Pompano Beach, FL 33069 | Email: |
| | GAF Territory Mgr: | Dario Miranda, Joe Kelly | |

| Project Information | GAF File #: | 2009-00006431 | |
|---|---|---|---|
| | Guarantee Issued: | / / | |
| | Project Information: | NASSAU AIRPORT DEVELOPMENT COMPANY | |
| | | | |
| | | NASSAU, BH 00000 | |
| | Owner Information: | NASSAU AIRPORT DEVELOPMENT COMPANY LTD. | |
| | | | |
| | Requestor's Name: | NASSAU AIRPORT DEVELOPMENT LTD (NAD) | |
| | Roof System: | TFANI60 | Squares: 2400 |
| | Project Quality Rating: | 0.00 | |

| Contractor Action Required | 1. Review the punch list items... gain commitment from crew |
|---|---|
| | 2. Repairs Made... assure crew acts in a timely manner |
| | 3. Assure Completion.....GAF performs Interim inspections so that you the contractor may be able to make any necessary repairs before GAF performs the final inspection.  You do not need to send confirmation of repairs to GAF as the roof will be reviewed once more at time of final inspection. |
| | • Please note that at time of final inspection, GAF will assign a rating of 1-10 for the roof and if repairs are needed at that time you will be responsible for verifying in writing that those repairs have been completed. Supporting photos of repairs may also be required. |
| | 4. Remember to notify GAF when the project is fully complete so that final inspection may be ordered . |

| Questions? | Please call Guarantee Services at 800-766-3411, option 2. |
|---|---|
| Attached | Photos, Punch List items. |

**Quality Assurance Representative's Comments:**

Work in progress at time of inspection

Need to follow GAF specification .

Insulation , Roof membrane and adhesive, Need to be storage per GAF specifications.

TPO cleaning procedure

Step 1- Broom away all excessive dirt and moisture.

Step 2- Clean membrane with soap and water to remove ground in dirt.

Step 3- Use Everguard cleaner to wipe down the area to remove any remaining dirt or soapy film.

Attendee: Luis

Representative:   LUIS RODRIGUEZ                                        Signature:

## Investigation Results

**Investigated By :  LUIS RODRIGUEZ**          **Inspection #1-2009-00006431-02-T**

| *PUNCHLIST ITEMS* | | | |
|---|---|---|---|
| **Item** | **Location** | **Repair Instructions** | **Owner Responsibility** |
| Voids found when probing field seam | Seams | - Repair Inst: Clean/reweld voids, then clean/repair to spec | N/A |
| Wrinkle or air pockets found in 2" seam | Seams | - Repair Inst: Clean/repair to spec. | N/A |
| Voids in seam at T-joint intersections | Seams | Missing T patch.- Repair Inst: Clean/repair to spec. Use unsupported membrane | N/A |
| Cut edge of TPO not sealed | Seams | Seam on base flashing- Repair Inst: Clean and install TPO Cut Edge Sealant | N/A |
| Excessive bleed out caused damage to sheet | Seams | Over burn seam- Repair Inst: Clean/repair to spec. | N/A |
| Unadhered field sheet on fully adhered system | Insulation/Fastening | - Repair Inst: Remove membrane and insulation. Install new insulation and membrane to spec. | N/A |
| Other | Pipe Flashings/ pitch pans | Need to installed premolded penetration flashing or field wrapped flashing. | N/A |
| Pipe boots and field fabricated missing waterstop, clamps or caulking | Pipe Flashings/ pitch pans | - Repair Inst: Install to spec | N/A |
| Other | Deck sheet | Insulation , Roof membrane and adhesive. Need to be storage per GAF specifications. | N/A |

I have completed the above repairs/corrective actions to bring this roof into compliance with manufacturer's requirements.

Signature:_____

## Roof Investigation Pictures

Inspection #: I-2009-00006431-02-T

**Image File:  1**

I-2009-00006431-02-T-1.jpg

**Result Code:**

**Key Words:**
Front over view

**Description:**



**Image File:  2**

I-2009-00006431-02-T-2.jpg

**Result Code:**

**Key Words:**
Insulation

**Description:**
Need to be storage per GAF specifications.



**Image File:  3**

I-2009-00006431-02-T-3.jpg

**Result Code:**

**Key Words:**
Insulation, roof membrane

**Description:**
Need to be storage per GAF specifications.



**Image File:  4**

I-2009-00006431-02-T-4.jpg

**Result Code:**

**Key Words:**
Roof over view

**Description:**



## Roof Investigation Pictures

Inspection #: I-2009-00006431-02-T

**Image File:  5**

I-2009-00006431-02-T-5.jpg

**Result Code:**

**Key Words:**

Roof over view

**Description:**



**Image File:  6**

I-2009-00006431-02-T-6.jpg

**Result Code:**

**Key Words:**

Work in progress

**Description:**



**Image File:  7**

I-2009-00006431-02-T-7.jpg

**Result Code:**

**Key Words:**

Work in progress

**Description:**

Applying adhesive to roof membrane, allow adhesive to flash off.



**Image File:  8**

I-2009-00006431-02-T-8.jpg

**Result Code:**

**Key Words:**

Work in progress

**Description:**

Applying adhesive to insulation, allow adhesive to flash off.



## Roof Investigation Pictures

Inspection #: I-2009-00006431-02-T

**Image File:  9**
I-2009-00006431-02-T-9.jpg

**Result Code:**

**Key Words:**
Penetrations

**Description:**
Need to installed premolded penetration flashing or field wrapped flashing.



**Image File:  10**
I-2009-00006431-02-T-10.jpg

**Result Code:**

**Key Words:**
Roller

**Description:**
Roller been use.



**Image File:  11**
I-2009-00006431-02-T-11.jpg

**Result Code:**

**Key Words:**
Roof over view

**Description:**



**Image File:  12**
I-2009-00006431-02-T-12.jpg

**Result Code:**

**Key Words:**
Roof over view

**Description:**

## Roof Investigation Pictures

**Inspection #: I-2009-00006431-02-T**

**Image File:   13**
   I-2009-00006431-02-T-13.jpg

**Result Code:**

**Key Words:**
   Penetrations

**Description:**



**Image File:   14**
   I-2009-00006431-02-T-14.jpg

**Result Code:**

**Key Words:**
   Field

**Description:**
   Membrane not fully adhered



**Image File:   15**
   I-2009-00006431-02-T-15.jpg

**Result Code:**

**Key Words:**
   Penetration

**Description:**
   Missing Water Block, clamp and Flexseal



**Image File:   16**
   I-2009-00006431-02-T-16.jpg

**Result Code:**

**Key Words:**
   Seam

**Description:**
   Over burn seam

# Roof Investigation Pictures

Inspection #: I-2009-00006431-02-T

**Image File:  17**
I-2009-00006431-02-T-17.jpg

**Result Code:**

**Key Words:**
Seam

**Description:**
Missing T patch



**Image File:  18**
I-2009-00006431-02-T-18.jpg

**Result Code:**

**Key Words:**
seam open seam

**Description:**



**Image File:  19**
I-2009-00006431-02-T-19.jpg

**Result Code:**

**Key Words:**
seam on base flashing

**Description:**
Missing Cut Edge Sealant



**Image File:  20**
I-2009-00006431-02-T-20.jpg

**Result Code:**

**Key Words:**
Seam

**Description:**
Missing T patch

# Roof Investigation Pictures

Inspection #: I-2009-00006431-02-T

**Image File:**  21
  I-2009-00006431-02-T-21.jpg

**Result Code:**

**Key Words:**
  Seam

**Description:**
  Missing patch



**Image File:**  22
  I-2009-00006431-02-T-22.jpg

**Result Code:**

**Key Words:**
  Roof over view

**Description:**



**Image File:**  23
  I-2009-00006431-02-T-23.jpg

**Result Code:**

**Key Words:**
  Adhesive

**Description:**
  Need to be storge per GAF specification



**Image File:**  24
  I-2009-00006431-02-T-24.jpg

**Result Code:**

**Key Words:**
  Scupper

**Description:**
  Need to follow GAF specification wend installing scuppers.



## Roof Investigation Pictures

Inspection #: I-2009-00006431-02-T

**Image File:** 25
I-2009-00006431-02-T-25.jpg

**Result Code:**

**Key Words:**
seam

**Description:**
Wrinkles

# Exhibit "C"

Brian,

We are the manufacturer on the airport expansion in Nassau with the system being TPO installed over ISO in water based adhesive. As you can see from the attached photos there seems to be a problem with the adhesive adhering to the ISO. The problem seems to manifest itself only after the roof has been in place for several weeks and the contractor feels that there is an issue with the adhesive.

We would appreciate it is someone from your company could visit the site ASAP to perform testing of the adhesive and give us a report as to what you believe the issue to be with the lack of adhesion.

Please advise when this visit can be arranged.

Jimmy Cobb
Area Manager / Field Services
GAF materials Corporation
334-324-8642   Cell
334-285-2380   Office
jcobb@gaf.com

This email, including any attachments, is for the sole use of the intended recipient(s), and may contain information that is confidential or legally protected. If you are not the intended recipient, any disclosure, copying, distribution, or use of the contents of this information or any attachments is prohibited and may be unlawful. If you have received this electronic transmission in error, please reply immediately to the sender by return e-mail that you have received the message in error and delete it along with any attachments. GAFMC makes no warranty that this e-mail is error or virus free.

[attachment "IMG_5276.JPG" deleted by Brian Alexander/US/Americas/HENKEL] [attachment "IMG_5277.JPG" deleted by Brian Alexander/US/Americas/HENKEL] [attachment "IMG_5278.JPG" deleted by Brian Alexander/US/Americas/HENKEL] [attachment "IMG_5283.JPG" deleted by Brian Alexander/US/Americas/HENKEL]

4

# Exhibit "D"

**Adam Honig**

| | |
|---|---|
| **From:** | Adam Honig [thermoset_adam@bellsouth.net] |
| **Sent:** | Tuesday, October 26, 2010 7:54 AM |
| **To:** | 'Miranda, Dario'; 'Cobb, Jimmy' |
| **Cc:** | 'Thermoset Roofing'; 'Stuart Culmer' |
| **Subject:** | LPIA Roof Issues with H2O Adhesive |

Mr. Miranda,

As per our last phone conversation we are experiencing a serious issue with the H2O adhesive on the LPIA project. We immediately need GAF to move to remedy this situation before the whole issue goes Nuclear. Please see below, the chain of events as they took place, up until Yesterday. I will try to give you as much detail as I can so you can pass this along the "chain of command" and get the right individuals on this ASAP.

Please take note at the following; We are at risk of being thrown off of this project and barred from the second and third phase (600,000 Sq. Ft. plus), not to mentioned sued and/or our Letter of Credit (bond) called in, if this is not resolved quickly, and I mean quickly. This project is set to be open to the public in 97 days. If not resolved to the satisfaction of the owner quickly this whole thing will be disastrous for all of us involved, including GAF.

Several weeks ago Tropical Storm Nicole came through the Bahamas with sustained winds of 35 MPH with gust to 45 MPH. We immediately starting noticing the TPO membrane (on the upper Pier roof approximately 28,000 Sq. ft.) starting to flutter at or near the roof perimeter around 4 PM Wed as the storm started to come through the area. The membrane fluttering became worse so we brought additional men to the site to try and ballast the area with cans of glue, membrane roll and buckets of concrete (used for the Olybond installation of the insulation). However the fluttering began to spread from around 1,000 Sq. Ft. to around 3,000 Sq. ft. In our panic to stop the roof from being lost we began to install mechanical fasteners at the edge and field area directly in the path of the fluttering. This seemed to slow down the spread of the delamination, and we did all we could well in to the dark. Because of life safety issues we had to bring the men off of the roof at that time.

When we came to the site early in the morning, we were shocked to see that we had lost about 80% of the upper Pier as well as a 4,000 SQ. ft. section on the lower Pier and about 2,000 Sq. Ft. of the roof next to the Upper Pier. We immediately notified the GC and began to ballast the entire roof area with sand bags and other ballast.

After we had the roofs ballasted, we began to investigate the delaminated roof areas. What we determined was very disturbing. The H2O adhesive appeared to be stuck to the insulation but not adhered to the TPO in a large percentage of the affected area. Most of the insulation facer was still intact and not pulled up off of the Polyiso. This is something we were not used to seeing, as all previous test cuts going all the way back to the first roof, taken while the owners consultant was on site as well as Luis from GAF, did not react similarly. During our previous cuts from the welds and insulation (taken in the beginning and periodically) showed that the facer was adhered to the back of the membrane and came off of the polyiso when the sample was peeled up. Our methods of installation and the men on site have been constant and within all GAF guidelines, so we cannot tell why this is happening.

Furthermore, we have had trained and experienced men on site throughout the entire installation process, some of which have recently completed the GAF training course prior to the job start. We also have inspection reports from the owners consultant (and at least two GAF in progress inspection, even though we requested more) as well as many, many photos showing our installation process, so we know that the roofing components as well as the adhesive was installed correctly. We methodically mixed and then applied adhesive to both the TPO and the adjacent insulation at the same time and after the glue set to the level required we mated the two surfaces and then water rolled the entire area. In fact our method starting with the Olybond being installed at twice the rate required has been meticulous beyond the level that was expected of us. Thermoset has always had a reputation forging above and beyond what is required. I am a big "belt and suspenders kind of contractor and it has shown in our work with single ply for over 15-years. In fact your own

1

Joe Strickland knows us very well and was on our HPG roofs going all the way back to 1996 when we were the biggest Wal-Mart contractor in Florida.

From the day after the storm we requested that GAF send someone down (other than Luis) that could inspect the roofs affected by Nicole as well as meet with the GC and the owner and their reps. Jimmy Cobb was the first rep on site and I walked the roof areas with him as well as cut the roofs open and collected samples for GAF to send to the lab. During our walkthrough and inspection new determined a few things that lead me to believe that while the adhesive didn't seem to be performing as it should, there were several other factors that contributed to the roof becoming delaminated. Specifically we noted that the area where the delamination started the soffit as well as the air barrier were not completed and the building was open on both sides underneath. The windows were not all in and the peel and stick was not completely installed. We also noticed that the expansion joint had blown up near the start of the delamination. It was obvious that air did get under that area through that opening as well as through the Facia box detail which did not have a continuous SPF barrier as called for in the plans. Even knowing this, I think the membrane still should have remained intact since we only had up to 45 MPH winds, which is well under the 150 MPH we are supposed to be designed to.

Once Jimmy left the site, the owner had their consultant and engineer on site almost daily, asking us to cut the roof in many areas. We complied with the terms of our contract and did what we were asked to do. No less than 8 different individuals with construction knowledge (some of which were just on the Toronto airport project with a similar roof system), were on these roofs during many of the cuts and all of them including me, were concerned about the adhesive seeming to not stick to the TPO membrane. They were really baffled at the appearance that the membrane could lift up so easily, and then all of the proverbial "alarms" starting going off.

Knowing all of this it is the general consensus that there is a serious adhesive problem. Due to the fact that the owners consultant also had this opinion, he convinced the owner that all of the other roofs should be tested while at the same time, investigating the delaminated areas for other possible causes. The owner asked the consultant to perform bonded pull tests based on TAS 124, however he came down to the Bahamas the week after Nicole hit, un prepared to complete the testing correctly. Because of this I immediately hired ACRC, I Florida licensed and Dade County approved testing firm, to complete the preliminary testing. This is where the truly disturbing information comes to light.

ACRC conducted six bonded pull tests on two of the roofs on site (both were unaffected by Nicole). They followed TAS 124 and I should have the official report in a few days however I was personally there on site (GAF was requested to send a rep however declined). The results are extremely troubling. We tested the areas in relatively low pressure (PSF) zones well under the Dade County NOA tested assembly rate of -272 PSF and found the following results.

**Dade County NOA for this exact assembly: -272 per Sq. Ft.**

Please note that the original specification for this job was for a Carlisle TPO system set in Fast 100 and I had to bust my butt to get the Owner, GC, Architect and consultant to agree to allow us to substitute GAF for the original spec. All of the materials ordered were specifically for this project and the system was recommended by GAF based on the performance (PSF rating) set in the Dade County NOA. The highest pressure on the three phases is 250 PSF, so the Dade County NOA rating of -272 should have met all zones in all phases. Phase 1 which we are on now, has the highest rating of around -137 PSF, so we shouldn't even be having any issues at all.

The test plate has 4 Sq. ft. so the pressure that we should have achieved was 1,088 lbs of uplift. Not including the fact that Dade County has a safety factor built in so we should have been able to withstand up to 2,176 PSF. The following are from my recollection, but will be confirmed in the report from ACRC.

**Test# 1:** The membrane delaminated from the ISO at 58 PSF (58/4 = 14.5 PSF achieved)

The Adhesive was all stuck to the ISO and no signs was left on the membrane.

2

Test #2: The membrane delaminated from the ISO at 124 PSF (124/4 = 31 PSF)

The Adhesive was all stuck to the ISO and no signs were left on the membrane.

Test #3: The ISO split between the two layers at around 400 PSF (400/4 = 100 PSF)

Olybond was approximately 4" to 6" apart and the facer was pulled up, so it was beyond what the NOA called for (12" apart)) the membrane did not pull up during the test however when we removed the plate the TPO peeled off of the ISO with no glue on the back.

Test #4: The membrane delaminated at approximately 218 PSF (218/4 = 54.5 PSF)

The Adhesive was all stuck to the ISO and no signs was left on the membrane.

Test #5: The ISO split between the two layers at around 628 PSF (628/4 = 157 PSF)

Olybond was approximately 4" to 6" apart and the facer was pulled up, so it was beyond what the NOA called for (12" apart)) the membrane did not pull up during the test however when we removed the plate the TPO peeled off of the ISO with no glue on the back.

Test #6: The ISO split between the two layers at around 700 PSF (700/4 = 175 PSF)

Olybond was approximately 4" to 6" apart and the facer was pulled up, so it was beyond what the NOA called for (12" apart)) the membrane did not pull up during the test however when we removed the plate the TPO peeled off of the ISO with no glue on the back.

**Please note that we picked the absolute best looking locations on the two roof areas. Much of the roof areas, (even on the first roof that originally tested ok while the consultant and GAF were present) seem almost loose under your feet and you can see that a lot of the membrane has become un-glued in many locations. Needless to say the adhesion is very inconsistent even though out methods were constant throughout.**

**I have been notified to remove all of the H2O adhesive from the site and to come up with an alternate method to complete the last two roof areas (regardless of who's material I use). My suggestion is that GAF provide a variance to use the solvent based adhesive, as it didn't even peel up in the slightest from our test samples. That way I can use all of the remaining GAF materials on site to complete the final two roofs. If this cannot be worked out I will have to ship the remaining materials back to the supplier (with the 600 pails of H2O which are already being crated up for shipping) and furnish new materials from another manufacturer. In addition, I am sure we will be notified soon that we must remove and replace the roof areas that became delaminated as well as come up with a solution for either enhancing or replacing all of the roofs that fail the TAS 124 testing. Based on what I have seen, I don't think any of the 180,000 Sq will meet the uplift testing.**

**Please help me get this situation under control before it gets past the "point of no return".**

I look forward to your swift response.

Respectfully Submitted,

Thermoset Roofing
Adam Honig
President

3

# Exhibit "E"



*"Quality You Can Trust Since 1886...
From North America's Largest Roofing Manufacturer"*

**Field Services**
1361 Alps Road, Bldg. 11-1
Wayne, NJ 07470
Phone : 973-317-5965
Fax : 973-628-3451

November 23, 2010

Mr. Adam Honig
Thermoset Roofing Corporation
1441 SW 30ᵗʰ Avenue, #28
Pompano Beach, FL  33069

Subject: System Certification

Project:      LPIA Phase I GAF File #2009-6431
              Nassau, Bahamas

Dear Mr. Honig,

Please accept this letter as response to the current events on your LPIA project.

Below we will clarify the current specification in use on this project and then the roof enhancement recommendations for the roof areas that are experiencing issues with the uplift resistance of the H20 adhesive as per the ACRC roof testing report # 10-0361-BPF pages 1-7 dated November 8ᵗʰ 2010.

**Current GAF Specification in use on this project: Dade County NOA 08-0221.09**

GAF specification T-FA-N-I-60 is eligible to receive a 20 year GAF Diamond Pledge™ (NDL) guarantee and a 120 mph wind addendum, provided all current GAF application requirements are followed and guarantee procedures are met.

**T-FA-N-I-60 over concrete (with Metal Sub Deck)**

**EnergyGuard™ Polyiso Insulation:** Install minimum 2" EnergyGuard™ PolyIso insulation over the deck using OlyBond 500™, in ¼" to 1' wide ribbons at the rate of:

- 12" on center in all zones of the roof

**EverGuard® 60 mil TPO Membrane:** Install EverGuard® 60 mil TPO membrane using EverGuard® water based bonding adhesive in accordance with GAF recommendations.

Since the Water Based Adhesive has not performed as indicated in ACRC's report, the following is the appropriate alternative securement method based on Dade County Codes Roof Application Standard (RAS) 137: Dade County NOA 09-0115.04.

**Roof Area Breakdown: Areas to be enhanced by NOA 09-0115.04**

1) Upper Barrel Roof.
2) 4% Upper Roof.
3) Lower Pier C Roof.
4) Baggage Room Roof.
5) Upper Patio Tapered roof.
6) Upper Bridge roof facing old terminal.

Based on this NOA we can calculate and meet or exceed the pressures in all zones as indicated on the Project Roof Wind Survey for peak negative pressures. Our baseline of 90 PSF for the Dade County NOA with a General limitation #7 allows us to extrapolate to 180 PSF (Rows at 5' OC) in any perimeter zone and 270 PSF (Rows at 2.5' OC) in any corner zone. All calculation will be provided by ACRC signed and sealed for this installation based on the Roof Wind Survey and using the NOA criteria, the FM approval for the concrete fasteners and the varying building heights and widths.

Because of the overlap of the perimeter pressures we are providing to 180 PSF many areas that are shown with lesser PSF values (some as low as 100 PSF) will be exceeded. All corner areas on the highlighted drawing will be attached to 270 PSF and therefore exceed the Roof Wind Survey in all corner locations, as well. Please note that most corners are in the 200 PSF range with only a few areas exceeding the 200 PSF level.

Supplemental securement will be provided using Drill-Tec™ #14 HD fasteners for Concrete and 2" double barbed plates, 6" on center over the 10' (120") seams in the field of the roof.

Additional securement on 5' centers in the perimeters and 2 ½' centers in the corners will be required. Please note that all zones will follow the roof wind survey, Dade County or FM, or whichever is the strictest of the three.

Fasteners and plates to be covered with a 8" wide strip of EverGuard® 60 mil TPO membrane, heat welded a minimum of 1 ½" on both sides with a robotic welder. As per attached detail CDE Drawing #186.Please note that all SPF foam residue, debris, and or any other contaminant must be completely cleaned off of the TPO membrane prior to this application, using an approved cleaner. Seam tests must also be conducted to verify that all welds are consistent.

**Upper Pier C Roof Renovation & Enhancement**

**Scope of Work required:**

1) Remove the existing TPO.
2) Replace all damaged iso with new. Iso that is being replaced will be set in place as per the original NOA using Olybond 500 as per GAF guidelines. Mechanically attach the existing undamaged iso with Drill-Tec #14 HD fasteners and 3" insulation plates. The pattern for 4'x 4' insulation is 5 fasteners in the field, 8 fasteners in the perimeter, and 12 fasteners in the corners.
3) Install newly supplied GAF 60 mill TPO over the attached insulation. The TPO is to be fastened as stated above as per NOA 09-0115.04.
4) Thermoset to complete the rest of the details as per original GAF approved details.

GAF is totally committed to this project as with every other project we are involved with. When this project has been completed to the above remedial specifications and has been inspected and approved by a GAF Field Services Representative, the requested 20 Year (plus 5) EverGuard NDL guarantee will be issued, including the 120 mph wind rider.

If I can be of further assistance in this matter, please do not hesitate to contact me.

Sincerely,

J. W. Strickland
Director of Field Services


CC: Jimmy Cobb, GAF
     Dario Miranda, GAF

# Exhibit "F"

## Adam Honig

| | |
|---|---|
| **From:** | Adam Honig <thermoset_adam@bellsouth.net> |
| **Sent:** | Wednesday, November 24, 2010 5:31 PM |
| **To:** | 'Strickland, Joseph' |
| **Cc:** | 'Cobb, Jimmy'; 'Miranda, Dario' |
| **Subject:** | RE: |

Joe,

Thank you for working on your time off. This should be a big help.

Regards,

Thermoset

Adam

**From:** Strickland, Joseph [mailto:Jstrickland@gaf.com]
**Sent:** Wednesday, November 24, 2010 5:21 PM
**To:** Adam Honig
**Cc:** Cobb, Jimmy; Miranda, Dario
**Subject:**

Adam, please see attached per you request.

Please except my apologies regarding the situation with the WBA. I am confident that the above remedy will be acceptable to all parties. If need be, I am available to meet with the principals of the attached project to answer any and all questions. Please let me know if anything else is needed.

Have a great Thanksgiving.

Joe Strickland

This email, including any attachments, is for the sole use of the intended recipient(s), and may contain information that is confidential or legally protected. If you are not the intended recipient, any disclosure, copying, distribution, or use of the contents of this information or any attachments is prohibited and may be unlawful. If you have received this electronic transmission in error, please reply immediately to the sender by return e-mail that you have received the message in error and delete it along with any attachments. GAFMC makes no warranty that this e-mail is error or virus free.

1

# Exhibit "G"



**GAF**
GAF MATERIALS
CORPORATION

*"Quality You Can Trust Since 1886...
From North America's Largest Roofing Manufacturer"*

*Jimmy P. Cobb*
*South Area Manager / Field Services*
*GAF Materials Corporation*
*13361 N. 56th St.*
*Tampa, FL 33617*
*(o) 334-285-2380*
*(F) 334-285-2380*
*(c) 334-324-8642*
*jcobb@gaf.com*

October 27, 2010

Thermoset Roofing
Pompano Beach, FL

Re:   LPIA Expansion
      Nassau, Bahamas
      GAF File Number 2009-6431

To Whom It May Concern:

This is to advise that GAF will approve the change in adhesive for installing the TPO on the above referenced project from water based to solvent based adhesive. The terms and conditions of the EverGuard Diamond Pledge Guarantee will remain in full affect including the requested wind addendum.

If there are any questions please contact me at the number above.

Sincerely,

Jimmy P Cobb

Jimmy P. Cobb
Area Manager / Field Services
GAF Materials Corporation

# Exhibit "H"



**GAF Materials Corporation**
1361 Alps Road Wayne, NJ

(800) 766-3411, Option 2

August 11, 2011

NASSAU AIRPORT DEVELOPMENT COMPANY LIMITED
PO BOX AP 59229
NASSAU, BH 00000

RE: LPIA - EXPANSION PROJECT - STAGE 1
    P.O. BOX AP-59229
    NASSAU, BH 00000
    Guarantee #: G2009-00006431

SUBJECT: WE WOULD APPRECIATE YOUR FEEDBACK!

Dear: NASSAU AIRPORT DEVELOPMENT COMPANY LIMITED

**Congratulations...**

And thank you for choosing Thermoset Roofing Corporation to install one of GAF's Integrated Commercial Roofing Systems on your property. Your EVERGUARD DIAMOND PLEDGE 20 YEAR GUARANTEE provides you with comprehensive system protection, so that if your roof leaks from either installation or material defects, the costs of repair are covered (see EVERGUARD DIAMOND PLEDGE 20 YEAR GUARANTEE for details). You can be certain that you've made the best and safest choice to protect your valuable property for years to come.

**Your Feedback is important . . .**

Thermoset Roofing Corporation is committed to providing the best and safest choice for their customers and they know to be successful they must continuously improve. Your participation in a brief online quality survey will provide Thermoset Roofing Corporation with a better understanding of their strengths and weaknesses, and as a result they will provide even better service for future customers.

Simply go to www.GAF.com/survey and enter your personal survey code (all letters): ifadnidikiktjnd. When you complete the survey, you will automatically be entered in the GAF Market Pulse™ Survey monthly sweepstakes. See the details on the website and below.

**Questions?**

Please feel free to call us if you have any questions about your new roof. And again, thanks for choosing GAF, your best and safest choice in roofing!

Very truly yours,

GAF Guarantee Services Team

GAF MarketPulse™ Survey Monthly Sweepstakes
-Rules Summary-

NO PURCHASE NECESSARY. Void where prohibited by law. Subject to all federal, state, local laws, regulations and ordinances. Open to recent purchasers of either a GAF Diamond Pledge™ Limited Guarantee or System Pledge™ Ltd. Guarantee from a GAF Certified Contractor, who are legal residents of the 50 United States and the District of Columbia, 18 years of age or older as of the date of entry. Employees and Directors of GAF Materials Corporation, or any of its parents, subsidiaries, affiliates, consultants, contractors, legal, advertising, public relations, promotional, fulfillment/marketing agencies and web providers and their immediate family/household members are not eligible to participate. Monthly contests begin 12:00 AM ET at the first of every month and ends 11:59 PM ET at the last day of every month.To enter, go to www.gaf.com/survey, enter the personal survey code you received with notification of registration of either your GAF Diamond Pledge™ Limited Guarantee or System Pledge™ Ltd. Guarantee, and then complete the on-line quality survey.

Monthly sweepstakes winners will each receive a $100 American Express Gift Cheque. Odds of winning based on the number of eligible entries received.

To enter and to see the complete rules and eligibility requirements, visit www.gaf.com/survey.  Sponsored by GAF Materials Corporation, 1361 Alps Road, Wayne, NJ 07470



*"Quality You Can Trust Since 1886...*
*From North America's Largest Roofing Manufacturer"*

*Guarantee Services*
*1361 Alps Road*
*Building 11-2*
*Wayne, NJ 07470*
*(800) 766-3411, Option #2*

**August 11, 2011**

**NASSAU AIRPORT DEVELOPMENT COMPANY LIMITED**
**PO BOX AP 59229**
**NASSAU, BH 00000**

Re:   **LPIA - EXPANSION  PROJECT - STAGE 1**
      **P.O. BOX AP-59229**
      **NASSAU, BH 00000**
      **Guarantee #:  G2009-00006431**

**Dear DIRECTOR, MAINTENANCE & ENGINEERING:**

Thank you for choosing a GAF Materials Corporation EVERGUARD DIAMOND PLEDGE 20
Year Guarantee for your roofing system. We believe that you've made the best and safest
choice to protect your property for years to come.

We've enclosed the following items in this package:

❑   **Your Guarantee** - please keep this in your files. You'll need it in the unlikely event that there is a
    problem with your roof, or if you should sell the property.

❑   **Well Roof™ Advantage Information Sheet** - we can help you extend your Diamond Pledge Guarantee
    coverage length for an additional 25% at no charge! This sheet gives you a quick explanation of the
    Well Roof program, requirements, and benefits. Contact us for more details!

❑   **Roofing Solutions Reference Manual** - explains the importance of regular roof maintenance, and can
    help you get started on setting up a roof maintenance program. Remember, regular inspections and
    maintenance are a requirement of any roofing system guarantee. After you've had a chance to read
    the manual, we suggest that you set up a time to discuss a maintenance program with Thermoset
    Roofing Corporation, the GAF Master Select Commercial Roofing Contractor that installed your new
    roofing system.

❑   **Scheduled Maintenance Checklists Booklet** - provides you with suggested inspection checklists that
    you and your contractor can use for the life of your guarantee - and beyond.

❑   **Stop Sign** - attach this sign to the main point of entry to your roof system. It helps remind other
    trades that may need to access the roof about the importance of being careful with your investment.
    Your contractor can provide you with more if needed.

Remember, if you ever have any questions or concerns regarding your roofing system, we're
here to help you at (800) 766-3411, Option #2 - or contact us at the e-mail address below. And
thanks for choosing GAF!

Cordially,

**Guarantee Services**

**E-mail:**   seguarantee@gaf.com

cc: Project File

**EverGuard®**
**GAF DIAMOND PLEDGE™**
**NDL ROOF GUARANTEE**
**ADDENDUM (over)**

No. _G2069-00006431_

OWNER: NASSAU AIRPORT DEVELOPMENT COMPANY LIMITED        PERIOD OF COVERAGE: __20__ YEARS

NAME AND TYPE OF BUILDING: LPIA - EXPANSION PROJECT - STAGE 1

ADDRESS OF BUILDING: P.O. BOX AP-59229, NASSAU, BH  00000

SPECIFICATION: TPAMSO        AREA OF ROOF: __2,692.89__ SQUARES

APPLIED BY: THERMOSET ROOFING CORPORATION  /  POMPANO BEACH, FL

DATE OF COMPLETION: __06/13/2011__        GUARANTEE EXPIRATION DATE: __06/13/2031__

**THE GUARANTEE/SOLE AND EXCLUSIVE REMEDY**
GAF MATERIALS CORPORATION ("GAF") guarantees to you, the original owner of the building described above, that GAF will provide "Edge To Edge" protection by repairing leaks through the GAF roofing membrane, liquid applied membrane or coating, base flashing, high wall waterproofing flashing, insulation, expansion joint covers, prefabricated accessories and metal flashings used by the contractor that meet SMACNA standards (the "GAF Roofing Materials") resulting from manufacturing defects, ordinary wear and tear or workmanship in applying the GAF Roofing Materials.

There is no dollar limit on covered repairs. Leaks caused by any materials other than those listed above, such as the roof deck, non-GAF insulation, or any other materials used in the construction of the roof system, are not covered.

**GUARANTEE PERIOD**
This guarantee ends on the expiration date listed above. NOTE: Lexsuco® flashings are covered by this guarantee only for the first ten years.

**OWNER'S RESPONSIBILITIES**
Notification of Leaks
In the event of a leak through the GAF Roofing Materials, you must make sure that GAF is notified directly about the leak, in writing, within 30 days by email (preferred) at guaranteeservices@gaf.com, or in writing to Guarantee Services Department, 1361 Alps Road, Bldg. 11-1, Wayne, New Jersey 07470, or GAF will have no responsibility for making repairs. NOTE: The roofing contractor is NOT an agent of GAF; notice to the roofing contractor is NOT notice to GAF.

By notifying GAF, you authorize GAF to investigate the cause of the leak. If the investigation reveals that the leak is not covered by this guarantee, you agree to pay an investigation cost of $500. This guarantee will be cancelled if you fail to pay this cost within 30 days of receipt of an invoice for it.

Preventative Maintenance and Repairs
A. In order to maximize the trouble-free performance of your roof, you must perform regular inspections and maintenance and keep records of this work.
B. To keep this guarantee in effect, you must repair any conditions in the building structure or roofing system that are not covered by this guarantee but that GAF concludes may be threatening the integrity of the GAF Roofing Materials (e.g., porous walls allowing water entry into the roofing system).
C. You may make temporary repairs to minimize damage to the building or its contents in an emergency, at your sole expense. These repairs will not result in cancellation of this guarantee as long as they are reasonable and customary and do not result in permanent damage to the GAF Roofing Materials.
D. Any equipment or material that impedes any inspection or repair must be removed at your expense so that GAF can perform inspections or repairs.

**EXCLUSIONS FROM COVERAGE**
(e.g., those that are not "ordinary wear and tear" or are beyond GAF's control)
This guarantee does NOT cover conditions other than leaks. This guarantee also does not cover leaks caused by the following:

1. Inadequate roof maintenance, that is, the failure to follow the Scheduled Maintenance Checklist provided with this guarantee (extra copies available by calling Guarantee Services at 1-800-ROOF-411).
2. Unusual weather conditions or natural disasters including, but not limited to, windstorms, hail, floods, hurricanes, lightning, tornados, and earthquakes, unless specifically covered under this guarantee.
3. Damage to the roof constructed of the GAF Roofing Materials due to: (a) movement or cracking of the roof deck or building; (b) improper installation or failure of any non-GAF insulation or materials; (c) infiltration or condensation of moisture through or around the walls, copings, building structure or surrounding materials except where high wall GAF waterproofing flashings are installed; (d) chemical attack on the membrane, including, but not limited to, exposure to grease or oil; or (e) the failure of wood nailers to remain attached to the structure; or (f) use of material that are incompatible with the GAF roofing materials.

4. Traffic of any nature on the roof unless using GAF walkways applied in accordance with GAF's Application and Specifications Manual.
5. Stones in the GAF Roofing Materials that have not adhered to leaks.
6. Changes in the use of the building or any repairs, modifications or additions to the GAF Roofing Materials after the roof is completed, unless approved in writing by GAF.
7. Exposure to post-installation sustained temperatures in excess of 160°F for roofing systems using Standard EverGuard® TPO membranes and 180°F for systems with Everguard® EXTREME™ TPO membranes.
8. Any condition (e.g., base flashing height or lack of counterflashing) that is not in accordance with GAF's Application and Specifications Manual or any deviation or modification from any specification published in the Manual, unless specifically authorized by a GAF Contractor Services Manager or Director in writing.

No representative, employee or agent of GAF has the authority to assume any additional liability or responsibility for GAF, except in writing signed by an authorized GAF Contractor Services Manager or Director. NOTE: Any inspections made by GAF are limited to a surface inspection only, are for GAF's sole benefit, and do not constitute a waiver of any of the terms and conditions of this guarantee.

**TRANSFERABILITY**
You may transfer or assign this guarantee to a subsequent owner of this building for the remaining term only if: 1) the request is in writing to GAF at the address listed below within 60 days after ownership transfer; 2) you make any repairs to the GAF Roofing Materials or other roofing or building components that are identified by GAF after an inspection as necessary to preserve the integrity of the GAF Roofing Materials; and 3) you pay an assignment fee of $500. This guarantee is NOT otherwise transferable or assignable by contract or operation of law, either directly or indirectly.

**LIMITATION OF DAMAGES; MEDIATION; JURISDICTION; CHOICE OF LAW**
THIS GUARANTEE IS EXPRESSLY IN LIEU OF ANY OTHER GUARANTEES OR WARRANTIES, EXPRESS OR IMPLIED, INCLUDING ANY IMPLIED WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE, and of any other obligations or liability of GAF, whether any claim against it is based upon negligence, breach of warranty or any other theory. In NO event shall GAF be liable for any CONSEQUENTIAL OR INCIDENTAL DAMAGES of any kind, including, but not limited to interior or exterior damages and/or mold growth.
The parties agree that, as a condition precedent to litigation, any controversy or claim relating to this Guarantee shall be first submitted to mediation before a mutually acceptable mediator, in the event that mediation is unsuccessful, the parties agree that neither one will commence or prosecute any lawsuit or proceeding other than before the appropriate state or federal court in the State of New Jersey. This Guarantee shall be governed by the laws of the State of New Jersey, without regard to principles of conflicts of laws. Each party irrevocably consents to the jurisdiction and venue of the identified courts above.

NOTE: This Guarantee becomes effective only when all bills for installation and supplies have been paid in full to the roofing contractor and materials supplier, and the Guarantee charge has been paid to GAF Materials Corporation.

This guarantee must have a raised seal to be valid.

©2011 GAF Materials Corporation • 1/11 • COM1229A • #242

GAF MATERIALS CORPORATION
1361 ALPS ROAD, WAYNE, NJ 07470
COMB_AFBH_05

_signature_        Authorized Signature        LCVL12nnt1

Addendum

LPIA - EXPANSION PROJECT - STAGE 1
P.O. BOX AP-59229, NASSAU, BH  00000

Notwithstanding anything to the contrary in the guarantee,  GAF agrees to repair leaks resulting from
non-tornadic, straight line winds of 120 mph or less measured at the roof top for this project provided the
roof system, perimeter flashings and corner installation are attached to the roof deck and building
structure to comply with the design wind load method of the current version of ASCE-7.

GAF shall not have any form of responsibility or liability for wind damage to the GAF roof system
caused whether directly or indirectly by:

1.   Building structure failure and/or damage.
2.   Building envelope failure and/or damage.
3.   Flying debris
4.   Falling objects.
5.   Wind shear, micro burst or any other unusual weather conditions.

Please be advised that all GAF application and specification requirements must be met and procedures
followed.  All other terms and conditions of the roof system guarantee remain in full force and effect.

GAF MATERIALS CORPORATION
1361 Alps Road
Wayne, New Jersey 07470
Authorized Signature

08/11/2011
Date



*"Quality You Can Trust Since 1886...*
*From North America's Largest Roofing Manufacturer"*

Guarantee Services
1361 Alps Road
Building 11-2
Wayne, NJ 07470
(800) 766-3411, Option 2

# Guarantee Invoice

| To: | Thermoset Roofing Corporation<br>1441 S. W. 30th Avenue, #28<br>Pompano Beach, FL 33069 |
|---|---|
| Project: | LYNDEN PINDLING INTERNATIONAL AIRPORT<br>P.O. BOX AP-59229<br>NASSAU, BH 00000 |

| Billing for the Issuance of File # | 2009-00006431 |
|---|---|
| Guarantee Type: | EVERGUARD DIAMOND PLEDGE:20 |
| Project Size (Squares): | 2400 |
| Invoice Date: | 08/11/2011 |
| Terms: | **Due By September 10, 2011** |

| Guarantee Fee: | $ 24,000.00 |
|---|---|
| Initial Payment: | $ 0.00 |
|  |  |
| **Net Amount** | **$ 24,000.00** |

| Questions? | **Phone:** (800) 766-3411, Option #2<br>**E-mail:  Southeast**    SGuarantee@GAF.com |
|---|---|

*If this invoice is past due, GAF Materials Corporation reserves the right to charge up to 1 ½% per month interest on the total amount due. If payment is not made, penalties may include suspension of this Guarantee, suspension of pre-issuance privileges, and contractor de-certification.*

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -



August 11, 2011

Due Upon Receipt

Payment Coupon

Total Amount Due $ 24,000.00

File # 2009-00006431
Invoice Date 08/11/2011

Mail Payment To:

Thermoset Roofing Corporation
1441 S. W. 30th Avenue, #28
Pompano Beach, FL 33069

GAF Materials Corporation
Guarantee Services Cashier
1361 Alps Road, Building 2
Wayne, NJ 07470

# Exhibit "I"

# THERMOSET

Roofing & Waterproofing Syste
www.THERMOSETROOFING.com
1441 S.W. 30th Avenue • Suite #2E
Pompano Beach, Florida 33069
954-984-9099 • 1-888-271-Roof (76
Fax: 954-984-9081
FLORIDA • PUERTO RICO • BAHAM~

March 21, 2011

GAF Materials Corporation
Field Services
1361 Alps Road, Building 11-1
Wayne, NJ 07470
973-317-5965
Fax 973-628-3451

Attn: Mr. Joe Strickland

   **Re: LPIA Project-Thermoset-GAF (H2O Adhesive Material Failure)**

Dear Mr. Strickland,

I have sent you many e-mails to which I have not received an adequate response. In many cases I have received no response.

This is not acceptable to me and I need you to carefully review the following comments as well as the attachments provided in this package and give me a proper response in writing.

My company is being severely financially burdened, by the fact that GAF has only made a partial effort to resolve all of the open issues on this project related to the original roof blow off as well as all of the events that have taken place since, going all the way back to September (and possibly before). I am also being affected personally and my health is deteriorating because my business has been basically brought to a standstill because of the side effects of the original GAF H2O adhesive material failure on the LPIA project. I have spent more time trying to resolve issues related to this material failure with the GC, Architect and owner than I spent to install the original roof system (and all paperwork related to that).

I need direct answers to the following points.

1) Where is the roof report from Trinity? Why have we not been provided with this report as promised on many, many occasions, by you?
2) I have asked for an audience with someone above you at GAF that can make decisions. Why have you not moved to get this accomplished? The inability of GAF to is and will be damaging to me and my company until it is properly addressed.
3) GAF has paid for Part 1 of our PO to RSG. Why have you not paid for Part II? The materials are related to the same adhesive failure and this makes no sense. My account and ability to get materials from RSG is being affected. This action by GAF may cause me to lose work due to the inability to get materials from our main supplier.
4) Please see the attached PO Part 2 and the related RSG invoices for the materials. I need GAF to immediately pay RSG for these materials or at least acknowledge to RSG that GAF will pay for these materials. Further to that we are reviewing additional invoices that may be related to his failure and reserve the right to amend our list of invoices that we will ask GAF to pay.

**New Roofs • Re-Roof • Repairs • Maintenance • Waterproofing**

5) Please see the attached invoice from ACRC (11-0055-1) for your review. You agreed to pay for the engineering on this project (post roof blow off) but when you paid ACRC you shorted them on the travel. Please pay them the balance of $300.00 to get this off of my account.

6) Please see the attached invoice from ACRC for the continuation of the testing for this project (11-0055-2) Please notify ACRC & Thermoset as to when GAF will pay this invoice so it can be taken off of my account. Please note that these ACRC invoices do not cover any or all related Thermoset costs associated with this testing in whole or in part. A separate detailed billing will be submitted for reimbursement of these costs.

7) Please see invoice 10-0381.6 from ACRC for the Equipment need to conduct the uplift testing as required after the roof blow off. We paid to ship the item down to the Bahamas and to get it released from the customs department. It has been very difficult to get someone to ship this item back and the expense is cost prohibitive, so we ask that you, at a minimum reimburse ACRC for the replacement cost of the equipment. If not we will continue to try and re-patriate the equipment and you will end up getting a much higher bill in the end. Your choice, but I need written direction as to what you prefer. You can obviously see how expensive it was to get the H20 Adhesive back to the US. (see attached docs for that as well)

8) Please see the attached invoice (GAF LPIA-1) from Thermoset Roofing Corp to GAF (including back-up docs) for all related costs to Re-Patriate the H20 Adhesive to the US for a credit from GAF. This information was originally submitted to RSG for credit with the adhesive, but we were told that GAF denied this part of our claim. If so, then why? We expect to be immediately reimbursed for these reasonable expenses as well as for the defective adhesive (which credit was already provided for). To credit the material but not the related shipping and handling costs makes no sense to us and we need this to be remedied.

9) Please see the attached invoice (GAF LPIA-2) from Thermoset Roofing Corporation to GAF (including back-up docs) for related costs to the original GAF H20 Adhesive material failure. We expect to be immediately reimbursed for these reasonable expenses. We reserve the right to amend this list of charges as new information is sent to me from the Bahamas. All T & M charges that are billed to GAF will be quantified, as attached.

10) We need an in-progress inspection of all of the roofs and a GAF compiled punch-list (if any) scheduled for the third week in April. We should be completed with the roof enhancement by that date. Please note that due to the fact this has airport facility is "live", we will need the GAF inspector or inspectors to provide documentation for special ID badges and access to the site. The documentation will include but may not be limited to, a current Police record, passport photos, training certificate and safety certification. Please contact me directly to discuss this process. Please note that time is of the essence. We require these inspections and the issuance of the warranty as per your letter to me dated November 23rd 2010. Failure to provide the inspections and warranty will compound my issues with the owner and damage me further.

11) Please note that all T & M and related costs for the Roof Enhancement (not including the Upper Pier) as per your letter dated November 23rd 2010 are being compiled and will be submitted in the near future. We expect prompt reimbursement for these costs that are directly related to the GAF material failure on this project.

12) Further to that please note that a reasonable lump sum Figure based roughly on our originally contracted roof value (taking into consideration the current working conditions) will be provided for the Upper Pier Roof Replacement based on your letter to us dated November 23rd 2010, as well. We expect prompt reimbursement from GAF for this cost as well.

If you have any questions or need further clarifications regarding any of these documents please do not hesitate to call me directly. However, we respectfully ask that you back everything in writing for both of our records.

I await your timely response.

Respectfully Submitted,

Thermoset Roofing Corporation

Adam Honig
President

CC. Bob Vitale, RSG
    Wendy Ferguson, RSG
    Tim Perryman, RSG
    Dario Miranda, GAF
    Jimmy Cobb, GAF
    Stuart Culmer, TRBLTD

2:02 PM

03/21/11

Accrual Basis

# Thermoset Roofing
## Customer Open Balance
### All Transactions

| Type | Date | Num | Memo | Due Date | Open Balance | Amount |
|------|------|-----|------|----------|-------------|--------|
| **GAF** | | | | | | |
| LPIA Phase I GAF File #2009-6431 | | | | | | |
| Invoice | 2/3/2011 | GAF LPIA-1 | | 2/3/2011 | 37,405.52 | 37,405.52 |
| | | | | | ▓▓▓▓ | 37,405.52 |
| LPIA Work Orders | | | | | | |
| Invoice | 2/8/2011 | GAF LPIA-2 | | 2/8/2011 | 55,335.22 | 55,335.22 |
| | | | | | ▓▓▓▓ | 55,335.22 |
| Total GAF | | | | | | 92,740.74 |
| **TOTAL** | | | | | 92,740.74 | 92,740.74 |

## *EXHIBIT "C"*



| | |
|---|---|
| PO's by vendor and date bt99 | 1 |
| Unit | 99 |
| PO No. | 01316879 |
| Status | Complete |
| Item | 7785100 |
| PO Date | 3/9/2010 |
| PO Qty | 900.0000 |
| Due | 3/30/2010 |
| Descr | EG TPO Bonding Adh H2O Cream |
| Amount | 83880.000 |
| Price | 93.20000 |
| Vendor ID | 048853 |
| Vendor Name | HENKEL TECHNOLOGIES |
| Customer Name | Roofing Supply Group-Orlando LLC |
| Shipping City | Orlando |
| Shipping State | FL |
| Shipping Postal | 32804 |
| Sold To Cust Name | Roofing Supply Group-Orlando LLC |
| Sold To Cust City | Orlando |
| Sold To Cust State | FL |
| Sold To Cust Postal | 32804 |
| Job Site | N |
| Ship To Ovr Name | Caribbean Island Services Corp |
| Ship To Ovr City | Pompano Beach |
| Ship to Ovr State | FL |
| Ship To Ovr Postal | 33069 |

*EXHIBIT "D"*



## PURCHASE ORDER TERMS AND CONDITIONS

**1. TERMS AND CONDITIONS OF PURCHASE.**

**2. PRICING; PAYMENT.**

**3. TRANSPORTATION; DELIVERY; TIME IS OF THE ESSENCE WITH RESPECT TO DELIVERY.**

**4. INSPECTION.**

**5. WARRANTIES.**

**6. QUANTITY TERMINATION; ORDER CHANGES.**

**7. COMPLIANCE WITH LAWS.**

**8. CONFIDENTIAL INFORMATION; OWNERSHIP OF DOCUMENTS AND MATERIALS.**

**9. INTELLECTUAL PROPERTY INFRINGEMENT.**

**10. CUSTOMS AND TRADE.**

**11. PRODUCTS - INSURANCE.**

**12. PRODUCTS - INSURANCE.**

**13. SERVICES - LIENS; SITE RULES; INSURANCE.**

**14. INDEMNIFICATION.**

**15. BUYER'S PROPERTY.**

**16. SET-OFF.**

**17. FORCE MAJEURE.**

**18. TERMINATION.**