UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

BUILDING MATERIALS CORP. OF
AMERICA d/b/a GAF MATERIALS
CORPORATION and ROOFING SUPPLY
GROUP ORLANDO LLC,

      Plaintiffs,

v.                                     Case No: 615-cv-548-orl-22gjk

HENKEL CORPORATION,

      Defendant.

_____/

**PLAINTIFF BUILDING MATERIALS CORP. OF AMERICA D/B/A GAF MATERIALS CORPORATION'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO COMPEL DISCOVERY AND FOR AN AWARD OF ATTORNEYS' FEES [DN 37][1]**
**(With Incorporated Memorandum of Law)**

---

[1] Henkel Corporation ("Henkel") has filed its motion to compel [DN 37] against Building Materials Corp. of America d/b/a GAF Materials Corporation ("GAF") and Roofing Supply Group Orlando, LLC ("RSGO"). However, the written discovery which is the subject of Henkel's motion to compel was only addressed to GAF. And GAF, individually, responded to Henkel's written discovery. Accordingly, Henkel's introduction which collectively refers to GAF and RSGO as "GAF" is not appropriate and the instant response is being filed on behalf of GAF only. DN 37 at 1.

**INTRODUCTION**

Plaintiffs' claims against Henkel arise out of **a single commercial transaction** between the parties for the purchase of 900 pails of water-based roofing adhesive for a roofing project in the Bahamas. DN 2 at ¶¶ 13-14. Plaintiffs' sole claim against Henkel is a contractual indemnification claim based upon the indemnification clause contained in GAF's Purchase Order Terms and Conditions, which is essentially a breach of contract claim.[2] *Id.* at ¶¶ 17-25, 34-42. In sum, Plaintiffs contend that Henkel breached the indemnification clause by failing to "defend" Plaintiffs in the underlying case brought by a roofing contractor, who alleged that the water-based adhesive manufactured by Henkel was defective (the "Thermoset Claim"). *Id.* And Plaintiffs claim that Henkel's breach of the indemnification clause, and in particular Henkel's duty to defend Plaintiffs in the event a defect claim is made, resulted in damages to Plaintiffs in the form of attorneys' fees and costs. *Id.*

Despite the simplicity and narrowness of Plaintiffs' claims in this case, Henkel seeks to expand the scope of discovery into completely unrelated and irrelevant collateral issues. First, Henkel seeks to compel GAF to identify Plaintiffs' in-house and outside counsel with knowledge of the facts in this case. Second, Henkel seeks to compel information related to the GAF's testing of the subject water-based adhesive manufactured by Henkel. Third, Henkel moves to compel the premature production of billing records of GAF's outside counsel before this Court determines Plaintiffs' entitlement to attorneys' fees. As described

---

[2] On February 12, 2016, after conferring with Henkel's counsel and reaching an agreement, GAF/RSGO filed an *Unopposed* Motion to Voluntarily Dismiss without prejudice their common law indemnity claims (Counts II and IV), which was subsequently granted by this Court. DN 35; DN 36. As such, the only claim pending against Henkel is GAF/RSGO's contractual indemnification claim which arises out of Henkel's breach of its duty to defend.

in detail below, GAF properly objected to these requests and Henkel's motion to compel information related to these request should be denied.

## ARGUMENT AND MEMORANDUM OF LAW

### I.    GAF Properly Responded to Henkel's Interrogatory No. 4.

Henkel's Interrogatory No. 4 asks GAF to identify "all persons with knowledge regarding GAF's tender of defense to Henkel of the Thermoset Claim." DN 37 at 2. GAF objected on the basis that the request was "overbroad and vague," and further specifically identified the legal term of "tender of defense" as vague. *Id.* GAF did, however, attempt to respond to Henkel's request by identifying numerous individuals with knowledge "regarding GAF's notification to Henkel of the Thermoset Claim." *Id.* Specifically, GAF referred Henkel to GAF's initial disclosures, which listed eleven (11) individuals with knowledge regarding the Thermoset Claim and Henkel's notice of the underlying defect claims, including Henkel employees. Plaintiffs' Initial Disclosures, **Ex. A**. Additionally, GAF listed the following individuals: "(1) In-house and outside counsel for GAF; (2) Christopher Signorello, Esq., Henkel; and (3) Philip J. O'Rourke, Esq., counsel for Henkel, Lewis Brisbois Bisgaard & Smith LLP." DN 37 at 2. Yet, despite GAF's best efforts to respond to this overbroad and vague request, Henkel argues that GAF should be compelled to somehow respond in more detail and "identify each applicable attorney and provide contact information." DN 37 at 3. Henkel's request should be denied for several reasons.

First, Henkel's request that GAF identify "all persons with knowledge regarding GAF's **tender of defense** to Henkel of the Thermoset Claim" is vague because "tender of defense" is a legal term of art that is susceptible to more than one meaning. DN 37 at 2

3

(emphasis added). For example, "tender of defense" could mean a formal written tender of defense from an indemnitee to an indemnitor or it could mean a simple notification by the indemnitee to the indemnitor of a pending claim. This is because courts have held that a "tender of defense" can be a formal "written tender" or simply "reasonable notice" to permit the indemnitor to participate fully in the defense.[3] *See generally* Sufficiency and Timeliness of Notice by Indemnitee to Indemnitor of Action by Third Person, 73 A.L.R.2d 504, 536-37 (1960); *see also Deutsche Bank Trust Co. of Americas v. Tri-Links Inv. Trust*, 900 N.Y.S.2d 246, 254 (2010) (analyzing whether indemnitor had "sufficient notice" of the underlying action); *Nesterczuk v. Goldin Mgmt., Inc.*, 911 N.Y.S.2d 367, 371 (2010) (recognizing that "[w]hen an indemnitor has **notice** of the claim against it, the general rule is that the indemnitor will be bound by any reasonable good faith settlement the indemnitee might thereafter make") (emphasis added); *Northbrook Prop. & Cas. Co. v. City Nat. Bank of Miami*, 591 So. 2d 1026, 1029 (Fla. 3d DCA 1991) (analyzing whether the indemnitor had notice of the underlying claim). Accordingly, GAF properly objected to Henkel's vague request and properly responded by providing the names of individuals with knowledge "regarding GAF's notification to Henkel of the Thermoset Claim." DN 37 at 2.

Second, Henkel's request that GAF identify "**all persons** with knowledge regarding GAF's tender of defense to Henkel of the Thermoset Claim" is inherently overbroad. DN 37

---

[3] GAF's Purchase Order Terms and Conditions, which contain the subject indemnification clause, states that New York law applies. DN 2 at 104 at 1(c). And it appears that Henkel agrees that New York law applies in this case. DN 21 at 11 (stating in an affirmative defense that pursuant to GAF's Purchase Order Terms and Condition "New York law applies to the instant action."). However, since this Court has not yet ruled on the applicable law, and in the abundance of caution, undersigned counsel has cited to both New York and Florida law.

at 2 (emphasis added). As explained in Plaintiffs' Complaint, Thermoset filed the underlying lawsuit on December 31, 2013, over two years ago, and Thermoset issued the underlying claim over three years before that. Therefore, there are countless individuals that have knowledge of GAF's "tender of defense" or notification of the Thermoset Claim to Henkel, starting from GAF's first notice to Henkel of Thermoset's defect claims to the "formal tender" written by undersigned counsel on behalf of GAF. Formal Written Tender, **Ex. B**. Accordingly, GAF properly objected to Henkel's overbroad request and properly responded by providing the names of individuals with knowledge "regarding GAF's notification to Henkel of the Thermoset Claim." DN 37 at 2.

Third, Henkel's reliance upon *Cherenfant v. Nationwide Credit, Inc.* to argue that the courts have established a blanket rule that reference to a party's Rule 26 disclosure is not appropriate is misguided. DN 37 at 3 (citing *Cherenfant v. Nationwide Credit, Inc.*, 03-60655-CIV, 2004 WL 5315889, at *1 (S.D. Fla. 2004)). In that case, the court criticized the plaintiff's written discovery response because the plaintiff "merely referred [the defendant] to her Rule 26 initial disclosures and/or her Complaint." *Id.* at *1. But here, Plaintiffs have not only referenced their initial disclosures, but also specifically identified certain individuals. Additionally, it is unknown from a reading of the *Cherenfant v. Nationwide Credit, Inc.* opinion the level of detail of the plaintiff's Rule 26 initial disclosures. However, here Plaintiffs' Rule 26 initial disclosures are very detailed and include a list of eleven (11) individuals with knowledge regarding the Thermoset Claim and Henkel's notice of the underlying defect claims. Plaintiffs' Initial Disclosures, **Ex. A**.

<u>Finally</u>, there is no support, legal or otherwise, for Henkel's argument that GAF must specifically disclose all "in-house and outside counsel for GAF" that have knowledge about the "tender of defense." DN 37 at 3. Obviously, both in-house and outside counsel for GAF have knowledge of the facts in this case, including GAF's notification to Henkel of the Thermoset Claim and GAF's formal tenders to Henkel. The same is true for Henkel's in-house and outside counsel. In fact, as Henkel is aware, undersigned counsel issued a formal written tender to Henkel's in-house and outside counsel in this case. <u>Formal Written Tender</u>, **Ex. B**. But discovery into all "in-house and outside counsel for GAF" that have knowledge about the "tender of defense" in this case is simply not discoverable, irrelevant, and not likely to lead to the discovery of admissible evidence. This is especially true because any such information in the possession of "in-house and outside counsel" is protected by the attorney client and work product privilege. *See, e.g., Upjohn Co. v. United States*, 449 U.S. 383, 397 (1981) (recognizing that the attorney client privilege applies to in-house and outside counsel); *Rossi v. Blue Cross and Blue Shield of Greater New York*, 540 N.E.2d 703, 705 (N.Y. 1989) ("The privilege applies to communications with attorneys, whether corporate staff counsel or outside counsel.").[4] Accordingly, Henkel's demand that GAF be compelled

---

[4] *See also Kraus v. Brandstetter*, 586 N.Y.S.2d 270, 271 (N.Y. App. Div. 1992) ("Although outside counsel was not retained, courts have long recognized that confidential internal memoranda between in-house counsel and employees are protected by the attorney-client privilege."); *Nicolo v. Greenfield*, 558 N.Y.S.2d 371, 372 (N.Y. App. Div. 1990) ("The attorney-client privilege applies to communications with attorneys, whether counsel on the corporate staff or outside counsel, and extends to the attorney's communications to the client."); *Rockwood Nat. Corp. v. Peat, Marwick, Mitchell & Co.*, 400 N.Y.S.2d 374, 375 (N.Y. App. Div. 1978) (investigation conducted at the direction of in-house counsel); *Allied Artists Picture Corp. v. Max L. Raab Productions, Inc.*, 327 N.Y.S.2d 167, 168 (N.Y. App. Div. 1971) ("The two interoffice memoranda prepared by plaintiff's former resident counsel and vice-president were legal in nature, in effect, constituting analysis and advice by an

to "identify each applicable attorney and provide contact information" should be denied. DN 37 at 3.

## II.    GAF Properly Responded to Henkel's Interrogatory No. 5.

Henkel's Interrogatory No. 5 asks GAF to identify "all persons at GAF's Research and Development department involved with the testing of the formula modification of the 3738T." DN 37 at 2. GAF objected on the basis that the request was "overbroad, irrelevant, and not likely to lead to the discovery of admissible evidence." *Id.* GAF did, however, attempt to respond to Henkel's request by referring Henkel to GAF's initial disclosures, which identified numerous individuals with knowledge of "the testing of the formula modification of the 3738T." *Id.* GAF also specifically identified Ms. Li-Ying "Tammy" Yang, who was also listed in GAF's initial disclosures, as having "knowledge regarding GAF's testing of the formula modification of the 3738T." *Id.*; *see also* Plaintiffs' Initial Disclosures, **Ex. A**. Despite GAF's best efforts to respond to this overbroad and irrelevant request, Henkel argues that GAF failed to "fully answer" the interrogatory and should be compelled to somehow respond in more detail. DN 37 at 4. Henkel's request should be denied for several reasons.

First, Henkel's argument ignores the specific objections stated by GAF – that the request is overbroad, irrelevant, and not likely to lead to the discovery of admissible

---

attorney to his client. Accordingly, plaintiff has properly invoked the attorney-client privilege."); *Ford Motor Co. v. O. W. Burke Co.*, 299 N.Y.S.2d 946, 948 (N.Y. Sup. Ct. 1969) ("I do not, however, agree with the contention of the defendant that the fact, without more, that the attorney is employed in the plaintiff corporation's legal department, as distinguished from being a specially retained outside counsel, vitiates the client-attorney privilege.").

evidence. As explained in detail in Plaintiffs' recently filed motion for protective order [DE 39], Plaintiffs' claims against Henkel arise out of **a single commercial transaction** between the parties for the purchase of 900 pails of water-based roofing adhesive for a roofing project in the Bahamas. DN 2 at ¶¶ 13-14. And Plaintiffs' contractual indemnification claim against Henkel is based upon the indemnification clause contained in GAF's Purchase Order Terms and Conditions, which is essentially a breach of contract claim. *Id.* at ¶¶ 17-25, 34-42. In sum, Plaintiffs contend that Henkel breached the indemnification clause by failing to "defend" Plaintiffs in the underlying case brought by a roofing contractor, who alleged that the water-based adhesive manufactured by Henkel was defective. *Id.* And Plaintiffs contend that Henkel's breach of the indemnification clause, and in particular Henkel's duty to defend Plaintiffs in the event a defect claim is made, resulted in damages to Plaintiffs in the form of attorneys' fees and costs.[5] *Id.*

Importantly, Plaintiffs' contractual indemnification claim against Henkel does not require any re-litigation or consideration of the roofing contractor's underlying claim that the water-based adhesive manufactured by Henkel was defective. That is because the issue of whether or not the water-based adhesive was or was not defective is irrelevant to Plaintiffs' contractual claim that Henkel owed Plaintiffs a duty to defend against the roofing contractor's claims in the underlying case. And, in fact, all parties agree that the adhesive

---

[5] GAF's Purchase Order Terms and Conditions specifically states that Henkel is required to "fully defend, indemnify, hold harmless and reimburse [Plaintiffs] from and against all claims, suits, actions, proceedings, damages, losses and expenses, including but not limited to litigation costs and expenses and attorneys' fees, arising out of, related to or resulting from … any litigation proceeding or claim by any third party … relating to the obligations of [Henkel] under the purchase agreement [(e.g., claims of defect)]." DN 2 at 104, Section 14.

was not defective. Instead, the only relevant issues are (1) whether GAF's Purchase Order Terms and Conditions applied to the purchase of the 900 pails of the water-based adhesive and, if so, (2) whether the underlying claim/suit brought by the roofing contractor contained allegations which triggered "an obligation" requiring Henkel to defend Plaintiffs pursuant to GAF's Purchase Order Terms and Conditions.

Despite the simplicity and narrowness of Plaintiffs' claims in this case, Henkel seeks to expand the scope of discovery into completely unrelated and collateral issues related to the testing of the water-based adhesive. Accordingly, GAF properly objected to Henkel's overbroad and irrelevant request while at the same time properly attempting to respond by providing the names of individuals with knowledge of "the testing of the formula modification of the 3738T." DN 37 at 2.

Second, Henkel's argument is logically flawed. Henkel argues that it has the right to know about every individual who has knowledge of GAF's testing of the "modified [water-based] adhesive product produced by Henkel" and claims that this "testing" information is relevant because it "bears on the 'materiality' of the warranty and indemnity terms." But what does the level of testing have to do with the materiality of the warranty and indemnity terms? In other words, whether or not GAF or Henkel tested the water-based adhesive is irrelevant to the contractual agreements reached by the parties with respect to the manufacture and sale of the water-based adhesive. And it is irrelevant to any assumption of liability made by the parties for an allegedly defective product.

Third, Henkel's argument that "the [testing] facts" it is inquiring into would "tend to show … a material alteration … for the purposes the UCC 'battle of the forms'" is incorrect.

DN 37 at 4. A "material alteration" as applied to a UCC "battle of the forms" relates to the terms of the agreement, not the underlying product testing. *See, e.g., Gen. Instrument Corp. v. Tie Mfg., Inc.*, 517 F. Supp. 1231, 1235 (S.D. N.Y. 1981) (discussing the material alteration of an agreement by the inclusion of additional terms); *Bayway Ref. Co. v. Oxygenated Mktg. & Trading A.G.*, 215 F.3d 219, 223 (2d Cir. 2000) (discussing the materiality of an additional term); *Paul Gottlieb & Co., Inc. v. Alps S. Corp.*, 985 So. 2d 1, 6 (Fla. 2d DCA 2007). Regardless, even if Henkel was not mistaken on the definition of a "material alteration," this is **not** a UCC "battle of the forms" case because Henkel shipped the water-based adhesive pursuant to GAF's Purchase Order *prior to* its attempt to impose its own terms and conditions on the sale. *See* NY UCC § 2-206(1)(b); § 672.206(1)(b), Fla. Stat. (stating that an acceptance of an offer to buy goods can be made by either a promise to ship or shipment of the goods). In such an instance, the contract is formed based on the terms and conditions of the purchase order under § 2-206 and no further inquiry is made under § 2-207. *See, e.g., Niagara Real Estate, Inc. v. Wollstein*, 198 A.D. 2d 913, 604 N.Y.S.2d 464 (1993) (invoice sent after shipment not timely); *Coastal & Native Plant Specialties v. Engineered Textile Products, Inc.*, 139 F.Supp.2d. 1326 (N.D. Fla. 2001); *Signal Technology, Inc. v. PennSummit Tubular, LLC*, 2009 WL 3387519, at *3 (S.D. Fla. 2009). Accordingly, there is no need for this Court to undertake a § 2-207 "battle of the forms" analysis in this case.

Finally, as discussed above in detail, Henkel's attempt to rely upon *Cherenfant v. Nationwide Credit, Inc.* is misguided. DN 37 at 3 (citing *Cherenfant v. Nationwide Credit, Inc.*, 03-60655-CIV, 2004 WL 5315889, at *1 (S.D. Fla. 2004). Again Henkel ignores the fact that GAF has not only referenced its detailed initial disclosures, but also specifically

identified a witness with knowledge of "GAF's testing of the formula modification of the 3738T."

### III.    GAF Properly Responded to Henkel's Request for Production No. 4.

Henkel's Request for Production No. 4 asks GAF to produce "any and all fee statements, invoices, bills, vendor invoices, proof of payment fee agreements, or any other documents which support your claim for attorneys' fees and costs in the amount of $669,927.30 as set forth in your letter dated May 1, 2005." DN 37 at 4. GAF objected to the request for several reasons. First, GAF objected on the basis that the request was premature and cited to a case that held that discovery concerning the amount of attorneys' fees should be deferred until the trial court has determined entitlement. *Id.* Second, GAF objected on the basis that the request sought privileged information and cited to a case that explained that time slips and billing records contain attorney-client privileged and work-product protected information. *Id.* Finally, GAF objected to the request because the referenced May 1, 2005, letter was a confidential and privileged settlement communication. *Id.* Subject to the objections, GAF provided Henkel with the following detailed chart supporting its calculation of attorneys' fees:

| Name | Title | Firm | Hourly Rate | Hours Billed | Total |
|------|-------|------|-------------|--------------|-------|
| Frederick J. Fein | Sr. Partner | TDF | $650 | 278.30 | $180,895.00 |
| G. William Bissett | Shareholder | KD | $200 | 16.20 | $3,240.00 |
| Steven Cornman | Shareholder | KD | $200 | 1,071.90 | $214,380.00 |
| Kathleen O'Connell | Of Counsel | TDF | $550 | 61.70 | $33,935.00 |
| Stephanie Colman | Of Counsel | TDF | $500 | 10.20 | $5,100.00 |

Case No: 615-cv-548-orl-22gjk

| Name | Title | Firm | Hourly Rate | Hours Billed | Total |
|---|---|---|---|---|---|
| Daniel R. Lever | Jr. Partner | TDF | $400 | 604.10 | $241,640.00 |
| Dan Weiss | Jr. Partner | TDF | $400 | 29.30 | $11,720.00 |
| Israel Fajardo, Nicole Wulwick, Ryan Charlson, Ralph Mora | Associate | KD | $175 | 265.00 | $46,375.00 |
| Daphnee Jones | Paralegal | TDF | $200 | 57.20 | $11,440.00 |
| Douglas Madden, Millie Capellan, Raffaella Rocchi | Paralegal | KD | $100 | 544.90 | $54,490.00 |
| **TOTAL** | | | | **2,938.80** | **$803,215.00** |

Despite GAF's best efforts to respond to this objectionable request, Henkel argues that GAF should be compelled to produce the underlying time records. DN 37 at 4. Henkel's request should be denied for several reasons.

First, Henkel argues that the documents "substantiating GAF's attorneys' fees claim" are "highly relevant." *Id.* at 6. But Henkel's argument ignores the fact that the underlying time records are only relevant upon a finding by this Court that Plaintiffs' are "entitled" to attorneys' fees pursuant to the indemnification clause contained in GAF's Purchase Order Terms and Conditions. *See In re Estate of Ransburg*, 608 So. 2d 49, 51 (Fla. 2d DCA 1992) ("discovery concerning the amount of attorney's fees should be deferred, under normal circumstances, until the trial court has determined entitlement."). And this type of "phased discovery," which logically makes sense and conserves judicial resources, is routinely employed courts in a variety of cases. *See, e.g., In re Lloyd's Am. Trust Fund Litig.*, 96 CIV.

12

1262 (RWS), 1998 WL 50211, at *20 (S.D. N.Y. 1998) (holding that "it is appropriate to defer any discovery concerning … fees … until liability is found"); *Williams v. County of Sullivan*, 157 F.R.D. 6, 9 (S.D. N.Y. 1994) (noting that courts may phase discovery of particular issues, such as liability before damages); *Chambers v. Capital Cities/ABC*, 159 F.R.D. 429, 431 (S.D. N.Y. 1995) (phased discovery permits information to be obtained if the need to do so is established); *Guzman v. Vega, No. 87 Civ. 3831*, 1993 WL 535543, at *1 (S.D. N.Y. Dec .21, 1993) (approving use of limited initial discovery to determine whether factual basis exists for permitting more sweeping additional discovery). Accordingly, GAF properly objected to Henkel's request on the basis of prematurity.

<u>Second</u>, Henkel's arguments ignore GAF's objection into the inquiry of a monetary demand communicated in a confidential settlement communication. *See, e.g., Cook v. Yellow Freight Sys., Inc.*, 132 F.R.D. 548, 554 (E.D. Cal. 1990) (applying underlying policy of Rule 408 to protect documents related to settlement negotiations from discovery). In other words, there are two layers of privilege – the initial layer due to the fact that the information sought by Henkel was contained in a confidential settlement communication and a second layer related to the substantive entries contained in GAF's attorneys' billing records. Therefore, GAF properly objected to Henkel's request on the basis of privilege.

<u>Third</u>, Henkel's reliance on *O'Neal v. United States*, 258 F.3d 1265 (11th Cir. 2001) and *F.T.C. v. Cambridge Exch., Ltd., Inc.*, 845 F. Supp. 872 (S.D. Fla. 1993) is factually and legally incorrect. Factually, none of those cases dealt with a claim for contractual indemnification and resulting damages for failing to defend an indemnitee. Legally, none of those cases dealt with the issue of prematurity. Instead, the cases addressed (1) the

production of limited documentation to support an estate tax claim for attorneys' fees and (2) the production of documentation by a law firm pursuant to a subpoena issued by the Federal Trade Commission as a result of suspicions that the defendant was illegally using money fraudulently transferred to pay his legal expenses. *O'Neal*, 258 F.3d at 1276 (discussing the production of legal invoices to support an estate tax claim against the United States); *Cambridge Exch., Ltd., Inc.*, 845 F. Supp. at 873-74 (inquiry into whether the defendant was illegally using money fraudulently transferred to pay his legal expenses). In sum, Henkel's cases are inapposite and do not support its contention that it is entitled to GAF's billing records at this point in the litigation.

<u>Finally</u>, Henkel claims that "at a minimum" it is entitled to any alternative fee agreements. DN 37 at 7. But Henkel's request does not ask for that type of document as there is no mention of "alternative fee agreements" or fee agreements in general.[6] Regardless, that information is readily available to Henkel as the alternative fee agreement was submitted and approved by the Thermoset court in the underlying case. <u>Motion for Fees</u>, **Ex. C** at 11; <u>Magistrate's Report and Recommendation on Fees</u>, **Ex. D** at 9-10; <u>Orders Granting Fees</u>, **Ex. E**.

### IV.    GAF Properly Responded to Henkel's Request for Production No. 5.

Henkel's Request for Production No. 5 asks GAF to produce "any and all documents regarding the testing performed by GAF's Research and Development department with

---

[6] Henkel's request mentions "proof of payment fee agreements," however, Henkel does not further define this term and an independent search of this term by undersigned counsel did not result in any sort of clarification. Regardless, undersigned counsel did not enter into a "proof of payment fee agreement" with Plaintiffs in this case.

respect to the formula modification of the 3738T." DN 37 at 5. Similar to Interrogatory 5, GAF objected on the basis that the request was "overbroad, irrelevant, and not likely to lead to the discovery of admissible evidence." *Id.* And as discussed above at length (Section II), GAF properly objected to Henkel's overbroad and irrelevant.

## V.      GAF Properly Responded to Henkel's Request for Admissions Nos. 1 and 2.

Henkel's Request for Admission No. 1 requests that GAF admit that "GAF requested modifications to the 3738T water-based bonding adhesive to include the addition of an antioxidant." DN 37 at 8. And Henkel's Request for Admission No. 2 requests that GAF admit that "the formula modification to 3738T was based on the antioxidant recommendations of GAF Research and Development." *Id.* at 9. In response to both requests, GAF stated that it was "unable to admit or deny the request" as phrased. However, GAF admitted "that it came up with the idea to add an antioxidant to the 3738T water-based bonding adhesive" and explained that "Henkel formulated the specific antioxidant added to the 3738T water-based bonding adhesive." Despite GAF's best efforts to respond to these poorly phrased requests, Henkel urges this Court to deem these requests admitted or, alternatively, that GAF be ordered to amend its responses to "fairly answer the allegations." *Id.* Henkel's request should be denied for several reasons.

First, GAF properly responded to Henkel's requests for admissions because it was unable to respond to the requests as phrased. *Cutino v. Untch*, 303 F.R.D. 413, 415 (S.D. Fla. 2014) (denying motion to compel better answers to requests for admission where responding party stated that it was "unable to admit or deny the requests"); *Cabrera v. Gov't Employees Ins. Co.*, 12-61390-CIV, 2014 WL 2999206, at *18 (S.D. Fla. 2014) (stating that a denial of a

request for admission "as phrased" was procedurally sufficient); *T. Rowe Price Small-Cap Fund, Inc. v. Oppenheimer & Co., Inc.*, 174 F.R.D. 38, 44 (S.D. N.Y. 1997) (holding that it was appropriate for a responding party to state that it was "unable to admit or deny the requests"). In fact, Henkel's criticism that GAF's responses are "evasive" or somehow vague because "'formulated' can mean multiple things" is the same reason why GAF could not simply admit or deny Henkel's request for admissions. For example, a plain reading of the requests could suggest that GAF requested more than one "modification" to the water-based adhesive, which did not occur. Accordingly, GAF properly responded to the request by stating that it was unable to admit or deny the request and also providing a substantive response that clarified the vague terms. *See Collins v. JC Penney Life Ins. Co.*, 2003 WL 25945842, at *9 (S.D. Cal. May 5, 2003) (discussing that in determining the sufficiency of a request for admission, the court's role is to "ensure the formalities of [Rule 36(a)] are observed" and that "[a]s long as a responding party's answer is adequate to satisfy the technical requirements of Rule 36, the court is not empowered to compel [the responding party] to change an answer to conform to the 'truth' or to any particular theory or other evidence").

<u>Second</u>, Henkel argues that the requests "are for simple admissions that (1) GAF requested that an antioxidant be added to modify the product, and (2) GAF Research and Development recommended the antioxidant that was used." DN 37 at 9. But that is not how Henkel's counsel worded the requests. Rather, Henkel's Request for Admission No. 1 states: "Admit that GAF requested modifications to the 3738T water-based bonding adhesive to include the addition of an antioxidant." *Id.* at 8. And Henkel's Request for Admission No. 2

states: "Admit that the formula modification to 3738T was based on the antioxidant recommendations of GAF Research and Development." *Id.* at 9. The newly phrased requests stated in Henkel's motion are very different from the requests Henkel served on GAF months ago. And Henkel should not now be permitted to re-word previous requests and argue that GAF somehow failed to properly interpret the requests in the same way.

## CONCLUSION

For the reasons set for above, Plaintiffs respectfully request the Court deny Defendant's motion to compel discovery and for an award of attorneys' fees [DE 37].

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on March 2, 2016, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF System which will send a notice of electronic filing to the following: Kristen M. Van Der Linde, Esq. and Billie Jo Taylor, Esq., of Boyd & Jenerette, P.A., Counsel for Henkel Corporation, 201 N. Hogan Street, Suite 400, Jacksonville, FL 32202; Email: kvanderlinde@boyd-jenerette.com; Email: btaylor@boyd-jenerette.com; and Philip J. O'Rourke, Esq., of Lewis, Brisbois, Bisgaard & Smith, LLP, Counsel *Pro Hac Vice* for Defendant, 77 Water Street, New York, NY 10005; Email: Philip.orourke@lewisbrisbois.com and Christine.hinds@lewisbrisbois.com.

> s/Daniel R. Lever
> Frederick J. Fein
> Fla. Bar No. 813699
> **TRIAL COUNSEL**
> Daniel R. Lever
> Fla. Bar No. 044485
> Attorneys for Plaintiffs
> Thornton Davis Fein
> 1221 Brickell Avenue, 16th Floor
> Miami, FL 33131
> Tel: 305-446-2646
> Fax: 305-441-2374
> Email: fein@tdflaw.com
> Email: lever@tdflaw.com