# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**BUILDING MATERIALS CORP. OF AMERICA and ROOFING SUPPLY GROUP ORLANDO LLC,**

                    **Plaintiffs,**

**v.**                                                    **Case No:   6:15-cv-548-Orl-22GJK**

**HENKEL CORPORATION,**

                    **Defendant.**

_____

## REPORT AND RECOMMENDATION

This cause came on for consideration without oral argument on the following motion:

| | |
|---|---|
| **MOTION:** | **PLAINTIFFS'** *VERIFIED* **MOTION TO QUANTIFY FEES AND COSTS AWARDED BY THIS COURT'S ORDER (DOC. 178) GRANTING PLAINTIFFS' ENTITLEMENT TO REASONABLE ATTORNEYS' FEES AND COSTS INCURRED AS A RESULT OF DEFENDANT'S IMPROPER REMOVAL (With Incorporated Memorandum of Law) (Doc. No. 180)** |
| **FILED:** | **May 8, 2017** |

**THEREON** it is **RECOMMENDED** that the motion be **GRANTED IN PART AND DENIED IN PART**.

## I.    BACKGROUND.

Plaintiffs Building Materials Corporation of America d/b/a GAF Materials Corporation ("GAF") and Roofing Supply Group Orlando LLC ("Roofing Supply") (collectively "Plaintiffs") brought this breach of contract lawsuit against Defendant Henkel Corporation based on Defendant's alleged failure to indemnify and defend Plaintiffs from underlying litigation stemming

from a water-based adhesive product. Doc. No. 2. On March 10, 2015, Plaintiffs initiated this lawsuit in Florida state court in the Circuit Court of the Ninth Judicial Circuit in and for Orange County, Florida. *Id.* Thereafter, on April 3, 2015, Defendant removed this action to the Middle District of Florida pursuant to the removal statute, 28 U.S.C. § 1441, and on the basis of diversity jurisdiction under 28 U.S.C. § 1332. Doc. No. 1 at ¶ 2. In its notice of removal, Defendant asserted that it is a Connecticut corporation with its principal place of business in Rocky Hill, Connecticut, *id.* at ¶ 6; that Plaintiff GAF is a Delaware corporation with its principal place of business in Wayne, New Jersey, *id.* at ¶ 4; and that Plaintiff Roofing Supply is a limited liability company organized under Delaware law with its principal place of business in Orlando, Florida, *id.* at ¶ 5. Plaintiffs also asserted that the amount in controversy exceeds $75,000, *id.* at ¶ 8, which remains undisputed. Plaintiffs did not file a motion to remand the case, and the case proceeded with a discovery period lasting approximately one year. Doc. Nos. 28, 50.

On August 30, 2016, the Court granted Defendant's motion for summary judgment and denied Plaintiffs' motion for partial summary judgment. Doc. No. 153. In this Article 2, battle-of-the-forms case, the central factual issues were when Defendant sent its Sales Order Confirmation ("SOC") to GAF and whether GAF received it. *Id.* at 6. Reviewing the records and applying the rebuttable presumption of receipt, the Court found there was no genuine issue of material fact and granted summary judgment in favor of Defendant. *Id.* at 15.

Plaintiffs timely appealed. Doc. No. 157. Upon review of subject matter jurisdiction, the Eleventh Circuit questioned the citizenship of Plaintiff Roofing Supply, noting that a party must identify each member of an LLC and provide each member's citizenship. Doc. No. 172-3. The Eleventh Circuit requested briefing on the issue. In its response, Defendant informed the Eleventh Circuit and Plaintiffs that it had mistakenly asserted in its notice of removal that it was a

Connecticut corporation when, in fact, Defendant is a Delaware corporation. Doc. No. 172-6 at 5. Because both Defendant and Plaintiff GAF asserted to the Eleventh Circuit that they are Delaware corporations, Doc. No. 172 at 9, Doc. No. 174 at 2, the case was remanded to this Court for consideration of subject matter jurisdiction, Doc. No. 168. Defendant subsequently filed a motion to remand to state court, Doc. No. 171, and Plaintiffs filed a motion to vacate, to remand, and for attorney's fees and costs, Doc. 172. In the motion for attorney's fees and costs, Plaintiffs requested that the Court award it sanctions, costs, and attorney's fees under the Court's inherent powers, Federal Rule of Civil Procedure 37, 11th Circuit Rule 39-2(e), and 28 U.S.C. § 1447(c). Doc. No. 172. Plaintiffs asked that Defendant be ordered to pay all of their "attorney's fees they incurred litigating this action." Doc. No. 178 at 7.

On April 17, 2017, the Court entered an Order on the motions (the "Order"). *Id.* at 10-12. The Court granted the motions to remand. *Id.* at 10. The Court also granted Plaintiff's motion to vacate the Orders granting motions to dismiss, denying and granting motions for summary judgment, granting Defendant's motion to tax costs, assessing costs against Plaintiffs, and the Judgment in favor of Defendant. *Id.* at 11. The Court granted in part Plaintiffs' request for an award of attorney's fees and costs. *Id.* at 10-11. The Court denied Plaintiffs' request for sanctions under Rule 11, request for attorney's fees and costs under 11th Circuit Rule 39-2(e), and request for sanctions under the Court's inherent power. *Id.* The Court granted Plaintiffs' request for attorney's fees and costs under 28 U.S.C. § 1447(c) for Defendant's improper removal. *Id.* at 10. The Court stated, "Plaintiffs may file a motion for reasonable fees and costs incurred as a result of Defendant's improper removal. However, Plaintiffs' request for all fees and costs is **DENIED** . . . ." *Id.* In the Order, the Court explained that under 28 U.S.C. § 1447(c), expenses caused by the improper removal, including those "incurred in remanding the case and 'the necessary expenses

of being in the second judicial system'" are recoverable due to the improper removal. *Id.* at 9 (quoting *Shooter Constr. Co. v. Wells Fargo Ins. Servs. USA, Inc.*, No. 3:11–cv–181, 2011 WL 6339680 at *2 (S.D. Ohio Nov. 28, 2011)). "Plaintiffs are only entitled to those additional attorney's fees and costs incurred by litigating in federal court as opposed to state court." *Id.* at 9-10.

On May 8, 2017, Plaintiffs filed their "*Verified* Motion to Quantify Fees and Costs Awarded by this Court's Order (Doc. 178) Granting Plaintiffs' Entitlement to Reasonable Attorneys' Fees and Costs Incurred as a Result of Defendant's Improper Removal (With Incorporated Memorandum of Law)," (the "Motion"). Doc. No. 180. Plaintiffs request an award of $569,589.03. *Id.* at 18. Plaintiffs also ask that the Court award a rate "pursuant to Plaintiffs' Alternative Fee Agreement." *Id.* at 14-17. Plaintiffs entered into an Alternative Fee Agreement with their counsel (the "Agreement"), under which Plaintiffs pay a discounted rate for attorney's and paralegal fees. Doc. No. 180-22. The Agreement contains an alternative fee recovery clause stating that if anyone other than Plaintiffs is required to pay counsel's attorney's fees, then counsel's hourly rates will be either the discounted rates or "such reasonable rates as is determined by the court, whichever is higher, and [Plaintiffs] would be obligated to then pay [undersigned counsel] that court-awarded reasonable amount." *Id.* On May 22, 2017, Defendant filed its response to the Motion (the "Response"). Doc. No. 181. Defendant argues that Plaintiffs should receive nothing. *Id.* at 20. Defendant alternatively requests that "the Court should only award those fees which are not excessive, redundant, or otherwise unnecessary based upon reasonable hourly rates as determined by this Court." *Id.*

II.    <u>ANALYSIS.</u>

The Court uses the familiar lodestar method in determining a reasonable fee award, which is calculated by multiplying the number of hours reasonably expended by a reasonable hourly rate. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). The party moving for fees has the burden of establishing that the hourly rates and hours expended are reasonable. *Norman v. Housing Auth. of the City of Montgomery*, 836 F.2d 1292, 1303 (11th Cir. 1988). "In determining what is a 'reasonable' hourly rate and what number of compensable hours is 'reasonable,' the court is to consider the 12 factors enumerated in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir.1974)." *Bivins v. Wrap It Up, Inc.*, 548 F.3d 1348, 1350 (11th Cir. 2008). The *Johnson* factors are the following: 1) the time and labor required; 2) the novelty and difficulty of the questions; 3) the skill requisite to perform the legal services properly; 4) the preclusion of other employment by the attorney due to acceptance of the case; 5) the customary fee in the community; 6) whether the fee is fixed or contingent; 7) time limitations imposed by the client or circumstances; 8) the amount involved and the results obtained; 9) the experience, reputation, and the ability of the attorney; 10) the "undesirability" of the case; 11) the nature and length of the professional relationship with the client; and 12) awards in similar cases. *Johnson*, 488 F.2d at 717-19.

"[A] reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." *Duckworth v. Whisenant*, 97 F.3d 1393, 1396 (11th Cir. 1996) (quotations and citation omitted). In determining if the requested rate is reasonable, the Court may consider the applicable *Johnson* factors and may rely on its own knowledge and experience. *Norman*, 836 F.2d at 1299-1300, 1303 ("The court, either trial or appellate, is itself an expert on the question and may consider its own

knowledge and experience concerning reasonable and proper fees and may form an independent judgment either with or without the aid of witnesses as to value."). "The applicant bears the burden of producing satisfactory evidence that the requested rate is in line with prevailing market rates," which must be more than just "the affidavit of the attorney performing the work." *Id.* at 1299 (citations omitted). Instead, satisfactory evidence generally includes evidence of the rates charged by lawyers in similar circumstances, or opinion evidence of reasonable rates. *Id.*

As for the hours reasonably expended, counsel must exercise proper "billing judgment" and exclude hours that are "excessive, redundant, or otherwise unnecessary." *Hensley*, 461 U.S. at 434. In demonstrating that their hours are reasonable, counsel "should have maintained records to show the time spent on the different claims, and the general subject matter of the time expenditures ought to be set out with sufficient particularity so the district court can assess the time claimed for each activity." *Norman*, 836 F.2d at 1303. Likewise, a party opposing a fee application should also submit objections and proof that are specific and reasonably precise. *ACLU of Ga. v. Barnes*, 168 F.3d 423, 428 (11th Cir. 1999). A fee opponent's failure to explain with specificity the particular hours he or she views as "excessive, redundant, or otherwise unnecessary" is generally fatal. *Scelta v. Delicatessen Support Servs., Inc.*, 203 F. Supp. 2d 1328, 1333 (M.D. Fla. 2002) (citing *Gray v. Lockheed Aeronautical Sys. Co.*, 125 F.3d 1387 (11th Cir. 1997)). "If fee applicants do not exercise billing judgment, courts are obligated to do it for them, to cut the amount of hours for which payment is sought, pruning out those that are excessive, redundant, or otherwise unnecessary." *Barnes*, 168 F.3d at 428 (quotations omitted). When a court finds the number of hours billed unreasonably high, a court has two choices: it may review each entry and deduct the unreasonable time or it may reduce the number of hours by an across-the-board cut. *Bivins*, 548 F.3d at 1350.

## A.  The *Johnson* Factors.

The Court must weigh the *Johnson* factors in determining a reasonable hourly rate and a reasonable number of hours expended. *Id.*

### 1.   Time and Labor Required

The first *Johnson* factor is the time and labor required. 488 F.2d at 717. Plaintiffs were awarded fees "incurred as a result of Defendant's improper removal." Doc. No. 178 at 10. Thus, the applicable time and labor required is the time and labor required due to the improper removal.

Litigating this case in federal court required, at most, five percent more work than litigating it in state court. This particular litigation has been extremely contentious—unnecessarily so—and it is the undersigned's firm conviction that the parties are mutually responsible for overworking this case. One need only look at the Motion (requesting over half a million dollars in fees) and the response thereto (requesting zero) to see that this persists even now as both sides maintain extreme and untenable positions. The fees incurred are due more to the attorneys' handling of the litigation than to whether it proceeded in state or federal court. *See* Order on Motions for Sanctions, Doc. No. 141 at 2 ("Throughout the parties' unusually contentious discovery efforts, the miserable and tortured history of which is already part of the record and need not be repeated (*see generally* Doc. Nos. 37-116), the Court has repeatedly found that this is a relatively straightforward 'battle of the forms' breach of contract action. . . . [T]he parties have resorted to barraging the Court with motions and requests for emergency hearings . . . ."); *Indyne, Inc. v. Abacus Tech. Corp.*, No. 6:11-CV-137-ORL-22DAB, 2013 WL 11312471, at *20 (M.D. Fla. Dec. 6, 2013), *report and recommendation adopted as modified*, No. 6:11-CV-137-ORL-22, 2014 WL 1400658 (M.D. Fla. Feb. 25, 2014), *aff'd*, 587 F. App'x 552 (11th Cir. 2014) (applying an across-the-board reduction in fees and stating, "This case is one of those encountered with

- 7 -

increasing and unfortunate frequency where the litigation effort expended by both sides seems incommensurate with the complexity and significance of the matters at issue.").

### 2.   Novelty and Difficulty of the Questions

The second *Johnson* factor is the novelty and difficulty of the questions. 488 F.2d at 718. As mentioned earlier, at its core, this is a routine Article 2 UCC battle-of-the-forms case that is neither novel nor complex. Doc. No. 141 at 2. The novelty and difficulty of the questions presented did not change due to the removal to federal court. Furthermore, the issue of removal and diversity jurisdiction were neither novel nor complex. Although there are incremental differences between practicing in federal court and state court, most of those differences involve the nuts and bolts of litigating the case, such as mandatory case management conferences. These requirements are also neither novel nor difficult. Plaintiffs argue that more in-depth briefs are required in federal court than in state court. Doc. No. 180 at 5. Although this may be true, the extra effort is substantially negated by not needing to prepare for oral argument, which is rarely granted in federal court, but is routine in state court. Thus, the undersigned finds that the novelty and difficulty of the questions presented is minimal.

### 3.   Skill Required to Perform the Legal Services Properly

The third *Johnson* factor is the skill needed to perform the legal services properly. 488 F.2d at 718. The attorney's work product, preparation, and performance before the Court are considerations for this factor. *Id.* In an Article 2 battle-of-the-forms case, governed by § 2-207, the central factual issues are primarily resolved by examining the conflicting terms of the contract for sale. Doc. No. 153 at 7-9. In this case, central factual issues were when Defendant sent its SOC to GAF and whether GAF received it. *Id.* at 6. Reviewing the records and applying the rebuttable presumption of receipt, the Court found there was no genuine issue of material fact and granted

summary judgment in favor of Defendant. *Id.* at 15. Therefore, it is clear that Article 2 of the UCC and the rebuttable presumption of receipt were at the heart of this case and no particular skills or experience were required to act as counsel. Thus, the skill required to represent Plaintiffs was minimal.

### 4.   Preclusion of Other Employment Due to Acceptance of the Case

The fourth *Johnson* factor is the preclusion of other employment due to acceptance of the case. 488 F.2d at 718. Plaintiffs present no evidence regarding this factor. Therefore, this factor is given no weight.

### 5.   Customary Fee in the Community

The fifth *Johnson* factor is the customary fee in the community. 488 F.2d at 718. Plaintiffs do not provide any evidence of rates charged by lawyers in similar cases in central Florida, opinion evidence establishing that the rates they request are reasonable hourly rates, or evidence of the hourly rates their counsel regularly charges other clients; instead, Plaintiffs rely on two Florida state court orders and an order from the Southern District of Florida awarding fees in cases related to this litigation. Doc. No. 178 at 17 n.11. "[A] court should hesitate to give controlling weight to prior awards, even though they may be relevant." *Dillard v. City of Greensboro*, 213 F.3d 1347, 1355 (11th Cir. 2000). "[G]iving prior awards controlling weight over the superior evidence of a lawyer's actual billing rate equates to giving the prior awards issue-preclusive value against a party whose interests were not even arguably represented in the prior litigation." *Id.* Additionally, the undersigned relies on his own knowledge and experience concerning reasonable rates in the central Florida community. *Cullens v. Ga. Dep't of Transp.*, 29 F.3d 1489, 1494 (11th Cir. 1994) ("The rate of attorney's fees is that of the place where the case is filed."). In a relatively straightforward

Article 2 case such as this, seeking indemnity, the Court would expect the hourly rate charged by counsel to be on the low side of the range for counsel appearing before the Court.

6.   Whether the Fee is Fixed or Contingent

The sixth *Johnson* factor is whether the fee is fixed or contingent. 488 F.2d at 718. The Agreement guarantees counsel discounted rates of compensation with a possibility of receiving higher rates should a third party be found responsible for the fees and a court approve the higher rates as being reasonable. Doc. No. 180-22. Thus, the Agreement is not a traditional contingent fee agreement. This factor is given minimal consideration, as Plaintiffs were not awarded fees due to being a prevailing party. Instead, and as explained in more detail below, Defendant is ordered to pay Plaintiffs their fees "incurred" as a result of the removal. Doc. No. 178 at 10.

7.   Time Limitations Imposed by the Client or Circumstances

The seventh *Johnson* factor is time limitations imposed by the client or circumstances. 488 F.2d at 718. Plaintiffs have not brought any time limitations to the Court's attention that would affect the fees awarded due to the removal, and the undersigned is aware of none. Therefore, this factor is given no weight.

8.   Amount Involved and Results Obtained

The eighth *Johnson* factor is the amount involved and the results obtained. 488 F.2d at 718. Over one million dollars is at issue on the merits of Plaintiffs' claims, yet Plaintiffs have not recovered any of it. Doc. No. 2 at ¶ 36; Doc. No. 154. Plaintiffs were awarded fees solely based on the improper removal, the discovery of which was precipitated by the Eleventh Circuit's inquiry. Plaintiffs did nothing to obtain the result of being awarded their fees incurred due to the

removal, including failing to file a motion to remand soon after the case was removed, other than asking for fees in a motion.[1] Thus, the amount involved and results obtained factor is neutral.

9.   Experience, Reputation, and the Ability of the Attorney

The ninth *Johnson* factor is the attorney's experience, reputation, and ability. 488 F.2d at 718. The attorneys for whom Plaintiffs seek compensation are Frederick J. Fein, Esq., Stephanie G. Kolman, Esq., and Daniel R. Lever, Esq. Doc. No. 180 at 17. Mr. Fein has been practicing law in Florida for twenty-eight years and is an AV-rated civil trial lawyer. Doc. No. 180-17 at ¶ 4. He has acted as lead trial counsel in complex civil cases involving high exposure damages. *Id.* Ms. Kolman has been practicing law for twenty-five years. Doc. No. 180-26 at ¶ 4. Mr. Lever has been practicing for ten years and was selected as a Florida Rising Star for the past three years. Doc. No. 180-27 at ¶¶ 4, 5. Plaintiffs also seek compensation for paralegals Cyndi E. Gordon and Daphnee J. Jones. Doc. No. 180 at 17. Ms. Gordon has been a paralegal for over twenty-three years. Doc. No. 180-28 at ¶ 3. Thus, the experience, reputation, and ability of Plaintiffs' counsel and paralegals weigh in favor of their fee request.

10. The Undesirability of the Case

The tenth *Johnson* factor is the undesirability of the case. 488 F.2d at 719. This is not a prevailing party fee award, and Plaintiffs present no evidence or argument regarding this factor. Therefore, this factor is found to be neutral.

11. Nature and Length of the Professional Relationship with the Client

The eleventh *Johnson* factor is the nature and length of the professional relationship with the client. 488 F.2d at 719. Plaintiffs present scant evidence regarding this factor. Plaintiffs state that they retained the counsel for whom they seek fees in December 2014 "to assist in preparing

---

[1] This case was before the Eleventh Circuit because Plaintiffs lost on summary judgment. Doc. Nos. 153, 154, 157.

for and participating in the trial of the underlying product litigation case . . . ." Doc. No. 180 at 14. The only other information provided the Court regarding the relationship between Plaintiffs and their counsel is that they entered into the Agreement regarding fees. *Id.* at 14-15. Therefore, this factor is also found to be neutral.

### 12. Awards in Similar Cases

The final *Johnson* factor is awards in similar cases, "within and without the court's circuit." *Johnson*, 488 F.2d at 717-19. The only case Plaintiffs cite that states the amount of the attorney's fees awarded under 28 U.S.C § 1447(c) is *Dimitrijevic v. TV & C GP Holding Inc.*, No. CIV.A. H-04-3457, 2005 WL 2656256, at *5 (S.D. Tex. Oct. 18, 2005), in which the total fee award was $5,950.00. Plaintiffs fail to cite any case awarding a six-figure sum for attorney's fees incurred due to removal, much less half a million dollars.

In *Bujanowski v. Kocontes*, No. 808-CV-0390-T-33EAJ, 2009 WL 1564263, at *4 (M.D. Fla. Feb. 2, 2009), *report and recommendation adopted in part*, No. 808CV390T33EAJ, 2009 WL 1564244 (M.D. Fla. May 1, 2009), *aff'd*, 359 F. App'x 112 (11th Cir. 2009), the court applied a thirty-percent across-the-board reduction for counsel's vagueness, block billing, and redundant or inefficient work, and awarded $20,067.95 for fees incurred due to the removal. *See also Digital 1 Media, Inc. v. Van Almen*, No. 8:09-CV-1097-T-33TBM, 2010 WL 3259788, at *5 (M.D. Fla. July 27, 2010), *report and recommendation adopted*, No. 8:09-CV-1097-T-33TBM, 2010 WL 3259786 (M.D. Fla. Aug. 16, 2010) ($3,126.00 in attorney's fees awarded under 28 U.S.C. § 1447(c)); *Martyak v. Martyak*, 378 F. Supp. 2d 1365, 1370 (S.D. Fla. 2005), *aff'd*, 171 F. App'x 768 (11th Cir. 2006) ($8,850.00 for fees awarded under 28 U.S.C. § 1447(c)).

**B.  Reasonable Hourly Rate.**

Plaintiffs argue that the Court should award their attorneys and paralegals the following rates per hour:

Frederick J. Fein, Partner -- $650

Stephanie G. Kolman, Of Counsel -- $500

Daniel R. Lever, Senior Counsel -- $400

Daphnee J. Jones and Cyndi E. Gordon, Paralegals -- $200

Doc. No. 180 at 17. As noted *supra* Part II.A.5, Plaintiffs do not provide any evidence of rates charged by lawyers in similar cases, opinion evidence establishing that these are reasonable hourly rates, or evidence of the hourly rates their counsel regularly charges other clients; instead, Plaintiffs rely on two Florida state court orders and an order from the Southern District of Florida awarding fees in cases related to this litigation. *Id.* at 17 n.11.

Plaintiffs entered into the Agreement with their counsel in this case. *Id.* at 14-15. Under the Agreement, "undersigned counsel agreed to charge Plaintiffs the following discounted hourly rates: Frederick J. Fein, $325.00 per hour; Daniel R. Lever, $240.00 per hour; and Daphnee J. Jones, $125.00 per hour." Doc. No. 180-22. The Agreement contains an alternative fee recovery clause, which states the following:

> [Plaintiffs and Plaintiffs' counsel] have agreed that should anyone other than [Plaintiffs] be required to pay [undersigned counsel's] attorneys' fees, the hourly rate for [the] attorneys' fees would be (a) the above mentioned discounted rates or (b) such reasonable rates as is determined by the court, whichever is higher, and [Plaintiffs] would be obligated to then pay [undersigned counsel] that court-awarded reasonable amount.

*Id.* "Plaintiffs' counsel continues to charge Plaintiffs the discounted hourly rates set forth in the Alternative Fee Agreement." Doc. No. 180-17 at ¶ 8. Plaintiffs contend that the Court should

accept and apply the Agreement and award Plaintiffs a rate higher than the discounted rate that they are being charged. Doc. No. 180 at 16. Defendant argues that "the Court should apply the rates Plaintiffs' counsel actually charged Plaintiffs, or in the alternative, at an hourly rate in which this Court deems reasonable and appropriate." Doc. No. 181 at 7.

Here, the Court ordered Defendant to pay Plaintiffs' "reasonable fees and costs *incurred as a result of Defendant's improper removal.*" Doc. No. 178 at 10 (emphasis added). Similarly, 28 U.S.C. § 1447(c) states, "An order remanding the case may require payment of just costs and any *actual* expenses, including attorney fees, *incurred* as a result of the removal." (Emphasis added.) In *Wisconsin v. Hotline Industries, Inc.*, 236 F.3d 363, 365 (7th Cir. 2000), the district court awarded a reasonable market rate for the government attorneys that prevailed on a motion to remand. The defendant argued that this amount exceeded that allowed under Section 1447(c). *Id.* at 366. The Seventh Circuit determined that "§ 1447(c) expressly limits fee awards to actual outlays-specifically, to 'any *actual* expenses, including attorney fees, *incurred*' (emphasis added)." *Id.* at 367 (quoting 28 U.S.C. § 1447(c)). The court noted that the emphasized words were added to the statute when it was amended to explicitly include attorney's fees. *Id.* Using "actual" and "incurred" aligns section 1447(c) with other federal statutes that award attorney's fees as reimbursement. *Id.* Because "[i]mproper removal prolongs litigation (and jacks up fees)[,]" the defendant should expect to pay the plaintiff's costs in litigating in a second judicial system. *Id.* at 367-68. The costs include the actual attorney's fees incurred. *Id.* at 368. Thus, the Seventh Circuit remanded the case to the district court to "determine the actual amount of fees incurred." *Id.*

The attorney's fees that Plaintiffs incurred are those charged at the rate under their fee Agreement with their counsel. *See Lawrence ex rel. Estate of Lawrence v. Biotronik, Inc.*, No. 04 C 1876, 2005 WL 2338812, at *3 (N.D. Ill. Sept. 20, 2005) (declining to apply a multiplier to a

fee award under Section 1447(c) and stating, "It is not the purpose of Section 1447(c) to penalize defendants or to give plaintiffs a windfall, but rather the statute intended to compensate plaintiffs in wrongful removal cases for their actual costs, i.e., to put them in the same position they were in before removal.").

Additionally, the rates actually charged Plaintiffs are reasonable. The rate the attorney charges the client "is powerful, and perhaps the best, evidence of his market rate; that is most likely to be what he is paid as 'determined by supply and demand.'" *Dillard v. City of Greensboro*, 213 F.3d 1347, 1354–55 (11th Cir. 2000) (quoting *Blum v. Stenson*, 465 U.S. 886, 895 n. 11 (1984)). Furthermore, the rates actually charged Plaintiffs are consistent with the rates the Court is accustomed to seeing other counsel and paralegals charge in this community for handling a case such as this. Plaintiffs rely on previous orders finding the higher rates reasonable, but "a court should hesitate to give controlling weight to prior awards, even though they may be relevant." *Id.* at 1355. "[G]iving prior awards controlling weight over the superior evidence of a lawyer's actual billing rate equates to giving the prior awards issue-preclusive value against a party whose interests were not even arguably represented in the prior litigation." *Id.* Finally, the undersigned relies on his own knowledge and experience concerning reasonable rates, plus the *Johnson* factors analyzed above, to conclude that the following rates are reasonable:

Frederick J. Fein--$325.00 per hour;

Stephanie G. Kolman--$300.00 per hour;[2]

Daniel R. Lever--$240.00 per hour; and

Daphnee J. Jones and Cyndi E. Gordon--$125.00 per hour.

---

[2] Ms. Kolman's rate under the Agreement is not stated. Her reasonable rate equals sixty percent of the rate Plaintiffs request in the Motion, which is the same percentage of the rate Plaintiffs request in the Motion for Mr. Lever's hourly rate, as compared to the rate Plaintiffs are actually charged for Mr. Lever's work. Doc. No. 180 at 15, 17.

### C. Reasonable Hours.

Once the reasonable hourly rate is determined, the Court must then decide the reasonable number of hours expended to determine the lodestar. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). "When faced with a massive fee application, . . . an hour-by-hour review is both impractical and a waste of judicial resources." *Loranger v. Stierheim*, 10 F.3d 776, 783 (11th Cir. 1994).When a request for an award of attorney's fees is voluminous, the court may employ an across-the-board reduction rather than an hour-by-hour analysis. *Id.* "Any reductions to the requested hours must be concisely and clearly explained to allow for appellate review." *Bivins v. Wrap It Up, Inc.*, 548 F.3d 1348, 1351 (11th Cir. 2008).

The Motion is voluminous. Plaintiffs request an award of over half a million dollars in fees for 1,170.2 hours, and the Motion, with its accompanying twenty-eight exhibits, is 149 pages long. Doc. No. 180 at 17; Doc. No. 180-1; *Villano v. City of Boynton Beach*, 254 F.3d 1302, 1311 (11th Cir. 2001) ("Appellant submitted 569.30 hours for compensation. Those hours are extensive enough that we do not expect the district court or the magistrate judge to conduct an hour-by-hour analysis in this case."); *Padurjan v. Aventura Limousine & Transp. Serv., Inc.*, 441 F. App'x 684, 687 (11th Cir. 2011) ("The more than $200,000 Padurjan seeks in attorneys' fees is indication enough that this case is voluminous.").[3]

A reduction is necessary to eliminate recovery for noncompensable hours and excessiveness. For example, Plaintiffs request full reimbursement for hours spent because they were required to:

> (1) review and analyze the Court's procedural preferences and Local Rules to ensure compliance, (2) prepare and serve initial disclosures, (3) prepare a mediation statement, and (4) review and analyze

---

[3] In this circuit, "[u]npublished opinions are not considered binding precedent, but they may be cited as persuasive authority." 11th Cir. R. 36-2.

> numerous Orders issued by this Court, primarily in response to
> motions filed by Henkel and motions Plaintiffs were forced to file
> as a result of Henkel's litigation tactics . . . .

Doc. No. 180 at 8. Transaction Number 2580098, which Plaintiffs place in this category, states "Review/analyze case deliverables – analysis to ensure court deadlines are met and case issues are addressed." Doc. No. 180-6 at 2. Reviewing and analyzing what counsel can do to ensure court deadlines are met and case issues are addressed must be done in any litigation—it is not a cost incurred due to litigating in federal court.

Plaintiffs also argue that their time spent conferring with opposing counsel before filing motions for extensions of time is compensable as only being required in federal court. Doc. No. 180 at 8. Plaintiffs originally filed this action in the Circuit Court of the Ninth Judicial Circuit in and for Orange County, Florida. Doc. No. 2. Plaintiffs stated in that court that the case was appropriate for the Complex Business Court division. Doc. No. 1-3 at 6. Rule 5.3 of the Business Court Procedures requires a moving party to confer with counsel for the opposing party in a good faith effort to resolve the issues raised by the motion. Amended Administrative Order Implementing the Business Court Procedures, No. 2004-03-02 (Fla. Cir. Ct. Nov. 4, 2016). Thus, time spent conferring with opposing counsel before filing motions is not compensable as time incurred due to litigating in federal court.

Plaintiffs also include time spent on matters before the appellate court. Transaction numbers 2622588, 2624168, and 2622592, all appear to be for drafting and revising the Certificate of Interested Persons and Corporate Disclosure Statement for the Eleventh Circuit, as they are dated October 3, 4, and 5, 2016, respectively. Doc. No. 180-4 at 2. The notice of appeal was filed on September 22, 2016, Doc. No. 157, and an amended Certificate of Interested Persons and Corporate Disclosure Statement was only filed in this Court on June 10, 2016, Doc. No. 128.

Despite the Court's ruling that Plaintiffs are not entitled to recover their appellate attorney's fees and costs, Doc. No. 178 at 10, Plaintiffs submitted these transactions for reimbursement.

The descriptions of other transactions demonstrate excessiveness. Plaintiffs submit hours including the description of researching, reviewing, analyzing, and writing about the issue of "whether a seller's shipment of the goods prior to issuance of its invoice with varying terms from a purchase order will bind them to the terms of the buyer's purchase order." Doc. No. 180-16 at 2-3 (Transaction No. 2566289--0.7 hours; Transaction No. 2566298--2 hours; Transaction No. 2566299--3 hours; Transaction No. 2566300--2.5 hours; Transaction No. 2566302--5 hours; Transaction No. 2566303--2 hours; Transaction No. 2566304--2.5 hours; Transaction No. 2566305--2.5 hours; Transaction No. 2567786--2 hours; Transaction No. 2567788--3.5 hours; Transaction No. 2567792--5 hours; Transaction No. 2567795--5 hours). Setting aside whether this is work incurred due to the removal, 35.7 hours is excessive for this one issue. Although this issue is included with other tasks within each transaction, the block billing makes it impossible for the Court to determine exactly how much time was devoted to "whether a seller's shipment of the goods prior to issuance of its invoice with varying terms from a purchase order will bind them to the terms of the buyer's purchase order."

The voluminous Motion and the inclusion of excessive and non-compensable transactions renders the hours claimed unreasonably high. These circumstances warrant an across-the-board reduction. The Court awarded Plaintiffs their attorney's fees "incurred as a result of Defendant's improper removal." Doc. No. 178 at 10. There are certain discrete tasks unique to civil litigation in federal court in the Middle District of Florida, such as requiring memorandums supporting motions. *See* Local Rule 3.01. One example Plaintiffs point to regarding a difference between federal court and state court is that under the Middle District of Florida's Local Rules, the party

- 18 -

opposing a motion must file a response. Local Rule 3.01(b). Plaintiffs argue that this requires more work than would be needed in state court. Doc. No. 180 at 11-12. This argument is rejected, especially regarding this particular case. Although a written response opposing a motion may not be required in state court, a response (whether written or oral) to the motion must still be prepared. Plaintiffs argue that in state court, lawyers may "notice[] an opponent's motion for hearing without drafting and filing a written response." *Id.* at 12. The lawyer must still prepare for the hearing, however, and hearings are not as common in federal court. Additionally, regarding this case in particular, it strains credulity that Plaintiffs or Defendant opposing a motion would not file a written response in state court.

The undersigned's experience leads to the conclusion that litigating this case in federal court required, at most, five percent more work than litigating it in state court. As discussed *supra* Part II.A.1, the number of hours expended on this case is due to how the parties litigated it, not what the case required. Thus, five percent of the hours claimed is a reasonable amount of hours incurred due to the removal. In making this determination, the undersigned considered his own experience as to a reasonable expenditure of hours, his familiarity with this litigation and litigation in state court, as well as the *Johnson* factors as analyzed above.

The following chart sets forth the reasonable number of hours incurred as a result of the removal for each attorney and the paralegals:

| Attorney/Paralegal | Hours Claimed | Reasonable Number of Hours (5% of Hours Claimed) |
|---|---|---|
| Frederick J. Fein | 98.20 | 4.91 |
| Stephanie G. Kolman | 761.25 | 38.06 |
| David R. Lever | 304.20 | 15.21 |
| Paralegals | 6.55 | 0.33 |

Doc. No. 180-1 at 2.

### D.  Lodestar.

Applying the foregoing findings to the hours and rates at issue results in the amounts below:

| Attorney | Reasonable Hourly Rate | Reasonable Number of Hours | Awardable Fees |
|---|---|---|---|
| Frederick J. Fein | $325 | 4.91 | $1,595.75 |
| Stephanie G. Kolman | $300 | 38.06 | $11,418.00 |
| David R. Lever | $240 | 15.21 | $3,650.40 |
| Paralegals | $125 | 0.33 | $41.25 |

Accordingly, adding the awardable fees for each attorney and paralegal together, the lodestar is $16,705.40. It is recommended that the Court award this amount to Plaintiffs as reasonable fees incurred due to the removal.

### E.  Costs.

Plaintiffs request an award of expenses of $2,144.03. Doc. No. 180 at 17. They request $533.65 in expenses incurred in preparing the Case Management Report. *Id.* at 7. They ask for $1,610.38 in mediation expenses. *Id.* at 9. Despite Plaintiffs' argument that they engaged in mediation due to the Case Management Order ordering the parties to do so, *id.*, as Defendant points out, "mediation has become institutionalized within Florida's court system." Doc. No. 181 at 15 (citing *Vitakis-Valchine v. Valchine*, 793 So. 2d 1094, 1097 (Fla. 4th DCA 2001)). Mediation expenses were not incurred due to Defendant's removal; thus, it is recommended that the Court deny that request.

The expenses incurred in preparing the Case Management Report include Frederick J. Fein's airfare, lunch, and parking in attending the Case Management Conference in person, as evidenced by receipts attached as an exhibit to the Motion. Doc. No. 180-3. The undersigned finds that the airfare and parking expenses are reasonable and were incurred due to the removal, as an

in-person case management conference would not be required in state court. Lunch was not incurred due to the removal. Thus, it is recommended that Plaintiffs recover $491.60 for costs, representing airfare and parking to attend the Case Management Conference.

### III.    CONCLUSION.

Accordingly, it is **RECOMMENDED** that the Motion, Doc. No. 180, be **GRANTED IN PART AND DENIED IN PART** as follows:

1.  That Plaintiffs be awarded $16,705.40 in attorney's fees and $491.60 in expenses incurred as a result of the removal; and

2.  Otherwise, that the Motion be **DENIED**.

### NOTICE TO PARTIES

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. 11th Cir. R. 3-1.

**RECOMMENDED** in Orlando, Florida, on October 18, 2017.

_____
GREGORY J. KELLY
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record