# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

BUILDING MATERIALS
CORPORATION OF AMERICA and
ROOFING SUPPLY GROUP
ORLANDO LLC,

                Plaintiffs,

v.                                                    Case No:   6:15-cv-548-Orl-22GJK

HENKEL CORPORATION,

                Defendant.

## ORDER

This cause comes before the Court on Plaintiffs' Verified Motion to Quantify Fees and Costs (Doc. 180) filed on May 8, 2017 following the Court's previous Order finding Plaintiffs entitled to reasonable attorneys' fees and costs incurred as a result of Defendant's improper removal. The United States Magistrate Judge has submitted a report (Doc. 184) recommending that the Motion be granted in part and denied in part, to which Plaintiffs have filed objections.[1] Doc. 185.

After an independent *de novo* review of the record in this matter, including Plaintiffs' Objections (Doc. 185), the Court agrees entirely with the findings of fact and conclusions of law in the Report and Recommendation. For the reasons stated below, Plaintiffs' Verified Motion to Quantify Fees and Costs (Doc. 180) will be **GRANTED in part and DENIED in part.**

### I.    BACKGROUND FACTS and PROCEDURAL HISTORY

On March 10, 2015, Plaintiffs Building Materials Corporation of America[2] d/b/a GAF Materials Corporation ("GAF") and Roofing Supply Group Orlando LLC ("Roofing Supply")

---

[1] Defendant did not file objections or respond to Plaintiffs' objections.
[2] Apparently Building Materials Corporation of America has changed its name to Standard Industries, Inc.

(collectively "Plaintiffs") filed a breach of contract action in state court against Defendant Henkel Corporation based on Defendant's alleged failure to indemnify Plaintiffs for underlying litigation stemming from a water-based adhesive product. Doc. 2. Defendant timely removed the action to the Middle District of Florida. Doc. 1. In the Notice of Removal, Defendant asserted that it was a Connecticut corporation and maintained its principal place of business in Connecticut. Doc. 1 ¶ 6. Because Plaintiff GAF was a Delaware corporation with its principal place of business in New Jersey, and Plaintiff Roofing Supply was a limited liability company organized under Delaware law with its principal place of business in Florida, Defendant alleged diversity jurisdiction to support a claim pursuant to 28 U.S.C. § 1332 existed, with the requisite amount in controversy greater than $75,000. Doc. 1. Plaintiffs did not file a motion to remand the case, and the case proceeded with a discovery period lasting approximately one year. Doc. 28, 50.

On August 30, 2016, the Court granted Defendant's motion for summary judgment and denied Plaintiffs' motion for partial summary judgment. Doc. 153. Plaintiffs filed an appeal on September 22, 2016 challenging the Court's summary judgment ruling, and a second appeal on November 28, 2016 challenging the cost judgment against them. Docs. 157, 163. As part of a subject matter jurisdiction review for the appeal, on October 17, 2016, the Eleventh Circuit questioned the citizenship of Plaintiff Roofing Supply Group, LLC, noting that a party must identify each member of a limited liability company and provide each member's citizenship. Doc. 172-3. At that point, Defendant informed the Eleventh Circuit and Plaintiffs that it had mistakenly asserted in its notice of removal that it was a Connecticut corporation when, in fact, Defendant is a Delaware corporation. Doc. 172-6 at 5. Because both Defendant and Plaintiff GAF asserted to the Eleventh Circuit that they were Delaware corporations,[3] the case was remanded on January

---

(Doc. 185 at 1 n. 1); however, it has not filed a motion to correct the docket, and the Court will refer to it as "GAF."
    [3] Doc. 172 at 9; Doc. 174 at 2.

31, 2017 to this Court for consideration of subject matter jurisdiction on the basis of diversity. Doc. 168.

On February 24, 2017, Defendant filed a motion to remand to state court. Doc. 171. Plaintiffs filed a motion to vacate the summary judgment entered against them, to remand the case to state court, and for attorney's fees and costs. Doc. 172. Plaintiffs sought to recover their attorney's fees and costs as well as sanctions[4] against Defendant for *all* of their attorney's fees and costs incurred in "litigating this action" in federal court. Doc. 178 at 7.

On April 17, 2017, the Court granted the motion to remand and vacated the rulings on the dispositive motions and the judgment in favor of Defendant. Doc. 178 at 10-11. The Court denied Plaintiffs' request for sanctions, but granted in part Plaintiffs' request for an award of attorney's fees and costs for Defendant's improvident removal of the case under 28 U.S.C. § 1447(c), allowing Plaintiffs to file a motion to determine the appropriate amount of fees and costs. *Id*. The Eleventh Circuit subsequently issued the mandates in the two appeals on August 22 and 23, 2017, dismissing them for lack of jurisdiction as moot and denying as moot any outstanding motions. Doc. 182 (Appeal No. 16-16180), Doc. 183 (Appeal No. 16-17323).

This Court's Order finding an award of attorney's fees and costs to be appropriate for the improvident removal determined:

> Defendant lacked an objectively reasonable basis when it removed this case after failing to investigate and determine its state of incorporation. . . . Because Defendant's sole explanation for removing this case is that it "inadvertently overlooked" its own state of incorporation and "considered only the principal place of business," Defendant has not demonstrated a reasonable basis for removing this action. The result of Defendant's carelessness is a removal that was blatantly unjustified under settled law. . . . The Court has discretion to award attorney's fees for a removal such as this that is patently improper. Though Plaintiffs could have— and should have—moved to remand this case themselves, the Court cannot excuse Defendant's failure to investigate and properly assert its own citizenship. Defendant's improper removal has wrought needless litigation costs upon the other

---

[4] Plaintiffs sought to recover their fees under the Court's inherent powers, Federal Rule of Civil Procedure 37, 11th Circuit Rule 39-2(e), and 28 U.S.C. § 1447(c).

party, upset the sensitive principles of federalism underlying our nation's dual court system, and frustrated judicial economy. Furthermore, awarding Plaintiffs reasonable attorney's fees and costs does not serve a punitive purpose, and instead reimburses Plaintiffs for unnecessarily incurred expenses caused by Defendant's wrongful removal.

For the foregoing reasons, Defendant should be held liable for Plaintiffs' "just costs and actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. §1447(c). Courts have interpreted the "incurred as a result" language to include expenses caused by the improper removal, including those expenses incurred in remanding the case and the necessary expenses of being in the second judicial system. The Court rejects Plaintiffs' request for all fees and costs incurred in this litigation as this amount is unreasonable. **A large majority of the parties' fees were incurred performing work that would have been necessary, and will likely be necessary, for litigation in the state forum**. **Plaintiffs are only entitled to those additional attorney's fees and costs incurred by litigating in federal court as opposed to state court.**

Doc. 178 at 8-10 (citations and quotations omitted; emphasis added).

With these marching orders, when Plaintiffs filed their Motion requesting the Court award $569,589 in fees (Doc. 180), Magistrate Judge Kelly issued a Report and Recommendation recommending that Plaintiffs be reimbursed for only 5% of the fees incurred, or $16,705, for fees related to the improvident removal. Magistrate Judge Kelly recommended an award of 5% of the reasonable hours expended because, based on his experience, litigating the case in federal court required, at most, five percent more work than litigating in state court; he further recommended a reduced cost award of $491 instead of the $2,144 sought[5]. Doc. 184 at 19-20.

On November 1, 2017, Plaintiffs filed their Objections to the Magistrate Judge's Report and Recommendation, arguing that the recommended 95% reduction in the amount of fees sought was arbitrary, penal, and without foundation in the case law; Plaintiffs also objected to the reasonable hourly rates to be reimbursed, arguing they should be much higher. Doc. 185. For the reasons discussed below, the Court finds that a 95% reduction in the hours submitted is reasonable, and an award calculated at the hourly rates *actually* billed to Plaintiffs is reasonable.

---

[5] Plaintiffs do not object to the recommendation for the award of costs. Doc. 185.

## II. STANDARD OF REVIEW

*A. Review of Magistrate Judge's Report and Recommendation*

District courts review *de novo* any portion of a magistrate judge's disposition of a dispositive motion to which a party has properly objected. Fed. R. Civ. P. 72(b)(3); *Ekokotu v. Fed. Express Corp.*, 408 F. App'x 331, 336 n.3 (11th Cir. 2011) (per curiam).[6] The district judge may reject, modify, or accept in whole or in part the magistrate judge's recommended disposition, among other options. Fed. R. Civ. P. 72(b)(3). *De novo* review of a magistrate judge's findings of fact must be "independent and based upon the record before the court." *LoConte v. Dugger*, 847 F.2d 745, 750 (11th Cir. 1988). The district court "need only satisfy itself that there is no clear error on the face of the record" in order to affirm a portion of the Magistrate Judge's recommendation to which there is no timely objection. Fed. R. Civ. P. 72 advisory committee's note (1983) (citations omitted); *see also*, *Gropp v. United Airlines, Inc.*, 817 F. Supp. 1558, 1562 (M.D. Fla. 1993). The District Court reviews legal conclusions *de novo* regardless of whether objections have been filed. *Cooper-Houston v. S. Ry.Co.*, 37 F.3d 603, 604 (11th Cir. 1994).

*B. Recovery of Fees for Improvident Removal*

It is the general rule in this country that, unless Congress provides otherwise, parties are to bear their own attorney's fees. *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 533, 114 S.Ct. 1023, 1033, 127 L.Ed. 2d 455 (1994) (citing *Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 247 (1975) (tracing the origins and development of the American Rule)). Costs and attorney's fees are not awarded on remand as a matter of course. *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 139, 126 S. Ct. 704, 710, 163 L. Ed. 2d 547 (2005) ("we see nothing to persuade us that fees under § 1447(c) should either usually be granted or usually be denied."). However, the Court has already determined that Plaintiffs are entitled to an award of attorney's fees pursuant to 28 U.S.C. §

---

[6] Unpublished opinions of the Eleventh Circuit cases constitute persuasive, and not binding authority. *See* 11th Cir. R. 36-2.

1447(c) for improvident removal. Doc. 178. Under 28 U.S.C. § 1447(c), "[a]n order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal. 28 U.S.C. § 1447(c)." *Rae v. Perry*, 392 Fed. App'x 753, 754–55 (11th Cir. 2010). An award of attorney's fees pursuant to § 1447(c) is left to the district court's discretion. *Id.*

    C. *Calculation of Reasonable Attorney's Fees*

In formulating a fee that is reasonable, federal courts employ the familiar lodestar approach. *See Nick-O-Val Music Co., Inc. v. P.O.S. Radio, Inc.*, 656 F. Supp. 826 (M.D. Fla. 1987) (awarding fees using the lodestar). The fee applicant generally bears the burden of "documenting the appropriate hours and hourly rates." *Norman v. Housing Authority of City of Montgomery*, 836 F.2d 1292, 1303 (11th Cir. 1988). This burden includes supplying the court with specific and detailed evidence from which it can determine the reasonable hourly rate; maintaining records to show the time spent on the different claims; and setting out with sufficient particularity the general subject matter of the time expenditures so that the district court can assess the time claimed for each activity. *ACLU v. Barnes*, 168 F.3d 423, 427 (11th Cir. 1999). "A well-prepared fee petition also would include a summary, grouping time entries by the nature of the activity or state of the case." *Id.*

"The starting point in fashioning an award of attorney's fees is to multiply the number of hours reasonably expended by a reasonable hourly rate." *Loranger v. Stierheim*, 10 F.3d 776, 781 (11th Cir. 1994) (per curiam); *see also Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). Although the district court must examine each of the *Johnson* factors[7], it is not obligated to adjust a fee

---

[7] Magistrate Judge Kelly set forth the appropriate case law and standards in the Eleventh Circuit—principally *Johnson* factors—for applying the lodestar method to calculate attorney's fees (*see* Doc. 184). Factors to be considered when setting a fee include: 1) the time and labor required; 2) the novelty and difficulty of the issues; 3) the skill required to perform the legal services properly; 4) preclusion of other employment; 5) the customary fee; 6) whether the fee is fixed or contingent; 7) time limitations imposed by the client or circumstances; 8) the amount involved and the results obtained; 9) the experience, reputation and ability of the attorneys; 10) the undesirability of

upward or downward in every instance where one or another of the factors is found to be present. *Marion v. Barrier*, 694 F.2d 229, 231 (11th Cir. 1982). Rather, *Johnson* suggests a balancing process, with the trial judge remaining responsible for the discretionary functions of assessing the weight to be given to each factor and the appropriate adjustments to make in the fee. *Id.*

The Supreme Court requires fee applicants to exercise billing judgment which means that the applicant should "exclude from his fee applications 'excessive, redundant, or otherwise unnecessary [hours],' which are hours that would be "unreasonable to bill to a client and therefore to one's adversary irrespective of the skill, reputation or experience of counsel." *Norman*, 836 F.3d at 1301; *ACLU v. Barnes*, 168 F.3d 423, 428 (11th Cir. 1999) (quoting *Hensley*, 461 U.S. at 434). Excluding excessive hours means that a lawyer may not be compensated for activities which would not be billed to a client intent on vindicating its rights; exclusions for excessive hours are ultimately left to the discretion of the district court. *Id.*

Having set forth these standards, the United States Supreme Court, however, expects that a request for attorney's fees will not result in a second major litigation, and that ideally the litigants will settle the amount of the fee. *Hensley*, 461 U.S. at 437; *Thompson v. Pharmacy Corp. of America, Inc.*, 334 F.3d 1242, 1245 (11th Cir. 2003) (Lawyers should not be compensated for turning the litigation about attorney's fees into a "second major litigation."). Justices Brennan, Marshall, Blackmun, and Stevens characterized post-judgment litigation over attorney's fees and related appeals as "one of the least socially productive types of litigation imaginable." *Hensley*, 461 U.S. at 442 (concurring in part and dissenting in part).

Plaintiffs concede they are only entitled to recover fees for tasks limited to activities related

---

the case; 11) the nature and length of the professional relationship with the client; and 12) awards in similar cases. *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974), *abrogated on other grounds*, *Blanchard v. Bergeron*, 489 U.S. 87 (1989); *see Cable/Home Communication Corp. v. Network Production*, 902 F.2d 829, 853 n.37 (11th Cir. 1990). The Court will not restate those standards here except to the extent necessary to address Plaintiffs' specific objections.

to Defendant's "wrongful removal of this action" which they describe as "fees and costs that would not have been incurred by Plaintiffs had this case remained in state court where Plaintiffs had originally filed it." Doc. 185 at 3. Plaintiffs cite to removal cases in which parties recovered attorney's fees for time spent "reviewing removal papers, preparing financial disclosures, attending the Rule 26(f) conference and preparing a case management plan, obtaining discovery on the diversity issue, research on diversity, preparing for and attending the hearing on jurisdictional issues, and preparing the motion for sanctions." *Id*. at 3-4 (citing *Dimitrijevic v. TV & C GP Holding Inc.*, CIV.A. H-04-3457, 2005 WL 2656256, at *4 (S.D. Tex. Oct. 18, 2005) and *Shooter Constr. Co. v. Wells Fargo Ins. Servs. USA, Inc.*, No. 3:11–cv–181, 2011 WL 6339680 at *2 (S.D. Ohio Nov. 28, 2011) (proper costs include participating in the Fed. R. Civ. P. 26(f) conference, preparing the 26(f) report, participating in the scheduling conference with the district judge, and drafting replies to the motion to remand and for fees)).

### III. ANALYSIS

Plaintiffs' objections to Magistrate Judge Kelly's Report and Recommendation center around their argument that "in a rare case such as this, in which the wrongful removal is discovered late in the proceedings," a greater number of hours should be awarded than is awarded in the typical case where the improvident removal is identified much earlier in the case shortly after the removal. Plaintiffs also argue Magistrate Judge Kelly should have applied the "alternative" rates—double the rates actually billed—from their "Alternative Fee Agreement" with counsel.

#### A. *Reasonable Rates*

Plaintiffs argue that the Court should award the rates "pursuant to Plaintiffs' Alternative Fee Agreement" rather than the actual rates Plaintiffs paid counsel for their representation in the case at the time of removal (Doc. 185 at 14-17), which are the rates Magistrate Judge Kelly applied. Doc. 184 at 13. Magistrate Judge Kelly examined the *Johnson* factors in detail and, with regard to

rates, noted in "a relatively straightforward Article 2 case such as this, seeking indemnity, the Court would expect the hourly rate charged by counsel to be on the low side of the range for counsel appearing before the Court." Doc. 184 at 10. Judge Kelly awarded the most senior counsel (Fein and Kolman[8]) rates of $300 to $325/hour; senior associate (Lever) the rate of $240; and $125 for paralegal work. *Id*. at 15.

As it relates to the calculation of rates, Plaintiffs do not seriously object to Magistrate Judge Kelly's assessment of the *Johnson* factors, other than to argue that they should be awarded the higher "alternative" rates for counsel's representation. However, Plaintiffs fail to cite even a single case in their Objections (Doc. 185) which would support applying the higher rates they seek.

Plaintiffs entered into an "Alternative Fee Agreement" with their counsel, under which Plaintiffs paid a "discounted" hourly rate for attorney and paralegal work done in the case: senior partner rate of $325 (for Fein); associate rate of $240 (for Lever); and paralegal rate of $125. Doc. No. 180-22. However, this "Alternative Fee Agreement" also contains a clause to the effect that should anyone other than Plaintiffs be required to pay counsel's attorney's fees, then the hourly rates Plaintiffs will be obligated to pay will be the *higher* of the rates determined by the court or the discounted rates actually paid by Plaintiffs.[9] *Id*.

A reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience and reputation. *Gaines v. Dougherty County Board of Education*, 775 F.2d 1565, 1571 (11th Cir. 1985). The reasonableness of the rate charged is determined by its congruity with "those prevailing in the community for

---

[8] As Judge Kelly points out, Ms. Kolman's rate is not set forth in the "Alternative Fee Agreement," but constitutes 60% of the rate Plaintiffs requested in the Motion, consistent with the rate for Mr. Lever versus the rate actually charged to Plaintiffs. Doc. 180 at 15, 17; Doc. 184 at 15. Plaintiffs contend that the discounted rate actually charged for Ms. Kolman was $325 not $300, Doc. 185 at 10 n.4, but do not point to any evidence of that rate.

[9] Magistrate Judge Kelly found this was not a "traditional contingent fee agreement" and gave this *Johnson* factor minimal consideration particularly because Plaintiffs were not awarded fees due to being a prevailing party. Doc. 184 at 10.

similar services by lawyers of reasonably comparable skill, experience, and reputation." *Blum v. Stenson*, 465 U.S. 886, 896 n. 11 (1984). In fact, the going rate in the community is the most critical factor in setting the fee rate. *Martin v. University of South Alabama*, 911 F.2d 604, 610 (11th Cir. 1990); *see Cruz v. Local Union No. 3 of Intern. Broth. of Elec. Workers*, 34 F.3d 1148 (2d Cir. 1994) (prevailing community court should use in setting the lodestar is the district in which the court sits). Thus, the Court must determine the reasonable rate based on the going rate in the Middle District of Florida.

An applicant may meet this burden to show the reasonable rate by producing either direct evidence of rates charged under similar circumstances, or opinion evidence of reasonable rates. *Norman*, 836 F.2d at 1299. The court may also use its own expertise and judgment to make an appropriate independent assessment of the value of an attorney's services. *Id.* at 1303; *American Charities for Reasonable Fundraising Regulation, Inc. v. Pinellas County*, 278 F.Supp. 2d 1301, 1310 (M.D. Fla. 2003). Services of paralegals and law clerks are also compensable at market rates. *Missouri v. Jenkins by Agyei*, 491 U.S. 274, 288-89 (1989).

In exercising its discretion, this Court must consider the rates in the "relevant market" for the type of work and the experience of the attorneys. *ACLU of Ga. v. Barnes*, 168 F.3d 423, 437 (11th Cir. 1999). The rate the attorney charges the client "is powerful, and perhaps the best, evidence of his market rate; that is most likely to be what he is paid as 'determined by supply and demand.'" *Dillard v. City of Greensboro*, 213 F.3d 1347, 1354–55 (11th Cir. 2000) (quoting *Blum*, 465 U.S. at 895 n.11).

Here, Magistrate Judge Kelly found the hourly rates actually charged Plaintiffs were reasonable and consistent with the rates he was "accustomed to seeing other counsel and paralegals charge in this community for handling a case such as this" based on his own knowledge and experience concerning reasonable rates; he distinguished the rates Plaintiffs proposed based on previous orders in

related cases from the state court, especially in one of which the judge remarked he was apparently "bound by expert testimony." Doc. 184 at 15 (quoting *Dillard*, 213 F.3d at 1355: "[G]iving prior awards controlling weight over the superior evidence of a lawyer's actual billing rate equates to giving the prior awards issue-preclusive value against a party whose interests were not even arguably represented in the prior litigation."); Doc. 180-25 (Broward County Circuit judge awarding Lever ($225/hr.) and paralegals ($125/hr.), the same rates awarded in this case); Doc. 180-23 (District Court for the Southern District of Florida recommending rate of $475/hour for Fein and rate of $325/hour for Lever).

Magistrate Judge Kelly recommended reasonable rates for "this community"—the Orlando market. The orders from related cases submitted by Plaintiffs are from the *Southern* District of Florida and reflect rates charged in the Broward or Miami-Dade County area, not the *Middle* District of Florida. This Court is charged with applying Orlando market rates, rather than Southern District or Miami rates. The general rule in setting the reasonable rate is determined by "the place where the case is filed" and the burden is on the fee applicant to "show a lack of attorneys practicing in that place who are willing and able to handle the claims." *See, e.g., Mock v. Bell Helicopter Textron, Inc.*, 456 Fed. Appx. 799, 802 (11th Cir. 2012) (citing *ACLU*, 168 F.3d at 437 (quotation marks omitted)). Plaintiffs fail to support their Objection that the reasonable rates are those set forth in the "Alternative Fee Agreement" as opposed to the rates actually charged to Plaintiffs for the work counsel regularly performed. Thus, the Court will apply the rates as recommended by Magistrate Judge Kelly. *See* Doc. 184 at 20.

B. *Reasonable Number of Hours for Work Related to Removal Issues*

Plaintiffs argue that the "95% across-the-board cut" recommended by Magistrate Judge Kelly is not supported by the evidence. In determining the reasonable number of hours to award Plaintiffs due to Defendant's improvident removal, Magistrate Judge Kelly initially found that the billings submitted with the Motion were "voluminous." Plaintiffs requested an award of more than half a million dollars in fees for 1,170.2 hours of work, attaching twenty-eight exhibits in a

submission which totaled 149 pages. Doc. 184 at 16 (citing Doc. 180 at 17, Doc. 180-1). He appropriately cited the prevailing case law for a situation when faced with a "voluminous" or "massive fee application" that holds "an hour-by-hour review is both impractical and a waste of judicial resources," thus, the court may "employ an across-the-board reduction rather than an hour-by-hour analysis." *Id*. (citing *Loranger v. Stierheim*, 10 F.3d 776, 783 (11th Cir. 1994).[10]

Plaintiffs contend that Magistrate Judge Kelly's 95% reduction in fees is overstated given the added burden of being forced to litigate in federal court because his method reduced counsel's hours across the board—even for tasks that were "unique" to federal court, such as time spent on Rule 26 discovery, preparation of the Case Management Report and various motions, including those seeking clarification and/or reconsideration of this Court's rulings, seeking extensions of case management deadlines, and requesting permission to file reply briefs (which are permitted as a matter of course in state court). Doc. 185 at 10-11. Plaintiffs very strongly object to the size of the across-the-board cut, and argue the cases he cited allowing across-the-board reductions were for much smaller amounts in the range of 20% to 30%. Doc. 185 at 14 (citing *Bujanowski v. Kocontes*, 359 Fed. App'x 112, 114 (11th Cir. 2009) (20% reduction); *Digital 1 Media, Inc. v. Van Almen*, No. 8:09-CV-1097-T-33TBM, 2010 WL 3259786 (M.D. Fla. Aug. 16, 2010) (30% reduction)). They contend that Judge Kelly cannot impose a large percentage reduction based on his "mere dissatisfaction" with how the case was litigated and without a better explanation than there was simply a "routine" level of work or because the parties were "unnecessarily contentious." Doc. 185 at 9, 11. Plaintiffs argue that Magistrate Judge Kelly's "meat-axe approach" here was "based on his dissatisfaction with the lawyers' conduct," and his reduction in compensable hours by 95%

---

[10] Judge Kelly cited two illustrative cases with smaller requests than the one at issue here, which the Court of Appeals considered to be "voluminous." Doc. 184 at 16 (citing *Villano v. City of Boynton Beach*, 254 F.3d 1302, 1311 (11th Cir. 2001) ("Appellant submitted 569.30 hours for compensation. Those hours are extensive enough that we do not expect the district court or the magistrate judge to conduct an hour-by-hour analysis in this case."); *Padurjan v. Aventura Limousine & Transp. Serv., Inc.,* 441 F. App'x 684, 687 (11th Cir. 2011) ("The more than $200,000 Padurjan seeks in attorneys' fees is indication enough that this case is voluminous.")).

"effectively rewards [Defendant] and fails to balance the equities." *Id.* at 12. Plaintiffs contend that the large reduction also fails to take into account the generally "more expensive and difficult nature of practice in federal court" and is built on Magistrate Judge Kelly's faulty "assumption" that the "incremental" increase and "extra effort" required to litigate in federal court is balanced out by the time it would have taken to adequately prepare for hearings in state court. This Court agrees with the Magistrate Judge that in this case the tasks unique to federal court would take approximately 5% more time than litigating in state court.

Plaintiffs argue that in the "vast majority of cases, the wrongful removal is discovered early in the proceedings," unlike in this case in which the wrongful removal was discovered much later in the proceedings; thus, this case resulted in more "needless and costly litigation." *Id.* Although Plaintiffs do concede that there is no "clear cut guideline" to awarding such fees and the matter is left to the "broad discretion" of the court to fashion an "equitable award." Doc. 185 at 3.

A more flexible standard should be applied in this case, Plaintiffs argue, to determine the "fees and costs incurred in federal court that would not have been incurred had the case remained in state court." *Id.*[11]

In finding an award of attorney's fees for improvident removal was appropriate, the Court has already determined that "a ***large majority*** of the parties' fees were incurred performing work that would have been necessary, and will likely be necessary, for litigation in the state forum." Doc. 178 at 9. "Plaintiffs are only entitled to those *additional* attorney's fees and costs incurred by litigating in federal court as opposed to state court." *Id* at 9-10 (emphasis added).

Here, Magistrate Judge Kelly determined that a substantial reduction was necessary to eliminate recovery for "non-compensable hours and excessiveness." Doc. 184 at 16. He listed

---

[11] Unfortunately, Plaintiffs rely on the *dissent* in *Morgan Guar. Trust Co. of New York v. Republic of Palau*, 971 F. 2d 917, 924 (2nd Cir. 1992), in support of their argument that a defendant who improvidently removes a case should be liable for *all* of the plaintiff's fees through appeal. The Court has already determined that Plaintiffs were not entitled to recover the "large majority" of their fees, or those incurred on appeal. Doc. 178 at 9.

specific examples of work that would not be compensated because it would have to be done in *any* litigation, such as reviewing and analyzing "procedural preferences and Local Rules to ensure compliance," preparing and serving initial disclosures and the mediation statement, analyzing "numerous Orders issued by this Court" in response to Defendant's motions or "due to its litigation tactics," or "time spent conferring with opposing counsel." *Id*. at 17. Moreover, time spent before the appellate court would not be compensated, given that this Court had already found that Plaintiffs were not entitled to recover such costs pursuant to the Eleventh Circuit's Rules. *Id*. at 18 (citing Doc. 178 at 10). Magistrate Judge Kelly further noted that other transactions demonstrated "excessiveness" primarily due to block billing in multiple-hour increments. *Id*. Having analyzed the *Johnson* factors, he determined:

> The voluminous Motion and the inclusion of excessive and non-compensable transactions renders the hours claimed unreasonably high. These circumstances warrant an across-the-board reduction. The Court awarded Plaintiffs their attorney's fees "incurred as a result of Defendant's improper removal." Doc. No. 178 at 10. . . . The undersigned's experience leads to the conclusion that litigating this case in federal court required, at most, five percent more work than litigating it in state court. As discussed . . . the number of hours expended on this case is due to how the parties litigated it, not what the case required. Thus, five percent of the hours claimed is a reasonable amount of hours incurred due to the removal. In making this determination, the undersigned considered his own experience as to a reasonable expenditure of hours, his familiarity with this litigation and litigation in state court, as well as the *Johnson* factors as analyzed above.

Doc. 184 at 16. Judge Kelly also discussed in detail his experience in dealing with the parties' specific conduct in the discovery phase of the case:

> This particular litigation has been extremely contentious—unnecessarily so—and it is the undersigned's firm conviction that the parties are *mutually responsible for overworking this case*. One need only look at the Motion (requesting over half a million dollars in fees) and the response thereto (requesting zero) to see that this persists even now as both sides maintain extreme and untenable positions. The fees incurred are due more to the attorneys' handling of the litigation than to whether it proceeded in state or federal court. See Order on Motions for Sanctions, Doc. No. 141 at 2 ("Throughout the parties' unusually contentious discovery efforts, the miserable and tortured history of which is already part of the record and need not be repeated (see generally Doc. Nos. 37-116), the Court has repeatedly found that this is a relatively straightforward 'battle of the forms' breach of contract action. .

. . [T]he parties have resorted to barraging the Court with motions and requests for emergency hearings . . . .").

*Id*. at 7 (emphasis added). Magistrate Judge Kelly appropriately found Plaintiffs had overworked the case and their contentiousness was the reason for the high fees.

Plaintiffs argue that reimbursement for 58.51 hours recommended by Magistrate Judge Kelly as compensable is far less than the amount of time Plaintiffs incurred just for researching and briefing the jurisdictional issue and related motions, which was more than 200 hours, totaling fees of more than $62,000. Doc. 185 at 10 (citing Doc. 180-8 (45 hours) & 180-15 (177.5 hours)). The Court has reviewed the entries Plaintiffs argue are strictly related to the jurisdictional issues (Docs. 180-8 & 180-15) and notes, as an initial matter, that Plaintiffs have included a great deal of time that the case was being briefed related to filings in the Court of Appeals[12], even though this Court has already held that Plaintiffs are not entitled to recover *any* fees for appellate work. *See* Doc. 172 at 5-6, 10. Moreover, Plaintiffs have used block billing for 72 hours incurred to draft the Motion to Vacate and Remand and for 68 hours to "review and analyze billing records" in support of the Motion for Attorney's Fees. This time is significantly overstated, and reaffirms—rather than disputes—that counsel has not exercised the requisite billing judgment.

## CONCLUSION

Plaintiffs, who lost on summary judgment in this federal court, cannot now wrest out of Defendant a half million dollar attorney fee award by arguing the entire amount is related to the improvident removal, simply by virtue of arguing that it was required to spend a great deal of time on federal court matters. Magistrate Judge Kelly, who was very familiar with counsel and the parties' conduct in the case, appropriately recommended a significant across-the-board percentage reduction to reflect the portion of the fees attributable to the improvident removal.

---

[12] The time attributed to Court of Appeals jurisdictional/removal issues date from September 22, 2016 to January 31, 2017. Docs. 180-8 & 180-15.

Based on the foregoing, it is ordered as follows:

1. The Report and Recommendation filed October 18, 2017 (Doc. 184), is **ADOPTED** and **CONFIRMED** and made a part of this Order.

2. The Plaintiffs' Verified Motion to Quantify Fees and Costs (Doc. 180) is hereby **GRANTED in part** and **DENIED in part**.

3. The Clerk is **DIRECTED** to enter judgment that Plaintiffs recover from Defendant their attorney's fees of **$16,705.40** and costs of **$491.60**.

**DONE** and **ORDERED** in Chambers, in Orlando, Florida on February 22, 2018.

*[signature]*
ANNE C. CONWAY
United States District Judge

Copies furnished to:

Counsel of Record
Unrepresented Parties